FILED
J.N NOV 1 6 2007
11-16-07
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ASHISH SEN and COLLEEN SEN, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

MERCEDES-BENZ USA, LLC.

Defendant.

07CV6519
JUDGE MORAN
MAG. JUDGE NOLAN

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs, Ashish Sen and Colleen Sen ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following against the above-captioned Defendant, based upon personal knowledge where applicable, information and belief and the investigation and research of counsel:

### PARTIES

1. Plaintiffs, Ashish Sen and Colleen Sen, are individuals residing at 2557 Farwell Ave., Chicago, Illinois 60645. Plaintiffs have been injured as a result of the unlawful conduct alleged herein.

1

2. Defendant, Mercedes-Benz USA, LLC ("MBUSA" or "Defendant"), is a wholly-owned subsidiary of Daimler North American Holding Corporation and is responsible for the sales, service and marketing of Mercedes-Benz products in the United States. MBUSA's principal place of business is 3 Paragon Drive, Montvale, New Jersey 07645.

### NATURE OF ACTION

3. On June 4, 2004, Plaintiffs purchased a new 2004 Mercedes-Benz E55 from an authorized dealer of Defendant. The vehicle came equipped with Tele Aid, a communication and safety system which provides roadside assistance to Mercedes drivers in the event of an emergency, and Plaintiffs subscribed to the Tele Aid service. Defendant represented to Plaintiffs through its brochures that the Tele Aid system would provide emergency services through a wireless network.

4. Tele Aid originally operated on an analog wireless network. In accordance with an August 2002 ruling by the Federal Communications Commission ("FCC"), wireless networks would no longer employ analog wireless technologies by February 2008. As a result, MBUSA stated that analog-only Tele Aid systems would become obsolete after December 31, 2007.

5. Defendant knew by August 2002 that any Model Year vehicles equipped with analog-only Tele Aid systems and would stop functioning. Defendant failed to mention this material information to any purchasers of Mercedes vehicles for Model Years 2002 through 2006.

6. Defendant's actions have caused financial harm to Plaintiffs and the class (as defined in paragraph 38 below), who hereby seek compensatory damages and other such relief as the Court may award.

2

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because Plaintiffs and class members are of diverse citizenship from the Defendant; there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000. This court has personal jurisdiction over the parties because Defendant is a resident of this state, conducts substantial business in this state, has had systematic and continuous contacts with this state, and has agents and representatives that can be found in this state.

8. Venue is proper in this District under 28 U.S.C. § 1391(a) because Plaintiffs are residents and citizens of this district, a substantial part of the events or omissions giving rise to the claim occurred within this District, and Defendant has caused harm to Class members residing within this District.

## TOLLING

9. Consumers rely on an auto manufacturer's uniform representations in its brochures and literature. Plaintiffs and the Class could not have discovered, even upon reasonable exercise of diligence, that their Tele Aid system would become obsolete, expire and be of no value. In addition, Plaintiffs and the Class could not have discovered that they would have to pay for an expensive upgrade to their analog Tele Aid systems until MBUSA sent letters to informing them that an upgrade was necessary to continue the system past December 31, 2007.

## FACTUAL ALLEGATIONS

### Background of the Tele Aid System

10. The Tele Aid Emergency Calling and Communication System ("Tele Aid") is a safety and security system designed by ATX Technologies, Inc. and MBUSA for use solely in

3

Mercedes vehicles. Tele Aid employs satellite and wireless technologies to connect Mercedes drivers with a live response center in the event of an emergency. The response center then notifies emergency service providers of the precise location of the driver.

11. MBUSA uses standardized marketing and sales messages to promote the Tele Aid system. MBUSA touted Tele Aid as a standard safety feature of its vehicles in its brochures and on the manufacturer's suggested retail price ("MSRP") sticker. MBUSA's advertising of Tele Aid's safety, security and convenience has played a significant role in promoting sales of Mercedes vehicles. All these marketing and sales initiatives were initiated, drafted, created and distributed from MBUSA's principal place of business in New Jersey.

