**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| ASHISH SEN and COLLEEN SEN, on behalf of themselves and all others similarly situated, | ) ) ) | Judge Moran |
| | | Mag. Judge Nolan |
| Plaintiff, | ) ) | |
| | | 07 CV6519 |
| v. | ) ) | |
| MERCEDES-BENZ USA, LLC. | ) | |
| Defendant. | ) | |

-------------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| | ) | |
| KAREN MARCUS, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | Judge Coar |
| | ) | |
| v. | ) | 07 C 6892 |
| | ) | |
| MERCEDES-BENZ USA, LLC and ATX GROUP, INC., | ) ) | |
| Defendants. | ) | |

**MOTION
FOR REASSIGNMENT OF *MARCUS v. MERCEDES-BENZ et al.* AS RELATED CASE**

Pursuant to LR40.4(c), plaintiff Karen Marcus respectfully moves this Court for an

Order finding his cases related to earlier-filed case *Sen v. Mercedes-Benz USA LLC.,* 07 CV6519

pending before Judge Moran and reassigning this related action to the Judge Moran.

In accordance with the custom in the Northern District of Illinois, plaintiff will be

providing a courtesy copy of this motion to Judge Coar.  In support of this motion, plaintiff states

as follows:

1.    *Marcus v. Mercedes-Benz USA LLC. et al.,* 07 C 6892 attached hereto as

*Exhibit A* is nearly identical to *Sen v. Mercedes-Benz USA LLC.,* 07 CV6519 attached hereto as *Exhibit B.* Both cases seek class certification for Mercedes-Benz's violation of the Illinois Consumer Fraud Act, by selling vehicles equipped with defective TelAid analog systems while concealing the defect. .

2.     Further, the Illinois Consumer Fraud Class Periods are essentially identical. Any resolution of one case would control the resolution of the other.  For these reasons, this Court should find the actions identified above related. See, e.g., *Murry v. America's Mortgage Banc., Inc.,* 2004 U.S. Dist. LEXIS 3148, *6 (holding that "any resolution ... will necessarily require a determination of the legality of the same defendants' actions under the same statutes and regulations").

3.     *Marcus* also meets all four of the necessary conditions for reassignment. Once relatedness is established, under LR40.4(b) the case or cases may be reassigned to the calendar of a judge with an earlier-numbered case if all of the following criteria are met: (1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases are susceptible of disposition in a single proceeding. *Murry v. America's Mortgage Banc., Inc.*, 2004 U.S. Dist. LEXIS 3148, *5 (N.D.Ill. Mar. 1, 2004) (Guzman, J.); LR40.2b.

4.     On a motion for reassignment, the movants are obligated to specifically articulate reasons why each of four conditions for reassignment under LR40.4(b) are met. *Jaffe v. Household International, Inc.*, 2003 U.S. Dist. LEXIS 7466, *10-11 (N.D.Ill May 5, 2003).  In this instance, each of the four criteria is clearly met. First, both cases are currently pending in the

2

Northern District of Illinois.

      5.    Second, the handling of both cases by the same judge will result in a very substantial saving of judicial time and effort. Reassignment will mean that only one judge will have to rule on the same legal issues, and only one judge will have to develop the expertise necessary to rule on the common legal issues. This magnitude of savings on judicial time and effort is more than sufficient to meet the LR40.4(b) standard.

      6.    Third, neither of the cases have progressed to the point where reassignment of the cases identified herein would cause any delay. The defendant has not filed its answer in either case and no discovery has been undertaken. *Howard. Fairbanks Capital Corp. v. Jenkins*, 2002 U.S. Dist. LEXIS 26297, *8 (N.D.Ill. Dec. 3, 2002)("the first of the cases to be filed...has not progressed all that far: the Court has ruled on a motion to dismiss the counterclaim, and discovery has just gotten started"). Further it is likely that both cases will be transferred to the Mercedes-Benz MDL.

      7.    Fourth, *Marcus* and *Sen* are susceptible of disposition in a single proceeding as the complaints are virtually identical and the defenses are expected to be identical. *Applied Web Systems, Inc., v. Catalytic Combustion Corp.*, 1991 U.S. Dist. LEXIS 5696, *5-6 (N.D.Ill. Apr. 29, 1991) ("The complaints filed... are virtually identical and [defendant's] defenses in both cases are identical.. The only difference between [the two cases] is that each involves a different... customer...Although this case contains one additional count which is not included in the [other] case, both cases unquestionably will share common issues of law and fact").

      8.    Re-assignment will also help ensure uniformity in the administration of justice in all cases. For this reason, the Seventh Circuit has expressed a preference that cases that are similar be consolidated before the same judge to avoid disparate decisions and multiple appeals. See *Smith*

*v. Check-N-Go of Illinois, Inc.*, 200 F.3d 511, 513 (7th Cir. 1999); *Gibson v. Bob Watson Chevrolet-GEO, Inc.,* 112 F.3d 283 (7th Cir. 1997); and *Southmark Corp. v. Cagan,* 950 F.2d 416, 419 (7th Cir. 1991).

WHEREFORE, Mrs. Marcus respectfully requests that this Court enter an Order finding *Marcus v. Mercedes-Benz USA LLC. et al.,* 07 C 6892 related to *Sen v. Mercedes-Benz USA LLC.,* 07 CV6519, reassigning this case to the Judge Moran and granting any other or further relief that the Court deems just.