12. Specifically, MBUSA touts the Tele Aid system on its website:

> If you require emergency aid, Roadside Assistance, or information while you're traveling in a Mercedes-Benz vehicle equipped with Tele Aid, the Tele Aid system can put subscribers in touch with the right people, exactly when they are needed. Help is just the push of a button away.
>
> Tele Aid is our way of using wireless technology to provide Mercedes-Benz owners with location-specific security, information, and conveniences.
>
> One push of the SOS button on your vehicle's overhead console connects you to a Tele Aid Response Specialist who can notify emergency service providers of your precise location, pinpointed by satellite. The specialist will stay on the line with you until help arrives. Also, deployment of any air bag or Emergency Tensioning Device (ETD) will automatically transmit an emergency call to the Tele Aid Response Center.
>
> The *Wrench* button connects you to a Roadside Assistance Specialist who will know your location and what model vehicle you're driving — even before you say a word.
>
> The *i-button* connects you to a Tele Aid Response Specialist, available 24 hours a day to answer any questions you may have.
>
> Tele Aid uses satellites, wireless telecommunications technology, and trained specialists to respond to your in-vehicle security needs and other requests around the clock. When a subscriber presses any Tele Aid button, the call is answered by a trained professional who automatically identifies their location, responds to their

request, or puts them in touch with the appropriate response personnel. New Mercedes-Benz vehicles are available with Tele Aid either as standard or optional equipment, depending on the model. All you need is a few minutes to activate your service so that Tele Aid is there for you whenever you need it.

Connecting Mercedes-Benz owners to emergency aid, Roadside Assistance, and information is just the beginning….

Thus, of central importance to these features and promises is the direct satellite hook-up and the ability to send and receive a signal.

13. MBUSA's Tele Aid also offers a number of safety features such as remote door unlock, anti-theft alarm notification, and stolen vehicle recovery. When an air bag deploys in a Tele Aid equipped vehicle, the system automatically transmits an emergency call to the Tele Aid response center.

14. MBUSA's Tele Aid utilizes wireless telephone networks to operate. The first Tele Aid systems were equipped to operate only on an analog wireless network ("analog-only").

15. Sometime in 2000, MBUSA began equipping its vehicles with the analog-only Tele Aid safety and security systems.

### The FCC Eliminates the Analog Requirement

16. The FCC had adopted the analog requirement in 1981. In May 2001, the FCC, after years of pressure from the wireless industry, proposed eliminating the analog requirement for wireless phone carriers.

17. During the rulemaking process, the FCC sought comments from various telematics providers. Telematics companies use location technology and wireless communications to provide data applications in vehicles, particularly to provide safety services. For instance, one

such application is a crash notification system with the capability to automatically call an emergency dispatch for help.

18. ATX and MBUSA, along with other telematics providers, argued against removing the analog requirement. ATX and MBUSA argued that elimination of the rule would significantly impair the ability to provide Tele Aid service since analog technology was necessary to provide wide-ranging coverage to its customers. In addition, ATX and MBUSA argued that digital standards were unable to transmit both voice and data on the same call, a feature essential to the operation of a telematics service.

19. ATX and MBUSA also argued that the development cycle to design, test, and install equipment in vehicles is longer than a typical cellular provider. ATX and MBUSA stated that telematics devices such as Tele Aid were equipped in a vehicle that generally had a useful life of ten or more years.

20. The FCC, however, concluded that the opposing arguments were not a sufficient basis to maintain the analog requirement. The FCC removed the analog requirement so that companies would switch to digital technology, which is more efficient than analog, uses less bandwidth, and provides consumers access to advanced services not feasible with analog technology.

21. The FCC did, however, allow for a "sunset period" of five years for the rule eliminating the analog requirement to take effect. The purpose of the "sunset period" was to resolve any problems that might occur with the transition. Consequently, by February 2008, wireless companies will no longer be required to provide analog signals.

22. In accordance with the FCC, U.S. and Canadian wireless carriers began shifting their networks from analog to digital, well before the February 2008 deadline.