/s/Keith J. Keogh

Keith J. Keogh
Alexander H. Burke
Law Offices of Keith J. Keogh, Ltd.
227 W. Monroe St., Ste. 2000
Chicago, Illinois   60606
312.726.1092 (office)
312.726.1093 (fax)

# EXHIBIT 1

NF

FILED

DECEMBER 6, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
## EASTERN DIVISION

KAREN MARCUS, individually )
and on behalf of all others similarly situated )
                                               )  Case No.
     Plaintiff, )
                                               )
     v. )
                                               )
MERCEDES-BENZ USA, LLC. and )
ATX GROUP, INC. )
                                               )
     Defendants. )

## 07 C 6892

JURY DEMANDED JUDGE COAR
MAGISTRATE JUDGE SCHENKIER

## COMPLAINT – CLASS ACTION

## MATTERS COMMON TO MULTIPLE COUNTS

### INTRODUCTION

1.    Plaintiff, Karen Marcus, brings this action to secure redress for the actions of
defendants in selling vehicles equipped with TeleAID wireless communications and security systems
that were designed to operate only on an analog network ("TeleAid analog systems"), without
disclosing the material fact that the TeleAid analog systems were obsolete and would cease to
function on January 1, 2008.

### PARTIES

2.    Plaintiff Karen Marcus is a resident of the Northern District of Illinois.

3.    Defendant Mercedes-Benz USA, LLC (MBUSA) is a Delaware corporation
with its principal place of business in Michigan. It does business in Illinois. Its registered agent and
office are CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

4.    ATX Group, Inc. (ATX) is a Texas corporation with its corporate headquarters
located at 8550 Freeport Parkway, Irving, Texas 75063-2547.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction under 28 U.S.C. §1332(d).  Plaintiff is a citizen of Illinois.  Defendants are citizens of Delaware and Texas.  This amount in controversy, on a classwide basis, exceeds $5 million, exclusive of interest and costs.

6.      Venue is proper in this District because plaintiff resides here.

## FACTS

7.      ATX Group is presently the world's second-largest telematics provider.  In January, 1999 ATX teamed with Mercedes-Benz to introduce TeleAid.

8.      Mercedes-Benz USA is a wholly-owned subsidiary of DaimlerChrysler North American Holding Corporation.  It is responsible for the sales, service and marketing of Mercedes-Benz and Maybach products in the United States. The company sold 248,080 vehicles in the U.S. in 2006.

9.      MBUSA equipped new vehicles with the TeleAid analog system, a wireless communication system that provides various safety, security and convenience services, including:

      I.      Automatic notification of air bag deployment;

      ii.     Tracking of stolen vehicles;

      iii.    Summoning of emergency assistance;

      iv.     Remote door unlocking;

      v.      Continuous monitoring;

      vi.     Customer care & real time ownership information;

      vii.    Concierge services.

      viii.   Voice Delivered Traffic Report and Route Assistance (optional)

2

10.    The analog systems were designed to work on an analog network,

## PLAINTIFF'S WAS SOLD AN OBSOLETE SYSTEM

11.    On July 19, 2004, plaintiff purchased a new Mercedes-Benz. Simultaneously with the purchase of her car, she executed a subscriber agreement for TeleAid with MBUSA and ATX.

12.    In addition, MBUSA issued a written warranty that covered the TeleAid unit in the vehicle.

13.    The written warranties and subscription agreement were material and a basis of the bargain entered into by plaintiff and each class member.

14.    Defendants represented in their written warranties and brochures that the TeleAid system offered access to TeleAid services 24 hours per day, 7 days a week.

15.    At the time plaintiff and the class members purchased the TeleAid analog system, it was obsolete. Analog technology was in the process of being replaced by digital technology.

16.    In fact, defendants inserted an exculpatory clause into the subscriber agreement which provides:

> Your TeleAid system uses analog cellular telephone signals. If the supporting wireless carrier and/or its roaming partners terminate or restrict analog service TeleAid Services may not be available.

17.    However, at the time of plaintiff's execution of the subscriber agreement, Defendants knew the analog technology was obsolete and planned to switch to digital technology.

18.    In November, 2002, the U.S. Federal Communications Commission (FCC) ruled that cellular carriers would no longer be required to support the analog cellular network as of

3

early 2008.

19.     At the time of the FCC ruling, it was well known that cellular carriers would not continue to support analog service.

20.     As such, defendants' clause that analog service may not be available was misleading as they knew it would not be available.

21.     Defendants deliberately concealed from and failed to disclose to plaintiffs and the class members that the TeleAid analog system was defective.

22.     Defendants repeatedly and pervasively touted the Teleaid analog system as a safety and security feature.

23.     For example, a Mercedes brochure stated:

**Tele Aid gives you protection, security and peace of mind.**

**If You Are in an Accident**

When an air bag or seat belt Emergency Tensioning Device is deployed, your vehicle automatically notifies the Tele Aid Response Center. We summon help immediately as well as contact the important people in your life. Orbiting satellites tell us exactly where you are – something a cell phone can't do.

**IF YOU HAVE A BREAKDOWN**

Press the wrench button and we'll get Roadside Assistance to you more quickly and efficiently because we know where you are.
**IF YOU ARE IN TROUBLE**

Press the SOS Button and we'll send Emergency Service assistance to you. Or we can just stay on the line if you think you might be in danger.

**IF YOUR CAR IS STOLEN**

We help the policy find it. Over 80% of Mercedes-Benz vehicles reported stolen are recovered when tracked by Tele Aid.

4

## IF YOU LOCK YOUR KEYS IN YOUR CAR

Give us a call, provide your password, and we'll open it up for you.