### Analog-Only Systems Become Obselete

23. Mercedes vehicles equipped with Tele Aid safety and security systems will have one of three types of systems:

    a. Analog-only, which can operate only on analog networks;

    b. Dual-mode, which can operate on either an analog or digital network; or

    c. Analog-Digital Upgrade, which allows analog-only Tele Aid equipment to access the digital network

24. Analog-only Tele Aid systems have become obsolete in areas where analog service has already been discontinued. MBUSA has stated that by December 31, 2007, all analog-only Tele Aid systems will no longer have a network to support it and will be obsolete.

25. Approximately 200,000 of the 420,000 current Mercedes Tele Aid customers have an analog-only device.

26. The analog-only Tele Aid system was a standard feature on all Mercedes vehicles from Model Year 2000 to 2004.

27. Before elimination of the analog requirement, MBUSA notified the FCC that it anticipated deployment of digital Tele Aid systems by model year 2005. MBUSA began installing the dual-mode equipment on some of its Model Year 2005 vehicles. Thus, MBUSA continued to equip some of its vehicles with analog-only Tele Aid systems three years after the FCC announced the removal of the analog requirement.

28. MBUSA accepted new Tele Aid subscriptions for analog-only systems as late as November 1, 2006, with full knowledge that analog-only Tele Aid would not operate after December 31, 2007, or earlier.

29.     Despite having full knowledge that Mercedes automobiles have a reasonable life expectancy of ten years or more, MBUSA withheld material information, namely, that the analog-only systems would become obsolete after December 31, 2007.  MBUSA also failed to disclose that the vehicle owner would have to make significant financial investments in order to continue using the emergency and communication service of Tele Aid.  Instead, Mercedes advertised the Tele Aid systems as a standard safety and security feature on the MSRP sticker.

### Plaintiffs' Experience

30.     On June 4, 2004, Plaintiffs jointly purchased a Model Year 2004 Mercedes-Benz E55.  Plaintiffs' vehicle came equipped with the Tele Aid system, which Plaintiff subsequently activated.  Plaintiffs have subscribed to Tele Aid since the purchase of their vehicle.

31.     At the time of the purchase, MBUSA expressly represented that using and operating Tele Aid would provide Plaintiffs with vehicle safety and security.  Implied in these statements is that Tele Aid would continue to function to provide these features.  Further, MBUSA represented that the Tele Aid system in their vehicle was free of defects and would be suitable for use as a car safety and aid device.

32.     Although Plaintiffs' vehicle purchase occurred nearly two years after the FCC's announcement of the removal of the analog requirement, at no point did MBUSA disclose to Plaintiffs that the Tele Aid unit in their vehicle was an analog-only unit that would not function on a digital network in three short years.  MBUSA did not disclose that the unit would be obsolete after December 31, 2007.

33.     MBUSA did not disclose to Plaintiffs that they would have to install any additional equipment to operate on a digital network. MBUSA also did not disclose that Plaintiffs would have to purchase such equipment to operate the unit past December 31, 2007.

34. In April 2007, Plaintiffs received a letter from MBUSA that their analog-only Tele Aid service would be disconnected unless the owner purchased an analog-digital upgrade. This upgrade would cost anywhere from $1000 to $2100 in addition to any labor charges by the dealer for performing the installation.

35. MBUSA only offers this upgrade to owners of vehicles newer than Model Year 2001. Model Year 2000 vehicles cannot be upgraded due to the vehicle's design.

36. MBUSA claims that the upgrade is not covered under warranty because the Tele Aid unit is not defective—even though it lacks something (a signal) essential to the proper use for the purpose for which a thing is to be used after December 31, 2007.

37. From 2002 on, MBUSA (and ATX) knew or should have known that cellular providers were converting to digital systems and that analog-only units of Tele Aid would not function on digital networks.

38. As a result of Defendant's conduct,

   a. Plaintiffs will incur costs and expenses to replace and/or repair the analog-only Tele Aid system to function with the digital cellular service;

   b. Plaintiffs have paid for a product that cannot operate to provide safety, Roadside Assistance, and security as represented.