## A CELL PHONE CAN'T ALWAYS HELP YOU.

Alvaro de Prat of Coral Gables, Florida, was on his way home at night in a torrential downpour when a van rear-ended his Mercedes-Benz. The impact propelled his car forward into another car. *"It was a terrible feeling because it was dark, it was raining and everything in my pocket – including my cell phone – ended up under my seat."* Mr. de Prat recalls. *"So, I couldn't even call anyone for help."* But seconds later, help came when a Tele Aid Response Specialist asked if he was all right. Tele Aid then directed the Highway Patrol to his location and called his wife. *"This is the first car accident I've had and I can't tell you how much it helps to have somebody to talk to and reassure you that help's on the way. Mercedes-Benz is the best and will always be my brand of car."*

## WHEN TIME COUNTS, COUNT ON TELE AID

With Tele Aid, you have fewer things to worry about during a critical situation. We're here any time you need us – 24 hours a day, every day.
Tele Aid officers a wide range of services. To learn more, visit MBUSA.com or simply press the I-button.

24.    Defendants' promotion of the Tele Aid system in terms such as those set

forth above was so pervasive that all purchasers of the system necessarily received it.

25.    There was no reason to purchase Tele Aid system except the purchaser's

reliance on its ability to provide the described functions and services.

26.    The fact that such a system would cease to function and cease providing

safety and security on a future date was a material fact, necessary to be disclosed in order to make

defendants' statements not misleading.

27.    Defendants have been notified of the defect.

28.    Defendants have had ample opportunity to repair or replace the defective

TeleAid analog system. Defendants have not done so.

5

29.     MBUSA sent plaintiff a letter dated June 22, 2007 stating that it would stop providing TeleAid service on July 20, 2007 unless plaintiff upgraded to a digital unit.

30.     Plaintiff's husband contacted her dealership and was informed that the upgrade would cost between $800.00 to $1,200.00.

31.     On June 29, 2007, plaintiff's husband wrote MBUSA a letter protesting the charge for an upgrade.

32.     MBUSA responded to plaintiff via letter dated July 10, 2007 asserting that it could not anticipate the changes to the wireless networks and required plaintiff to pay for an upgrade or her service would be cancelled.

33.     MBUSA's letter also asserted that it did its upmost to develop and incorporate the changes for digital reception, but it took as late as model year 2005 for some models to complete.

34.     While MBUSA was working on incorporating its changes, it failed to convey to plaintiff and the putative class that any changes would be needed on their model vehicles.

35.     Resort to any informal dispute settlement mechanism or further opportunity to cure the breach of warranty would be futile, in that in some cases defendants have offered to remedy the breach only if payment is made.

## TOLLING OF LIMITATIONS

36.     Plaintiffs and class members did not discover and had no reasonable means of discovering the facts until a date within the limitations periods governing this action.

37.     Any applicable periods of limitations have been tolled because defendants knowingly and actively concealed the facts alleged herein, and such facts were not reasonably

6

knowable by plaintiffs and the class members prior to disclosure by defendants in July March 2007.

## CLASS ALLEGATIONS

38. Plaintiffs bring suit on behalf of a class.

39. The class consists of all persons with Illinois addresses who own vehicles equipped with Tele Aid analog systems that were purchased after the 2002 FCC Rule that cellular carriers would no longer be required to support the analog cellular network as of early 2008.

40. The class is so numerous that joinder of all members is impractical.

41. There are thousands of class members. Defendants have admitted in public statements on their web sites that TeleAid is the world's second-largest telematics provider and that MBUSA sold 248,080 vehicles in the U.S. in 2006 alone. Even if only 4% of these vehicles (9,992) are registered in Illinois, numerosity is satisfied.

42. There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members. These questions include:

A. Whether defendants breached their express written warranties by selling vehicles equipped with defective TeleAid analog systems and then failing to repair or replace the systems free of charge.

B. Whether defendants breached implied warranties by selling vehicles equipped with defective TeleAid analog systems and then failing to repair or replace the systems free of charge.

C. Whether defendants engaged in unfair or deceptive practices, in violation of the Illinois Consumer Fraud Act, by selling vehicles equipped with defective TeleAid analog systems while concealing the defect.

7

D.      Whether defendants committed fraud by selling vehicles equipped

with defective TeleAid analog systems while concealing the defect.

E.      Plaintiffs' claims are typical of the claims of the class members.

All are based on the same legal and factual theories.

F.      Plaintiffs will fairly and adequately protect the interests of the

class. Plaintiffs are committed to vigorously litigating this matter. Plaintiffs have retained counsel

experienced in handling class actions. Neither plaintiffs nor plaintiffs' counsel have any interests

which might cause them not to vigorously pursue this claim.

G.      A class action is a superior method for the fair and efficient

adjudication of this controversy. The key liability issues are the same for all class members.

## COUNT I – BREACH OF EXPRESS WRITTEN WARRANTY

43.      Plaintiffs incorporate by reference ¶¶ 1-42.

44.      Defendants breached the new vehicle limited warranty supplied to

plaintiffs and each class member by supplying an TeleAid analog system which defendants knew

was defective when furnished, in that it would cease to function on December 31, 2007.

45.      Plaintiffs bring suit pursuant to §2-313 of the Uniform Commercial Code

and the Magnuson Moss Consumer Warranty Act, 15 U.S.C. §2310.

WHEREFORE, plaintiffs request that the court enter judgment in favor of plaintiffs and the

class and against defendants for:

A.      Appropriate compensatory damages;

B.      Attorney's fees (pursuant to 15 U.S.C. §2310), litigation expenses and cost

        of suit.