## CLASS ACTION ALLEGATIONS

39. Plaintiffs bring this suit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all other similarly situated persons as members of both a nationwide class and Illinois statewide class. The classes are defined as follows:

   a. Under the New Jersey Consumer Fraud Act, warranty and unjust enrichments claims: All persons or entities in the United States who purchased or leased a

        Model Year 2002 to 2006 Mercedes-Benz vehicle equipped with an analog-only Tele Aid system ("nationwide class").

   b. Under the Illinois Consumer Fraud Act claims: All persons or entities in the State of Illinois who purchased or leased a Model Year 2002 to 2006 Mercedes-Benz vehicle equipped with an analog-only Tele Aid system ("Illinois class").

40.    <u>Numerosity.</u> The proposed class is sufficiently numerous, as hundreds of thousands of consumers purchased Mercedes vehicles with analog-only Tele Aid systems. The Class members are so numerous and dispersed throughout the State of Illinois and across the country such that joinder of all members is impracticable. The Class members, can be identified by, *inter alia*, records maintained by Defendant.

41.    <u>Common Questions of Fact and Law.</u> Common questions of fact and law exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class, pursuant to Rule 23(b)(3). Among the questions of fact and law that that predominate over any individual issues are:

   a. Whether MBUSA failed to provide consumers with material information regarding their analog-only Tele Aid systems, namely, that the systems would become obsolete and would require significant costs to the consumer to continue providing emergency and communication services;

   b. Whether Class members are entitled to an upgrade of their analog-only systems by MBUSA at no cost;

   c. Whether Defendant knew that all analog-only Tele Aid systems would become obsolete after December 31, 2007, or earlier, and concealed this fact from Plaintiffs and the Class members;

    d. Whether Plaintiffs and the Class sustained damage and loss as a result of Defendant's conduct as alleged herein;

    e. The scope, extent, and measure of damages and equitable relief that should be awarded; and

    f. The amount of attorneys' fees, prejudgment interest, and costs of suit to which the Class is entitled.

42. <u>Typicality</u>. Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs and the Class sustained damages arising out of the Defendant's wrongful conduct as detailed herein. Specifically, Plaintiffs' claims and the Class' claims arise from the Defendant's failure to disclose that the analog Tele Aid units equipped on their vehicles would become obsolete as of December 31, 2007.

43. <u>Adequacy</u>. Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel competent and experienced in class action lawsuits. Plaintiffs have no interests antagonistic to or in conflict with those of Class members and therefore should be adequate as representatives for the Class members.

44. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the Class members is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility inconsistent and potentially conflicting adjudication of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

### COUNT I
### Violation of New Jersey Consumer Fraud Act

45. Plaintiffs repeat and re-allege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

46. Plaintiffs and the nationwide class bring suit under the New Jersey Consumer Fraud Act. By reason of the conduct alleged herein, and by failing to disclose material facts about analog-only Tele Aid systems, Defendant's actions violated the provisions of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2.

47. Defendant's advertising and brochures were prepared in and disseminated by MBUSA from the state of New Jersey.

48. Defendant's actions constitute an unconscionable commercial practice, deception, false pretense, false promise, or misrepresentation in connection with the sale of its vehicles in that Defendant failed to disclose that Tele Aid would become obsolete after December 31, 2007, and that Class members would be required to spend significant amounts of money to have Tele Aid services after this date.

49. Defendant knowingly concealed, suppressed, and omitted the material fact that Plaintiffs' Tele Aid systems would be obsolete after December 31, 2007 unless the Plaintiffs purchased an expensive upgrade.

50. Defendant acted with the intent that Plaintiffs and Class members rely upon this concealment, suppression, and omission in connection with their purchase of the Mercedes vehicles. Defendant knew that Mercedes vehicles generally had a useful life of ten years or more and that the analog-only systems would cease to function well before the end of the vehicle's useful life.