8

C.      Such other or further relief as the Court deems appropriate.

## COUNT II – BREACH OF IMPLIED WARRANTY

46.     Plaintiffs incorporate by reference ¶¶ 1-42.

47.     Defendants breached the implied warranties of merchantability (section 2-314 of the Uniform Commercial Code, 810 ILCS 5/2-314) by selling and leasing defective TeleAid analog systems. The systems were defective, failed to conform to the labeling on the vehicle, and failed to conform to the contract description.

48.     Plaintiffs are entitled to sue for the implied warranty breach under the Magnuson Moss Consumer Product Warranty Act, 15 U.S.C. §2510.

WHEREFORE, plaintiffs request that the court enter judgment in favor of plaintiffs and the class and against defendants for:

A.      Appropriate compensatory damages;

B.      Attorney's fees (pursuant to 15 U.S.C. §2310), litigation expenses and cost of suit.

C.      Such other or further relief as the Court deems appropriate.

## COUNT III – ILLINOIS CONSUMER FRAUD ACT

49.     Plaintiff incorporates ¶¶ 1-42.

50.     Defendants engaged in unfair and deceptive acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by selling TeleAid analog systems without disclosure of the material fact that they used analog technology and that such technology would be obsolete and cease to function by a date certain.

51.     Plaintiff and each class member suffered damages as a result of defendant's

9

conduct.

52.    Defendants engaged in such conduct in the course of trade and commerce.

53.    Defendants' conduct caused its customers to bear the cost of its return policy.

54.    Defendants should be enjoined from committing similar violations in the

future.

WHEREFORE, plaintiffs request that the court enter judgment in favor of plaintiffs and the class and against defendants for:

A.    Appropriate compensatory damages;

B.    Attorney's fees pursuant to the CFA, litigation expenses and cost of suit.

C.    Such other or further relief as the Court deems appropriate.

### COUNT IV – UNJUST ENRICHMENT

55.    Plaintiff incorporates ¶¶ 1-42.

56.    As a proximate and foreseeable result of defendants' actions, plaintiff suffered loss and damage while defendants profited and benefitted from the sale of vehicles containing TeleAid analog systems.

57.    Defendants have also unjustly benefitted from the sale of the upgraded units when the need to purchase the upgraded unit resulted from defendants' actions.

58.    Defendants have accepted the benefits of sale of vehicles containing TeleAid analog systems and the sale of the upgraded units.

59.    Defendants have unjustly enriched themselves at the expenses of plaintiff.

60.    Plaintiff is entitled to disgorgement and restitution of defendants' profits and benefits resulting from the actions described herein.

10

WHEREFORE, plaintiffs request that the court enter judgment in favor of plaintiffs and the class and against defendants for:

A.     Appropriate compensatory damages including reimbursement, restitution ad disgorgement from defendants of the benefits conferred by plaintiff and the class;

B.     Such other or further relief as the Court deems appropriate.

By: /s/Keith J. Keogh
Her Attorney

Keith J. Keogh
Alexander H. Burke
Law Offices of Keith J. Keogh, Ltd.
227 W. Monroe Street, Suite 2000
Chicago, Illinois  60606
312.726.1092 (office)
312.726.1093 (fax)
Attorney No. 39042

## JURY DEMAND

Plaintiff demands trial by jury.

/s/Keith J. Keogh
Keith J. Keogh

11

# EXHIBIT B

# EXHIBIT 2

**FILED**

J.N    NOV 1 6 2007
11 - 16 - 07
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ASHISH SEN and COLLEEN SEN, on behalf
of themselves and all others similarly situated,

Plaintiffs,

v.

MERCEDES-BENZ USA, LLC.

Defendant.

07CV6519
JUDGE MORAN
MAG. JUDGE NOLAN

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs, Ashish Sen and Colleen Sen ("Plaintiffs"), on behalf of themselves and all
others similarly situated, allege the following against the above-captioned Defendant, based upon
personal knowledge where applicable, information and belief and the investigation and research
of counsel:

## PARTIES

1.    Plaintiffs, Ashish Sen and Colleen Sen, are individuals residing at 2557 Farwell Ave.,
Chicago, Illinois 60645. Plaintiffs have been injured as a result of the unlawful conduct alleged
herein.

1

2.      Defendant, Mercedes-Benz USA, LLC ("MBUSA" or "Defendant"), is a wholly-owned subsidiary of Daimler North American Holding Corporation and is responsible for the sales, service and marketing of Mercedes-Benz products in the United States. MBUSA's principal place of business is 3 Paragon Drive, Montvale, New Jersey 07645.

## NATURE OF ACTION

3.      On June 4, 2004, Plaintiffs purchased a new 2004 Mercedes-Benz E55 from an authorized dealer of Defendant. The vehicle came equipped with Tele Aid, a communication and safety system which provides roadside assistance to Mercedes drivers in the event of an emergency, and Plaintiffs subscribed to the Tele Aid service.    Defendant represented to Plaintiffs through its brochures that the Tele Aid system would provide emergency services through a wireless network.

4.      Tele Aid originally operated on an analog wireless network.  In accordance with an August 2002 ruling by the Federal Communications Commission ("FCC"), wireless networks would no longer employ analog wireless technologies by February 2008.  As a result, MBUSA stated that analog-only Tele Aid systems would become obsolete after December 31, 2007.

5.      Defendant knew by August 2002 that any Model Year vehicles equipped with analog-only Tele Aid systems and would stop functioning. Defendant failed to mention this material information to any purchasers of Mercedes vehicles for Model Years 2002 through 2006.