51. As a result, Plaintiffs and the Class have suffered or will suffer ascertainable losses of money and property as a direct and proximate result of MBUSA's practices.

## COUNT II

### Damages Under the Illinois Consumer Fraud Act

52. Plaintiffs repeat and re-allege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

53. Plaintiffs and the Illinois class bring suit under the Illinois Consumer Fraud Act. Plaintiffs and the Class are consumers within the meaning and coverage of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"), 815 ILCS 505/1 *et seq.*

54. By reason of the conduct alleged herein, and by failing to disclose material facts about analog-only Tele Aid systems, Defendant's actions violated the provisions of the Illinois Consumer Fraud Act.

55. Defendant's actions constitute a deception, fraud, false pretense, false promise, and misrepresentation in connection with the sale of its vehicles in that Defendant failed to disclose that Tele Aid would become obsolete after December 31, 2007, and that Class members would be required to spend significant amounts of money to have Tele Aid services after this date.

56. Defendant knowingly concealed, suppressed, and omitted the material fact that Plaintiffs' Tele Aid systems would be obsolete after December 31, 2007 unless the Plaintiffs purchased an expensive upgrade.

57. Defendant acted with the intent that Plaintiffs and Class members rely upon this concealment, suppression, and omission in connection with their purchase of the Mercedes

vehicles. Defendant knew that Mercedes vehicles generally had a useful life of ten years or more and that the analog-only systems would cease to function well before the end of the vehicle's useful life.

58. As a result, Plaintiffs and the Class have suffered or will suffer ascertainable losses of money and property as a direct and proximate result of MBUSA's practices.

## COUNT III

### Injunctive Relief Under The
### Illinois Deceptive Trade Practices Act

59. Plaintiffs repeat and re-allege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

60. Plaintiffs and the Illinois class bring suit under the Illinois Deceptive Trade Practices Act. Plaintiffs seek injunctive relief under the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*

61. Because of its non-disclosure of material facts alleged above, MBUSA deceived Plaintiffs and the other members of the Class. MBUSA's deceptive conduct occurred in the course of its engaging in trade or commerce.

62. By failing to disclose the material fact that analog-only Tele Aid systems would be obsolete after December 31, 2007 without an upgrade at a significant cost, MBUSA intentionally and willfully attempted to mislead consumers as to the operability of Tele Aid. MBUSA engaged in these deceptive acts and practices in order that Plaintiffs and the Class would purchase or continue to purchase MBUSA automobiles.

63.   As a result of Defendant's deceptive trade practices, Plaintiffs and Class members whom have not yet paid for the analog-digital upgrade are entitled to injunctive relief in the form of an upgrade without charge.

## COUNT IV

### Breach of Express Warranty

64.   Plaintiffs repeat and re-allege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

65.   Mercedes has breached its express warranties to Plaintiffs and to the Class to repair and/or replace their defective Tele Aid systems.

66.   Defendants expressly warranted to Plaintiffs and Class that the warranty would cover defects in their Mercedes vehicles. As the warranty states, "any authorized Mercedes-Benz center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period."

67.   Plaintiffs' analog-only Tele Aid system is defective since it can no longer operate after December 31, 2007. Signal capability of Tele Aid is essential to the continuing operability of the safety and security functions of Tele Aid, and thus, the analog-only systems' lack of signal capability renders the systems defective. MBUSA, however, refuses to repair or replace the defective Tele Aid system under the warranty without substantial cost.

68.   Defendant also specifically warranted its Roadside Assistance Program, namely its Tele Aid system, as part of the extended limited warranty sold to Plaintiffs. Defendant promised in the extended warranty that Plaintiffs will never pay a deductible for warranty-covered service, repairs or parts at any of its three hundred MBUSA dealerships nationwide. Defendant sold

Plaintiffs this extended limited warranty covering the Tele Aid system but refuses to honor the warranty and repair the defective Tele Aid system.

69. Defendant has thus breached its express warranties to Plaintiffs and all other class members to repair and/or replace their analog-only equipment so that they are in good operational condition and suitable for use in providing emergency services.