6.      Defendant's actions have caused financial harm to Plaintiffs and the class (as defined in paragraph 38 below), who hereby seek compensatory damages and other such relief as the Court may award.

2

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to the Class
Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because Plaintiffs and class members are of
diverse citizenship from the Defendant; there are more than 100 class members nationwide; and
the aggregate amount in controversy exceeds $5,000,000. This court has personal jurisdiction
over the parties because Defendant is a resident of this state, conducts substantial business in this
state, has had systematic and continuous contacts with this state, and has agents and
representatives that can be found in this state.

8.      Venue is proper in this District under 28 U.S.C. § 1391(a) because Plaintiffs are
residents and citizens of this district, a substantial part of the events or omissions giving rise to
the claim occurred within this District, and Defendant has caused harm to Class members
residing within this District.

## TOLLING

9.      Consumers rely on an auto manufacturer's uniform representations in its brochures
and literature. Plaintiffs and the Class could not have discovered, even upon reasonable exercise
of diligence, that their Tele Aid system would become obsolete, expire and be of no value. In
addition, Plaintiffs and the Class could not have discovered that they would have to pay for an
expensive upgrade to their analog Tele Aid systems until MBUSA sent letters to informing them
that an upgrade was necessary to continue the system past December 31, 2007.

## FACTUAL ALLEGATIONS

### Background of the Tele Aid System

10.     The Tele Aid Emergency Calling and Communication System ("Tele Aid") is a safety
and security system designed by ATX Technologies, Inc. and MBUSA for use solely in

3

Mercedes vehicles. Tele Aid employs satellite and wireless technologies to connect Mercedes

drivers with a live response center in the event of an emergency. The response center then

notifies emergency service providers of the precise location of the driver.

11.     MBUSA uses standardized marketing and sales messages to promote the Tele Aid

system. MBUSA touted Tele Aid as a standard safety feature of its vehicles in its brochures and

on the manufacturer's suggested retail price ("MSRP") sticker. MBUSA's advertising of Tele

Aid's safety, security and convenience has played a significant role in promoting sales of

Mercedes vehicles. All these marketing and sales initiatives were initiated, drafted, created and

distributed from MBUSA's principal place of business in New Jersey.

12.     Specifically, MBUSA touts the Tele Aid system on its website:

If you require emergency aid, Roadside Assistance, or information while you're
traveling in a Mercedes-Benz vehicle equipped with Tele Aid, the Tele Aid
system can put subscribers in touch with the right people, exactly when they are
needed. Help is just the push of a button away.

Tele Aid is our way of using wireless technology to provide Mercedes-Benz
owners with location-specific security, information, and conveniences.

One push of the SOS button on your vehicle's overhead console connects you to a
Tele Aid Response Specialist who can notify emergency service providers of your
precise location, pinpointed by satellite. The specialist will stay on the line with
you until help arrives. Also, deployment of any air bag or Emergency Tensioning
Device (ETD) will automatically transmit an emergency call to the Tele Aid
Response Center.

The *Wrench* button connects you to a Roadside Assistance Specialist who will
know your location and what model vehicle you're driving — even before you say
a word.

The *i-button* connects you to a Tele Aid Response Specialist, available 24 hours a
day to answer any questions you may have.

Tele Aid uses satellites, wireless telecommunications technology, and trained
specialists to respond to your in-vehicle security needs and other requests around
the clock. When a subscriber presses any Tele Aid button, the call is answered by
a trained professional who automatically identifies their location, responds to their

4

request, or puts them in touch with the appropriate response personnel. New Mercedes-Benz vehicles are available with Tele Aid either as standard or optional equipment, depending on the model. All you need is a few minutes to activate your service so that Tele Aid is there for you whenever you need it.

Connecting Mercedes-Benz owners to emergency aid, Roadside Assistance, and information is just the beginning....

Thus, of central importance to these features and promises is the direct satellite hook-up and the ability to send and receive a signal.

13.    MBUSA's Tele Aid also offers a number of safety features such as remote door unlock, anti-theft alarm notification, and stolen vehicle recovery. When an air bag deploys in a Tele Aid equipped vehicle, the system automatically transmits an emergency call to the Tele Aid response center.

14.    MBUSA's Tele Aid utilizes wireless telephone networks to operate. The first Tele Aid systems were equipped to operate only on an analog wireless network ("analog-only").

15.    Sometime in 2000, MBUSA began equipping its vehicles with the analog-only Tele Aid safety and security systems.

## The FCC Eliminates the Analog Requirement

16.    The FCC had adopted the analog requirement in 1981. In May 2001, the FCC, after years of pressure from the wireless industry, proposed eliminating the analog requirement for wireless phone carriers.

17.    During the rulemaking process, the FCC sought comments from various telematics providers. Telematics companies use location technology and wireless communications to provide data applications in vehicles, particularly to provide safety services. For instance, one

5

such application is a crash notification system with the capability to automatically call an emergency dispatch for help.

18.    ATX and MBUSA, along with other telematics providers, argued against removing the analog requirement. ATX and MBUSA argued that elimination of the rule would significantly impair the ability to provide Tele Aid service since analog technology was necessary to provide wide-ranging coverage to its customers. In addition, ATX and MBUSA argued that digital standards were unable to transmit both voice and data on the same call, a feature essential to the operation of a telematics service.

19.    ATX and MBUSA also argued that the development cycle to design, test, and install equipment in vehicles is longer than a typical cellular provider. ATX and MBUSA stated that telematics devices such as Tele Aid were equipped in a vehicle that generally had a useful life of ten or more years.