70. As a result, Plaintiffs and the Class have suffered or will suffer ascertainable losses of money and property as a direct and proximate result of MBUSA's practices.

## COUNT V

### Implied Warranty of Merchantibility

71. Plaintiffs repeat and re-allege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

72. MBUSA is a merchant with respect to Mercedes vehicles and Tele Aid systems. At the time Plaintiffs and Class members purchased their vehicles, MBUSA represented that Tele Aid would provide Plaintiffs with safety, roadside assistance, and security. Implied in these statements is that Tele Aid would continue to function and provide these features for the life of the vehicle and that the Tele Aid system was free of defects and suitable for use.

73. Since the analog Tele Aid units will be obsolete after December 31, 2007, Plaintiffs' and Class Members' analog-only Tele Aid systems will not operate as represented in the contract. In addition, the analog-only Tele Aid systems will not be fit for its ordinary purposes of providing a functioning safety and security system to the vehicle owner.

74. As a result, Plaintiffs and the Class have suffered or will suffer ascertainable losses of money and property as a direct and proximate result of MBUSA's practices.

## COUNT VI

### Unjust Enrichment

75. Plaintiffs repeat and re-allege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

76. Defendant has been enriched by its fraudulent acts and omissions alleged herein in the State of Illinois where class members reside.

77. These fraudulent acts and omissions allowed Defendant to unlawfully receive monies that would not have been obtained but for Defendant's acts and omissions.

78. Plaintiffs and the Class purchased vehicles from MBUSA on MBUSA's representation that Tele Aid would continue to provide emergency services. Plaintiffs and the Class members purchased the vehicles without MBUSA disclosing that Plaintiffs would incur significant costs and expenses to replace and repair the analog-only Tele Aid system.

79. Plaintiffs and Class must spend (and have spent) between $1100 and $2100 to repair or replace their defective analog-only Tele Aid systems. Defendant is unjustly enriched in avoiding the financial obligations associated with providing the digital upgrade and avoiding labor costs to MBUSA dealers for the installation.

80. Defendant lacks any legal justification for having engaged in a course of fraudulent acts and omissions as alleged herein at Plaintiffs' and the Class' expense.

81. No other remedy at law can adequately compensate Plaintiffs for the damages occasioned by Defendant's conscious choice to engage in a course of fraudulent acts and omissions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and the Class as follows:

A. For an order certifying the proposed Class herein under Federal Rule of Civil Procedure 23(a) and (b)(3) and appointing Plaintiff and Plaintiff's counsel of record to represent said Class;

B. For an order providing injunctive relief to Plaintiffs and the Class in the form of a Tele Aid upgrade without charge;

C. Awarding Plaintiffs and Class members compensatory damages against Defendant in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowable by law;

D. Awarding the Plaintiffs and the Class all statutorily available damages under N.J.S.A. 56:8-2;

E. Awarding the Plaintiffs and the Class all statutorily available damages under 815 ILCS 505/1 *et seq.*;

F. Awarding the Plaintiffs and the Class injunctive relief in the form of an upgrade without charge under 815 ILCS 510/1 *et seq.*

G. Awarding the Plaintiffs and the Class members the reasonable costs and expenses of suit, including attorneys' fees, filing fees; and

H. Awarding the Plaintiffs and the Class compensation based on the money saved by MBUSA as a result of Plaintiffs paying for the installation and repair.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury.

Dated: November 16, 2007

Respectfully submitted,

By: _____
Marvin A. Miller
Lori A. Fanning
**Miller Law LLC**
115 S. LaSalle Street
Suite 2910
Chicago, IL 60603
(312) 332-3400
Facsimile: (312) 676-2676

Tracy D. Rezvani
**FINKELSTEIN THOMPSON LLP**
The Duval Foundry
1050 30th Street, NW
Washington, D.C. 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

Rosemary M. Rivas
Mark Punzalan
**FINKELSTEIN THOMPSON LLP**
100 Bush St., Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704