20.    The FCC, however, concluded that the opposing arguments were not a sufficient basis to maintain the analog requirement. The FCC removed the analog requirement so that companies would switch to digital technology, which is more efficient than analog, uses less bandwidth, and provides consumers access to advanced services not feasible with analog technology.

21.    The FCC did, however, allow for a "sunset period" of five years for the rule eliminating the analog requirement to take effect. The purpose of the "sunset period" was to resolve any problems that might occur with the transition. Consequently, by February 2008, wireless companies will no longer be required to provide analog signals.

22.    In accordance with the FCC, U.S. and Canadian wireless carriers began shifting their networks from analog to digital, well before the February 2008 deadline.

6

## Analog-Only Systems Become Obselete

23.    Mercedes vehicles equipped with Tele Aid safety and security systems will have one of three types of systems:

- a.  Analog-only, which can operate only on analog networks;

- b.  Dual-mode, which can operate on either an analog or digital network; or

- c.  Analog-Digital Upgrade, which allows analog-only Tele Aid equipment to access the digital network

24.    Analog-only Tele Aid systems have become obsolete in areas where analog service has already been discontinued. MBUSA has stated that by December 31, 2007, all analog-only Tele Aid systems will no longer have a network to support it and will be obsolete.

25.    Approximately 200,000 of the 420,000 current Mercedes Tele Aid customers have an analog-only device.

26.    The analog-only Tele Aid system was a standard feature on all Mercedes vehicles from Model Year 2000 to 2004.

27.    Before elimination of the analog requirement, MBUSA notified the FCC that it anticipated deployment of digital Tele Aid systems by model year 2005. MBUSA began installing the dual-mode equipment on some of its Model Year 2005 vehicles. Thus, MBUSA continued to equip some of its vehicles with analog-only Tele Aid systems three years after the FCC announced the removal of the analog requirement.

28.    MBUSA accepted new Tele Aid subscriptions for analog-only systems as late as November 1, 2006, with full knowledge that analog-only Tele Aid would not operate after December 31, 2007, or earlier.

7

29.     Despite having full knowledge that Mercedes automobiles have a reasonable life expectancy of ten years or more, MBUSA withheld material information, namely, that the analog-only systems would become obsolete after December 31, 2007. MBUSA also failed to disclose that the vehicle owner would have to make significant financial investments in order to continue using the emergency and communication service of Tele Aid. Instead, Mercedes advertised the Tele Aid systems as a standard safety and security feature on the MSRP sticker.

## Plaintiffs' Experience

30.     On June 4, 2004, Plaintiffs jointly purchased a Model Year 2004 Mercedes-Benz E55. Plaintiffs' vehicle came equipped with the Tele Aid system, which Plaintiff subsequently activated. Plaintiffs have subscribed to Tele Aid since the purchase of their vehicle.

31.     At the time of the purchase, MBUSA expressly represented that using and operating Tele Aid would provide Plaintiffs with vehicle safety and security. Implied in these statements is that Tele Aid would continue to function to provide these features. Further, MBUSA represented that the Tele Aid system in their vehicle was free of defects and would be suitable for use as a car safety and aid device.

32.     Although Plaintiffs' vehicle purchase occurred nearly two years after the FCC's announcement of the removal of the analog requirement, at no point did MBUSA disclose to Plaintiffs that the Tele Aid unit in their vehicle was an analog-only unit that would not function on a digital network in three short years. MBUSA did not disclose that the unit would be obsolete after December 31, 2007.

33.     MBUSA did not disclose to Plaintiffs that they would have to install any additional equipment to operate on a digital network. MBUSA also did not disclose that Plaintiffs would have to purchase such equipment to operate the unit past December 31, 2007.

8

34.    In April 2007, Plaintiffs received a letter from MBUSA that their analog-only Tele Aid service would be disconnected unless the owner purchased an analog-digital upgrade. This upgrade would cost anywhere from $1000 to $2100 in addition to any labor charges by the dealer for performing the installation.

35.    MBUSA only offers this upgrade to owners of vehicles newer than Model Year 2001. Model Year 2000 vehicles cannot be upgraded due to the vehicle's design.

36.    MBUSA claims that the upgrade is not covered under warranty because the Tele Aid unit is not defective—even though it lacks something (a signal) essential to the proper use for the purpose for which a thing is to be used after December 31, 2007.

37.    From 2002 on, MBUSA (and ATX) knew or should have known that cellular providers were converting to digital systems and that analog-only units of Tele Aid would not function on digital networks.

38.    As a result of Defendant's conduct,

    a.  Plaintiffs will incur costs and expenses to replace and/or repair the analog-only Tele Aid system to function with the digital cellular service;

    b.  Plaintiffs have paid for a product that cannot operate to provide safety, Roadside Assistance, and security as represented.

## CLASS ACTION ALLEGATIONS

39.    Plaintiffs bring this suit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all other similarly situated persons as members of both a nationwide class and Illinois statewide class. The classes are defined as follows:

    a.  Under the New Jersey Consumer Fraud Act, warranty and unjust enrichments claims: All persons or entities in the United States who purchased or leased a

9

Model Year 2002 to 2006 Mercedes-Benz vehicle equipped with an analog-only Tele Aid system ("nationwide class").

b. Under the Illinois Consumer Fraud Act claims: All persons or entities in the State of Illinois who purchased or leased a Model Year 2002 to 2006 Mercedes-Benz vehicle equipped with an analog-only Tele Aid system ("Illinois class").

40.    Numerosity. The proposed class is sufficiently numerous, as hundreds of thousands of consumers purchased Mercedes vehicles with analog-only Tele Aid systems. The Class members are so numerous and dispersed throughout the State of Illinois and across the country such that joinder of all members is impracticable. The Class members, can be identified by, *inter alia*, records maintained by Defendant.

41.    Common Questions of Fact and Law. Common questions of fact and law exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class, pursuant to Rule 23(b)(3). Among the questions of fact and law that that predominate over any individual issues are:

a. Whether MBUSA failed to provide consumers with material information regarding their analog-only Tele Aid systems, namely, that the systems would become obsolete and would require significant costs to the consumer to continue providing emergency and communication services;

b. Whether Class members are entitled to an upgrade of their analog-only systems by MBUSA at no cost;

c. Whether Defendant knew that all analog-only Tele Aid systems would become obsolete after December 31, 2007, or earlier, and concealed this fact from Plaintiffs and the Class members;

d. Whether Plaintiffs and the Class sustained damage and loss as a result of Defendant's conduct as alleged herein;

e. The scope, extent, and measure of damages and equitable relief that should be awarded; and

f. The amount of attorneys' fees, prejudgment interest, and costs of suit to which the Class is entitled.

42. Typicality. Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs and the Class sustained damages arising out of the Defendant's wrongful conduct as detailed herein. Specifically, Plaintiffs' claims and the Class ' claims arise from the Defendant's failure to disclose that the analog Tele Aid units equipped on their vehicles would become obsolete as of December 31, 2007.

43. Adequacy. Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel competent and experienced in class action lawsuits. Plaintiffs have no interests antagonistic to or in conflict with those of Class members and therefore should be adequate as representatives for the Class members.

44. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the Class members is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility inconsistent and potentially conflicting adjudication of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

11

## CAUSES OF ACTION

### COUNT I
### Violation of New Jersey Consumer Fraud Act

45.     Plaintiffs repeat and re-allege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

46.     Plaintiffs and the nationwide class bring suit under the New Jersey Consumer Fraud Act. By reason of the conduct alleged herein, and by failing to disclose material facts about analog-only Tele Aid systems, Defendant's actions violated the provisions of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2.

47.     Defendant's advertising and brochures were prepared in and disseminated by MBUSA from the state of New Jersey.

48.     Defendant's actions constitute an unconscionable commercial practice, deception, false pretense, false promise, or misrepresentation in connection with the sale of its vehicles in that Defendant failed to disclose that Tele Aid would become obsolete after December 31, 2007, and that Class members would be required to spend significant amounts of money to have Tele Aid services after this date.

49.     Defendant knowingly concealed, suppressed, and omitted the material fact that Plaintiffs' Tele Aid systems would be obsolete after December 31, 2007 unless the Plaintiffs purchased an expensive upgrade.

50.     Defendant acted with the intent that Plaintiffs and Class members rely upon this concealment, suppression, and omission in connection with their purchase of the Mercedes vehicles. Defendant knew that Mercedes vehicles generally had a useful life of ten years or more and that the analog-only systems would cease to function well before the end of the vehicle's useful life.

12

51.     As a result, Plaintiffs and the Class have suffered or will suffer ascertainable losses of money and property as a direct and proximate result of MBUSA's practices.

## COUNT II

## Damages Under the Illinois Consumer Fraud Act

52.     Plaintiffs repeat and re-allege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

53.     Plaintiffs and the Illinois class bring suit under the Illinois Consumer Fraud Act. Plaintiffs and the Class are consumers within the meaning and coverage of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"), 815 ILCS 505/1 *et seq.*

54.     By reason of the conduct alleged herein, and by failing to disclose material facts about analog-only Tele Aid systems, Defendant's actions violated the provisions of the Illinois Consumer Fraud Act.

55.     Defendant's actions constitute a deception, fraud, false pretense, false promise, and misrepresentation in connection with the sale of its vehicles in that Defendant failed to disclose that Tele Aid would become obsolete after December 31, 2007, and that Class members would be required to spend significant amounts of money to have Tele Aid services after this date.

56.     Defendant knowingly concealed, suppressed, and omitted the material fact that Plaintiffs' Tele Aid systems would be obsolete after December 31, 2007 unless the Plaintiffs purchased an expensive upgrade.

57.     Defendant acted with the intent that Plaintiffs and Class members rely upon this concealment, suppression, and omission in connection with their purchase of the Mercedes

13

vehicles. Defendant knew that Mercedes vehicles generally had a useful life of ten years or more and that the analog-only systems would cease to function well before the end of the vehicle's useful life.

58.    As a result, Plaintiffs and the Class have suffered or will suffer ascertainable losses of money and property as a direct and proximate result of MBUSA's practices.

## COUNT III

### Injunctive Relief Under The
### Illinois Deceptive Trade Practices Act

59.    Plaintiffs repeat and re-allege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

60.    Plaintiffs and the Illinois class bring suit under the Illinois Deceptive Trade Practices Act. Plaintiffs seek injunctive relief under the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*

61.    Because of its non-disclosure of material facts alleged above, MBUSA deceived Plaintiffs and the other members of the Class. MBUSA's deceptive conduct occurred in the course of its engaging in trade or commerce.

62.    By failing to disclose the material fact that analog-only Tele Aid systems would be obsolete after December 31, 2007 without an upgrade at a significant cost, MBUSA intentionally and willfully attempted to mislead consumers as to the operability of Tele Aid. MBUSA engaged in these deceptive acts and practices in order that Plaintiffs and the Class would purchase or continue to purchase MBUSA automobiles.

14

63.     As a result of Defendant's deceptive trade practices, Plaintiffs and Class members whom have not yet paid for the analog-digital upgrade are entitled to injunctive relief in the form of an upgrade without charge.

## COUNT IV

## Breach of Express Warranty

64.     Plaintiffs repeat and re-allege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

65.     Mercedes has breached its express warranties to Plaintiffs and to the Class to repair and/or replace their defective Tele Aid systems.

66.     Defendants expressly warranted to Plaintiffs and Class that the warranty would cover defects in their Mercedes vehicles. As the warranty states, "any authorized Mercedes-Benz center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period."

67.     Plaintiffs' analog-only Tele Aid system is defective since it can no longer operate after December 31, 2007. Signal capability of Tele Aid is essential to the continuing operability of the safety and security functions of Tele Aid, and thus, the analog-only systems' lack of signal capability renders the systems defective. MBUSA, however, refuses to repair or replace the defective Tele Aid system under the warranty without substantial cost.

68.     Defendant also specifically warranted its Roadside Assistance Program, namely its Tele Aid system, as part of the extended limited warranty sold to Plaintiffs. Defendant promised in the extended warranty that Plaintiffs will never pay a deductible for warranty-covered service, repairs or parts at any of its three hundred MBUSA dealerships nationwide. Defendant sold

15

Plaintiffs this extended limited warranty covering the Tele Aid system but refuses to honor the warranty and repair the defective Tele Aid system.

69.    Defendant has thus breached its express warranties to Plaintiffs and all other class members to repair and/or replace their analog-only equipment so that they are in good operational condition and suitable for use in providing emergency services.

70.    As a result, Plaintiffs and the Class have suffered or will suffer ascertainable losses of money and property as a direct and proximate result of MBUSA's practices.

## COUNT V

## Implied Warranty of Merchantibility

71.    Plaintiffs repeat and re-allege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

72.    MBUSA is a merchant with respect to Mercedes vehicles and Tele Aid systems.  At the time Plaintiffs and Class members purchased their vehicles, MBUSA represented that Tele Aid would provide Plaintiffs with safety, roadside assistance, and security.  Implied in these statements is that Tele Aid would continue to function and provide these features for the life of the vehicle and that the Tele Aid system was free of defects and suitable for use.

73.    Since the analog Tele Aid units will be obsolete after December 31, 2007, Plaintiffs' and Class Members' analog-only Tele Aid systems will not operate as represented in the contract.  In addition, the analog-only Tele Aid systems will not be fit for its ordinary purposes of providing a functioning safety and security system to the vehicle owner.

74.    As a result, Plaintiffs and the Class have suffered or will suffer ascertainable losses of money and property as a direct and proximate result of MBUSA's practices.

16

## COUNT VI

### Unjust Enrichment

75.    Plaintiffs repeat and re-allege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

76.    Defendant has been enriched by its fraudulent acts and omissions alleged herein in the State of Illinois where class members reside.

77.    These fraudulent acts and omissions allowed Defendant to unlawfully receive monies that would not have been obtained but for Defendant's acts and omissions.

78.    Plaintiffs and the Class purchased vehicles from MBUSA on MBUSA's representation that Tele Aid would continue to provide emergency services. Plaintiffs and the Class members purchased the vehicles without MBUSA disclosing that Plaintiffs would incur significant costs and expenses to replace and repair the analog-only Tele Aid system.

79.    Plaintiffs and Class must spend (and have spent) between $1100 and $2100 to repair or replace their defective analog-only Tele Aid systems. Defendant is unjustly enriched in avoiding the financial obligations associated with providing the digital upgrade and avoiding labor costs to MBUSA dealers for the installation.

80.    Defendant lacks any legal justification for having engaged in a course of fraudulent acts and omissions as alleged herein at Plaintiffs' and the Class' expense.

81.    No other remedy at law can adequately compensate Plaintiffs for the damages occasioned by Defendant's conscious choice to engage in a course of fraudulent acts and omissions.

17

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and the Class as follows:

A. For an order certifying the proposed Class herein under Federal Rule of Civil Procedure 23(a) and (b)(3) and appointing Plaintiff and Plaintiff's counsel of record to represent said Class;

B. For an order providing injunctive relief to Plaintiffs and the Class in the form of a Tele Aid upgrade without charge;

C. Awarding Plaintiffs and Class members compensatory damages against Defendant in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowable by law;

D. Awarding the Plaintiffs and the Class all statutorily available damages under N.J.S.A. 56:8-2;

E. Awarding the Plaintiffs and the Class all statutorily available damages under 815 ILCS 505/1 et seq.; .

F. Awarding the Plaintiffs and the Class injunctive relief in the form of an upgrade without charge under 815 ILCS 510/1 et seq.

G. Awarding the Plaintiffs and the Class members the reasonable costs and expenses of suit, including attorneys' fees, filing fees; and

H. Awarding the Plaintiffs and the Class compensation based on the money saved by MBUSA as a result of Plaintiffs paying for the installation and repair.

18

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury.

Dated: November 16, 2007

Respectfully submitted,

By: _____
Marvin A. Miller
Lori A. Fanning
**Miller Law LLC**
115 S. LaSalle Street
Suite 2910
Chicago, IL 60603
(312) 332-3400
Facsimile: (312) 676-2676

Tracy D. Rezvani
**FINKELSTEIN THOMPSON LLP**
The Duval Foundry
1050 30th Street, NW
Washington, D.C. 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

Rosemary M. Rivas
Mark Punzalan
**FINKELSTEIN THOMPSON LLP**
100 Bush St., Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

19