# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ASHISH SEN and COLLEEN SEN, on behalf of themselves and all others similarly situated, | No. 07C 6519 (JPM) |
| Plaintiffs, | |
| v. | |
| MERCEDES-BENZ USA, LLC, | |
| Defendant. | |

## DEFENDANT MERCEDES-BENZ USA, LLC'S MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ....................................................................................................................... 7

I.      THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE
        MBUSA HAD NO DUTY TO DISCLOSE CHANGES IN THE LAW ........................... 8

II.     COUNT I SHOULD BE DISMISSED BECAUSE ILLINOIS, NOT NEW JERSEY,
        LAW APPLIES................................................................................................................. 12

III.    COUNT II SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD
        (A) AN ACTIONABLE OMISSION, (B) MATERIALITY, (C) PROXIMATE
        CAUSATION, OR (D) DAMAGES................................................................................. 13

        A.      MBUSA Did Not and Could Not Have Known in 2004 when Analog Service
                Would Be Discontinued.........................................................................................14

        B.      Plaintiffs Fail to Allege that Tele Aid's Longevity Constitutes a Material Fact ...15

        C.      Plaintiffs Fail to Allege Proximate Causation ......................................................16

        D.      Plaintiffs Fail to Allege Actual Damages ............................................................17

IV.     COUNT III SHOULD BE DISMISSED BECAUSE THE POTENTIAL
        DISCONTINUATION OF ANALOG SERVICE WAS FULLY DISCLOSED ............. 18

V.      COUNT IV SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED
        TO ALLEGE A DEFECT COVERED BY AN EXPRESS WARRANTY ..................... 19

VI.     COUNT V SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK PRIVITY
        WITH MBUSA AND BECAUSE PLAINTIFFS' VEHICLE IS FIT FOR THE
        ORDINARY PURPOSE OF TRANSPORTATION ......................................................... 19

VII.    COUNT VI SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED
        TO PLEAD EITHER MBUSA'S ENRICHMENT OR THE ABSENCE OF AN
        ADEQUATE REMEDY AT LAW .................................................................................. 21

CONCLUSION.................................................................................................................... 22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Acme Propane, Inc. v. Tenexco, Inc.*,
844 F.2d 1317 (7th Cir. 1988) ..................................................................8

*Bell Atlantic v. Twombly*,
127 S. Ct. 1955 (2007).............................................................................7

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992).............................................................................11

*Stahl v. U.S. Department of Agriculture*,
327 F.3d 697 (8th Cir. 2003.) ..................................................................3

*Conley v. Gibson*,
355 U.S. 41 (1957)..................................................................................7

*Dufau v. U.S.*,
22 Cl.Ct. 156, 159 (Cl.Ct. 1990)..............................................................10

*E.E.O.C. v. Concentra Health Services, Inc.*,
496 F.3d 773 (7th Cir. 2007) ..................................................................7

*Federal Crop Insurance Corporation v. Merrill*,
332 U.S. 380 (1947)..............................................................................9

*Heliotrope General, Inc. v. Ford Motor Co.*,
189 F.3d 971 (9th Cir. 1999) ..................................................................8

*Killingsworth v. HSBC Bank Nevada, N.A.*,
507 F.3d 614 (7th Cir. 2007) ..................................................................7

*McCready v. eBay, Inc.*,
453, F.3d 882 (7th Cir. 2006) ..................................................................3

*Nordstrom v. United States*,
342 F.2d 55 (Ct.Cl. 1965) .................................................................10, 11

*Owings v. Brown*,
86 F.3d 1178, 1996 WL. 267280 (Table) (Fed. Cir. 1996).........................10

*Palay v. U.S.*,
349 F.3d 418 (7th Cir. 2003) ..................................................................3

*Papasan v. Allain*,
    478 U.S. 265 (1986)..................................................................................7

*Pence v. U.S.*,
    52 Fed. Cl. 643 (Fed. Cl. 2002) ...........................................................10

*Rucker v. Saxbe*,
    552 F.2d 998 (3d Cir. 1977)..................................................................10

*Swierkiewicz v. Sorema N. A.*,
    534 U.S. 506 (2002)................................................................................7

*Tanner v. Jupiter Realty Corp.*,
    433 F.3d 913 (7th Cir. 2006) ................................................................12

## STATE CASES

*Advent v. Allstate Insurance Co.*,
    862 N.E.2d 871 (Ohio App. Ct. 2006)....................................................8

*Avery v. State Farm Mutual Automobile Insurance Co.*,
    216 Ill. 2d 100, 835 N.E.2d 801 (Ill. 2005) .........................................17

*Barbara's Sales, Inc. v. Intel Corp.*,
    __ N.E.2d __, 2007 WL. 4200855 (Ill. Nov. 29, 2007).......................12, 13,
                                                                            16, 17

*Board of Directors of Carriage Way Property Owners Association v. Western
    National Bank of Cicero*,139 Ill. App. 3d 542 (1st Dist. 1985)..................21

*Butitta v. First Mortgage Corp.*,
    218 Ill. App. 3d 12, 578 N.E.2d 116 (1991) .........................................16

*Collum v. Fred Tuch Buick*,
    6 Ill. App. 3d 317, 285 N.E.2d 532 (1st Dist. 1972)..............................19

*Connick v. Suzuki Motor Co.*,
    174 Ill. 2d 482, 675 N.E.2d 584 (Ill. 1996) ....................................14, 15

*Disc Jockey Referral Network, Ltd. v. Ameritech Public of Illinois*,
    230 Ill. App. 3d 908, 596 N.E.2d 4 (1st Dist. 1992)..............................18

*Gredell v. Wyeth Laboratories, Inc.*,
    367 Ill. App. 3d 287, 854 N.E.2d 752 (1st Dist. 2006)..........................16

*Griffin v. Universal Casualty Co.*,

274 Ill. App. 3d 1056 (1st Dist. 1995) .......................................................................18

*Guinn v. Hoskins Chevrolet,*
361 Ill. App. 3d 575, 836 N.E.2d 681 (1st Dist. 2005)..........................................21, 22

*Haley v. AIG Life Insurance Co.,*
2002 WL. 417419 (D.N.D. 2002) ............................................................................8, 9

*Hoff v. Sander,*
497 S.W.2d 651 (Mo. App. 1973) .................................................................................9

*Makertichian v. Mercedes-Benz USA, LLC,*
347 Ill. App. 3d 828, 807 N.E.2d 1165 (1st Dist. 2004)..............................................19

*Morris B. Chapman & Associate v. Kitzman,*
193 Ill. 2d 560, 739 N.E.2d 1263 (Ill. 2000) ..............................................................12

*Notaro Homes, Inc. v.  Chicago Title Insurance Co.,*
309 Ill. App. 3d 246, 722 N.E.2d 208 (2d Dist. 1999) overruled on other
grounds by *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill.2d
326 (Ill. 2006) ............................................................................................11, 12, 15

*Oggi Trattoria and Caffe, Ltd. v. Isuzu Motors America, Inc.,*
372 Ill. App. 3d 354, 865 N.E.2d 334 (1st Dist. 2007).........................................20, 21

*Oliveira v. Amoco Oil Co.,*
201 Ill. 2d 134, 776 N.E.2d 151 (Ill. 2002) ...........................................................13, 16

*Ramirez v. Smart Corp.,*
371 Ill. App. 3d 797, 863 N.E.2d 800 (3d Dist. 2007) ................................................21

*Randels v. Best Real Estate, Inc.,*
243 Ill. App. 3d 801, 612 N.E.2d 984 (2d Dist. 1993) ...................................11, 12, 15

*Robacki v. Allstate Insurance Co.,*
127 Ill. App. 3d 294, 468 N.E.2d 1251 (1st Dist. 1984)..............................................18

*Rockford Memorial Hospital v. Havrilesko,*
368 Ill. App. 3d 115, 858 N.E.2d 56 (2d Dist. 2006) ............................................14, 15

*Roy v. Audubon Insurance Co.,*
652 So. 2d 995 (La. App. Ct. 1993)...............................................................................8

*Saunders v. Michigan Avenue National Bank,*
278 Ill. App. 3d 307 (1st Dist. 1996) .........................................................................18

*Season Comfort Corp. v. Ben A. Borenstein Co.*,
   281 Ill. App. 3d 648 (1st  Dist. 1995) .........................................................................21

*Shoop v. DaimlerChrysler Corp.*,
   371 Ill. App. 3d 1058, 864 N.E.2d 785 (1st Dist. 2007)..............................................20

*Varacallo v. Mass. Mutual Life Insurance Co.*,
   332 N.J. Super. 31, 752 A.2d 807 (N.J. 2000)............................................................13

*White v. DaimlerChrysler Corp.*,
   368 Ill. App. 3d 278, 856 N.E.2d 542 (1st Dist. 2006).........................................14, 15

*Yoder v. American Travellers Life Insurance Co.*,
   814 A.2d 229 (Pa. Super. Ct. 2002) ..............................................................................8

*Young v. American Family Mutual Insurance Co.*,
   No. CV-06-1494-PHX-DGC, 2007 WL. 1559935
   (D. Ariz. May 29, 2007)..................................................................................8, 9, 10

## FEDERAL STATUTES

Fed.R.Civ.P. 12(b) ............................................................................................................3, 6

## STATE STATUTES

810 ILCS 5/2-314 .................................................................................................................20

815 ILCS 505/2 ....................................................................................................................14

## MISCELLANEOUS

67 Fed. Reg. 77175, 2002 WL 31814254
   (December 17, 2002) ..................................................................................................5, 6

In the Matter of Year 2000 Biennial Regulatory Review, FCC 02-229
   (September 24, 2002)..................................................................................................5, 6

Memorandum Opinion and Order, FCC 07-103, 2007 WL 1744280 ......…………….6, 14

## INTRODUCTION

The fundamental question raised by Plaintiffs Ashish and Colleen Sen in their Complaint is whether the lawful decision by a third-party wireless service provider to discontinue analog cellular service to which Plaintiffs annually subscribed, a decision made long after Plaintiffs purchased their vehicle, can give rise to liability against Mercedes-Benz USA, LLC ("MBUSA") under Illinois law. For the reasons explained below, it cannot.

The Sens complain that in early 2008 the Tele Aid system in their Mercedes-Benz automobile will not be operable—the reason for this is that the wireless service provider for the Tele Aid service, not MBUSA, will discontinue its analog signal. The Tele Aid system in the Sens' vehicle uses a wireless analog signal to send location and vehicle function information from the Tele Aid equipment installed in the vehicle to customer service personnel who provide the Tele Aid service. Federal telecommunications regulations allow all wireless service providers the option of discontinuing analog service as of February 18, 2008. These independent wireless network providers have advised MBUSA that they, in fact, plan to discontinue analog wireless service after the law allows it. These independent decisions by the wireless service providers will impact the Tele Aid services in some Mercedes-Benz vehicles because the equipment in those vehicles operates on an analog signal.

Although the Tele Aid equipment was part of the standard equipment in the Sens' Mercedes-Benz vehicle, for the system to be operational, they were required to subscribe annually for Tele Aid *service*. The Subscriber Agreement they executed explicitly advised them that (1) their Tele Aid system uses an analog cellular telephone signal provided by independent companies, and (2) if that signal was terminated or restricted, Tele Aid services might not be available. Despite this, the Sens allege that MBUSA violated the New Jersey Consumer Fraud

Act, the Illinois Consumer Fraud and Deceptive Trade Practices Act ("Consumer Fraud Act" or "Act"), and the Illinois Deceptive Trade Practices Act ("DTPA") by failing to inform them that their wireless service could be discontinued some time after they bought their car.  In addition, the Sens claim that MBUSA breached express and implied warranties, apparently by failing to prevent the Federal Communication Commission ("FCC") from promulgating a lawful regulation.  Finally, Plaintiffs claim that MBUSA was unjustly enriched because the FCC changed the regulation and allowed wireless service providers the option of discontinuing analog service.

Plaintiffs' claims rely on the faulty premise that MBUSA had a legal obligation to inform them at the time they bought their vehicle of the possible consequences if independent wireless service providers exercised an optional legal right to discontinue analog service at some unspecified future date, even though (1) the actual date when wireless providers would be allowed this option was not finally determined and (2) whether a particular wireless service provider would avail itself of this option, once the option was allowed, was unknown.  Because MBUSA had (and has) no such obligation under the law, the Complaint should be dismissed in its entirety.

The Complaint also should be dismissed because the risk that analog service would be discontinued was explicitly disclosed in Plaintiffs' Subscriber Agreement:

> **Your Tele Aid system uses analog cellular telephone signals.  If the supporting wireless carrier and/or its roaming partners terminate or restrict analog service, the Tele Aid Services may not be available.** UNDER THIS CIRCUMSTANCE, SOME OR ALL OF THE TELE AID SERVICES MAY BE SUSPENDED OR TERMINATED WITHOUT PRIOR NOTICE TO YOU AND WITHOUT ANY LIABILITY.

(Exhibit A, Tele Aid Subscriber Agreement for Mercedes-Benz Vehicles ("Subscriber Agreement") (bold and All Caps in original.)[1]

## BACKGROUND

Plaintiffs Ashish and Colleen Sen are Illinois residents who purchased a new 2004 Mercedes-Benz E55 in June 2004.  (Comp., ¶¶ 1, 3.)   The vehicle came equipped with Tele Aid, a communication and safety system which provides roadside assistance to drivers in the event of an emergency.  (*Id.* at ¶¶ 3, 10.)   The Tele Aid system in Plaintiffs' vehicle operates on an analog wireless network.  (*See id.* at ¶ 3, 26.)  The Tele Aid equipment was a standard feature in Plaintiffs' vehicle; Plaintiffs did not pay an additional fee for the equipment, nor do they allege that they would have paid less for the vehicle had they known that analog service might be discontinued in the future.  (*Id.* at ¶¶  3, 26, 30.)  Plaintiffs also do not allege that their Tele Aid system has not performed properly or failed to provide the service they expected since they purchased their vehicle.  (*See id.*)

Plaintiffs allege that they subscribed to the Tele Aid service after purchasing their vehicle.  (*Id.* at ¶ 30.)  What Plaintiffs neglect to mention is that this subscription required an annual contract separate from the purchase of their vehicle  ("Subscriber Agreement"). (*See*

---

[1]     On a motion to dismiss, the Court may take judicial notice of matters of public record, including records and reports of administrative bodies.  *Palay v. U.S.*, 349 F.3d 418, 425 (7th Cir. 2003) ("[I]n resolving a motion to dismiss, the district court is entitled to take judicial notice of matters in the public record.").  The Court may also consider contracts governing the parties' relationship.  *McCready v. eBay, Inc.* ,453 F.3d 882, 891 (7th Cir. 2006) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." (citations omitted).) *Cf. Stahl v. U.S. Dept. of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003.)  Therefore, in ruling on this motion to dismiss, the Court may consider the FCC regulations set forth in the Federal Register, the regulatory history, the Subscriber Agreement, and the warranty documents.  Alternatively, pursuant to Fed.R.Civ.P. 12(b), the Court may convert this motion to dismiss into one for summary judgment.

Exhibit A, Subscriber Agreement, at ¶¶ 1, 4.)[2]  In bold-face type and capital letters, the

Subscriber Agreement informed Plaintiffs:

> **Your Tele Aid system uses analog cellular telephone signals.
> If the supporting wireless carrier and/or its roaming partners
> terminate or restrict analog service, the Tele Aid Services
> may not be available.**  UNDER THIS CIRCUMSTANCE,
> SOME OR ALL OF THE TELE AID SERVICES MAY BE
> SUSPENDED OR TERMINATED WITHOUT PRIOR NOTICE
> TO YOU AND WITHOUT ANY LIABILITY.

(*Id.* at ¶ 2 (bold and all caps original).)   Furthermore, the sales brochure for the 2004 Mercedes-

Benz E-Class vehicles, which include Plaintiff's vehicle, specifically stated that:

> First year's basic Tele Aid service provided at no additional cost with subscription
> and includes 30 minutes airtime (including required acquaintance call).
> Subscription is required for service to be active.  Service operates only where
> cellular and Global Positioning System coverage are available.

(Exhibit F,  Excerpt of Brochure for 2004 Mercedes-Benz E-Class vehicles.)

Despite these explicit warnings, Plaintiffs complain that MBUSA did not inform them of

the potential discontinuation of analog service to their Tele Aid system. (Comp. at ¶¶ 5; *see also*

*id.* at ¶¶ 32, 37.)  Specifically, Plaintiffs allege that from 2002 on, MBUSA misrepresented

and/or failed to disclose the fact that "the analog-only systems would become obsolete after

December 31, 2007." (*Id.* at ¶¶ 29, 37; *see also id.* at ¶ 14.)

The Sens also allege that MBUSA's brochures, website, and MSRP sticker represented

that the Tele Aid system was a standard safety and security feature and would provide

emergency services through a wireless network.  (*Id.* at ¶¶ 3, 11-12.)  According to the Sens,

these purported express statements implied "that Tele Aid would continue to function to provide

these features." (*Id.* at ¶ 31.)  The Complaint does not allege that the Sens reviewed or relied

---

[2]      Exhibit A is a standard form Tele Aid Subscriber Agreement in effect in June 2004,
which reflects all terms and conditions to which Plaintiffs agreed in subscribing to the Tele Aid
service.

upon the brochure, website or MSRP sticker in making their purchasing decision.  (*See id.*)

Plaintiffs acknowledge that the discontinuation of analog service to their Tele Aid system results from a change in an FCC regulation that allowed, but did not require, third parties to discontinue analog wireless service.  (*Id.* at ¶¶ 4, 16-22.)  In August 2002, the FCC ruled that it would no longer require wireless carriers to provide analog service following a sunset period. (*Id.* at ¶¶ 20-21; *see* Exhibit B, FCC Press Release, August 8, 2002; Exhibit C, <u>In the Matter of Year 2000 Biennial Regulatory Review</u> ("<u>2000 Biennial Regulatory Review</u>"), FCC 02-229, adopted on August 8, 2002 and released September 24, 2002; Exhibit D, 67 Fed. Reg. 77175, 2002 WL 31814254 (December 17, 2002) (consolidated summary of the Federal Communications Commission's Report and Order (R&O), FCC 02-229, adopted August 8, 2002, and released September 24, 2002, and Second Report and Order (2nd R&O), FCC 02-247, adopted September 10, 2002, and released September 24, 2002).

The FCC provisionally scheduled a five-year sunset period, concluding in February 2008; however, the FCC explicitly envisioned the possibility of extending the sunset period beyond five years:

> In order to monitor the progress made by the wireless and hearing aid industries in developing solutions, and ensure that wireless services are continuing to be made available to persons with hearing disabilities as well as 911-only consumers, the Commission will require that, no later than the third and fourth anniversary of the effective date of this order, certain CMRS licensees and other entities file reports with the Commission.  The reports will be required from all cellular licensees providing nationwide coverage … The information contained in the reports will be used to determine *whether or not the Commission will initiate a proceeding to extend the sunset date* or take appropriate enforcement action under section 255.

(Exhibit D, 67 Fed. Reg. 77175, 77179; *see also* Exhibit C, <u>2000 Biennial Regulatory Review</u>, ¶ 15 ("We note that *if* hearing-aid compatible devices are not available, or market conditions change, *we will not eliminate the rule at the conclusion of the five-year period*.") (emphasis

added).)   Indeed, the FCC did not finally determine when the sunset period would end until June

2007:  "The record before us demonstrates that five-year sunset of the requirement has achieved

the Commission's goals of facilitating the migration … from analog to digital handsets and that,

on balance, the public interest would not be served by extending the requirement beyond

February 18, 2008."  (Exhibit E, Memorandum Opinion and Order, FCC 07-103, 2007 WL

1744280, ¶ 1.)

Moreover, although the 2002 FCC rule permitted wireless providers to discontinue

service at a future date, the FCC did not anticipate that all wireless providers would exercise this

option:

> [A]lthough we are establishing the date upon which we will no longer require
> carriers to provide cellular service consistent with AMPS specifications, the
> removal of the requirement does not preclude carriers from continuing to
> provide analog service.  Indeed, *we do not anticipate that, as a general matter,
> carriers will immediately discontinue such service* as it is reasonable to conclude
> that analog service will continue to be available as long as consumers demand it.

(Exhibit C, 2000 Biennial Regulatory Review, ¶ 33 (emphasis added); *see also* Exhibit D, 67

Fed. Reg. 77175, at 77175 ("The actions that the Commission takes in these items amends its

rules to modify the requirement that cellular carriers provide analog service compatible with

Advanced Mobile Phone Service (AMPS) specifications by establishing a five-year transition

period after which the analog standard will not be required, *but may still be provided*.")

(emphasis added).)

Thus, what the FCC announced in 2002—and what MBUSA knew in 2004 when

Plaintiffs purchased their vehicle—was (1) the FCC would continue to monitor developments to

determine whether wireless carriers should be required to continue to provide analog cellular

service after December 31, 2007, and (2) the FCC expected that cellular carriers would continue

to provide analog service for as long as consumers demanded it.

## **ARGUMENT**

Plaintiffs' Complaint should be dismissed for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).  A complaint may be dismissed for failure to state a claim upon which relief may be granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002) (internal quotations and citations omitted).

In evaluating the present motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  In addition, a formulaic recitation of the elements of a cause of action alone is insufficient to state a claim, because a blanket assertion of entitlement to relief does not provide the defendant with fair notice of the nature of the claim or the grounds on which the claim rests.  *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1966 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)); *see also E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 779 (7th Cir. 2007). Something beyond "the mere possibility" of a claim must be alleged "lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value.'"  *Twombly*, 127 S. Ct. at 1965-66 (citation omitted).  A plaintiff must, instead, plead facts that make it "plausible" that the plaintiff may recover.  *Id.*; *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 619 (7th Cir. 2007) ("we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.").

**I.     THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE MBUSA HAD NO DUTY TO DISCLOSE CHANGES IN THE LAW.**

Plaintiffs allege that MBUSA failed to inform them of the fact that, beginning in 2008, federal regulations would *allow* non-party wireless providers to decide whether to carry analog signals.  (Comp. at ¶¶ 5, 32, 37.)  However, MBUSA expressly informed Plaintiffs of that possibility.  (Exhibit A, Subscriber Agreement, at ¶ 2.)  Furthermore, the potential discontinuation of wireless analog service was public information.  The FCC's report, its final regulation, indeed, the entire regulatory history were and are matters of public record.

What Plaintiffs allege is a duty that is not recognized in law and is not warranted by the facts.  Plaintiffs have received Tele Aid service for the duration of their subscription; that is all that they were promised.  MBUSA had no duty to notify Plaintiffs that some equipment in their automobile might no longer operate at some unspecified future date depending on the discretionary actions of non-parties.  There is no precedent for Plaintiffs' claim.

Courts that have addressed the issue of whether a company has a duty to inform its customers of the law or changes in the law have uniformly held that no such duty exists: "[T]he Court must reject plaintiff's theory that defendant had an affirmative duty to inform her of the change in the law."  *Haley v. AIG Life Ins. Co.*, 2002 WL 417419, *5-7 (D.N.D. 2002); *see also Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 977 (9th Cir. 1999) (no duty to disclose Tax Code provisions); *Acme Propane, Inc. v. Tenexco, Inc.*, 844 F.2d 1317, 1323-1324 (7th  Cir. 1988) ("Sellers of securities need not 'disclose' the statutes at large of the states in which they operate."); *Young v. American Family Mut. Ins. Co.*, No. CV-06-1494-PHX-DGC, 2007 WL 1559935, *3 (D. Ariz. May 29, 2007) ("Defendant did not have an obligation to inform Plaintiffs of the change in the law."); *Advent v. Allstate Ins. Co.*, 862 N.E.2d 871, 879-880 (Ohio App. Ct. 2006) (recognizing that an "insurer has no duty to inform its insureds about a change in

insurance law"); *Roy v. Audubon Ins. Co.*, 652 So.2d 995, 997 (La. App. Ct. 1993) (same); *Yoder v. American Travellers Life Ins. Co.*, 814 A.2d 229, 233 (Pa. Super. Ct. 2002) ("we can find no support in Pennsylvania law for such an extraordinary duty.").   Furthermore, the Supreme Court long ago recognized that the "appearance of rules and regulations in the Federal Register gives legal notice of their contents."  *Federal Crop Ins. Corporation v. Merrill*, 332 U.S. 380, 384-85 (1947).[3]

While the case at issue appears to be factually novel, the principle that a plaintiff is held to know about the law has been routinely applied.  In insurance cases, for example, courts regularly hold that an insurance company has no obligation to make disclosures about the state of the law to consumers either prior to purchase or prior to renewal.  In *Haley*, the North Dakota legislature adopted a statute invalidating insurance policies that required a prior hospitalization in order to cover a nursing home stay.  *Haley*, 2002 WL 417419 at *1-2.  The insured's contract required the prior hospitalization, but because it was entered into prior to the law, it was not affected by the change.  Plaintiff alleged that the insurance company breached a duty to inform her of the law since she could have simply gotten a new policy rather than renewing one that was prohibited.  *Id.* at *6.  The court summarily "reject[ed] plaintiff's theory that defendant had an affirmative duty to inform her of the change in the law, and that failure to so inform her was fraud," and found the imposition of such a duty "would fly in the face of 'the time-honored principle that all persons are presumed to know the law.'"  *Id.*

This principle also has been applied where a renewable policy was found to create a new contract of insurance each time it was renewed.  In *Young*, an insured who was severely injured

---

[3]       "Of course, the presumption that everyone knows the law is one of necessity and is as old as the law itself, and has recognition in the jurisprudence of all civilized countries."  *Hoff v. Sander*, 497 S.W.2d 651, 652 (Mo. App. 1973).

in a collision with an underinsured motorist lacked uninsured motorist coverage.  *Young*, 2007 WL 1559935 at *1.  The insured had purchased an "umbrella policy" in 1992 and renewed it every year until the accident in 2003.  It was undisputed that the insurance company had never informed the insured of the right to purchase uninsured motorist coverage.  *Id.*

In 1993, the Arizona Supreme Court required an insurer to offer uninsured motorist coverage to its umbrella policy customers and held that "'failure to do so results in imputation of the coverage to the policy as a matter of law.'"  *Id.* (citation omitted).  Shortly afterward, the Arizona Legislature passed a statute to provide that an insurer was not required to offer uninsured motorist coverage to customers purchasing umbrella policies.  *Id.*  The insured argued that the insurance company had an obligation to inform him of the change in the law in 1993 that precluded the possibility of uninsured motorist coverage being imputed into his insurance policy.  *Id.* at *2.  The court first held that each renewal of the policy created a new and separate contract of insurance.  *Id.* at *3.  It then held that "Defendant did not have an obligation to inform Plaintiffs of the change in the law."  *Id.*

This principle similarly has been applied by courts when litigants argue that the government has a duty to inform them of the law.  *Rucker v. Saxbe*, 552 F.2d 998, 1004 (3d Cir. 1977) ("[W]e find no basis for the inference that there existed or exists an affirmative duty on the part of the Government to inform United States citizens resident abroad of changes in the nationality laws on a continuing basis."); *Owings v. Brown*, 86 F.3d 1178, 1996 WL 267280, *2 (Table) (Fed. Cir. 1996) ("[T]he Veterans Administration had no duty to notify Ms. Owings of the changes in law."); *Dufau v. U.S.*, 22 Cl.Ct. 156, 159 (Cl.Ct. 1990) ("However, the government has no duty generally to disclose changes in the law."); *Pence v. U.S.*, 52 Fed.Cl. 643, 646-647 (Fed. Cl. 2002) (Air Force has no obligation to inform of changes in law);

*Nordstrom v. United States*, 342 F.2d 55, 59 (Ct.Cl. 1965) (no government duty to inform potential annuitants of changes in retirement laws unless directed to do so by Congress or the President).

There is no duty on the part of companies whose consumers may be affected by a particular change in the law to advise of those changes. In fact, such a duty would be impossible to define. Laws change on a constant basis—by the legislature, by judicial decisions, and, as here, by regulatory agencies. And those changes sometimes explicitly leave open the possibility of even more changes. As noted above, the FCC here held open the possibility that the sunset period would be extended. (*See* Exhibits B-E.) Furthermore, the FCC expected that vendors would continue analog service after the sunset period ended for as long as consumers demanded it. (*See id.*)

Disclosure of the myriad possibilities related to just this one regulation would require providing consumers with various Federal Register entries and Reports of Rulings. Companies are neither appropriate communicators nor competent disseminators of legal advice about the impact of regulatory changes, especially when the changes are open-ended with the possibility of further changes. Furthermore, because vehicles are subject to myriad regulations, and because of the various possibilities inherent in this one regulatory change, such a "disclosure" could be overwhelming to consumers and defeat the very purpose of consumer disclosure laws. *Cf. Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992) ("[a]s the FTC observed, 'requiring too much information in advertisements can have the paradoxical effect of stifling the information that consumers receive.'").

The principle that a party has no duty to disclose the state of the law to another transacting party is fully applicable here and negates Plaintiffs' claims. Indeed, Illinois courts

have expressly held that failure to disclose law or the effect of the law on a purchaser is not an

actionable omission under the Illinois Consumer Fraud Act. *Randels v. Best Real Estate, Inc.*,

243 Ill.App.3d 801, 807, 612 N.E.2d 984, 988-89 (2d Dist. 1993); *Notaro Homes, Inc. v.*

*Chicago Title Ins. Co.*, 309 Ill.App.3d 246, 722 N.E.2d 208 (2d Dist. 1999) overruled on other

grounds by *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill.2d 326 (Ill. 2006). In

*Randels*, a homebuyer alleged that seller and broker failed to disclose a local ordinance requiring

the home owner to hook up to the municipal sewer system. The court dismissed the claim,

holding that "defendants' failure to disclose the ordinance was an omission of law readily

discoverable by plaintiffs and therefore did not violate the Consumer Fraud Act because the

omission was not of material fact." *Randels*, 234 Ill. App. 3d at 807. Likewise, in *Notaro*

*Homes*, a developer alleged that a title insurer had failed to disclose an amendment to a zoning

ordinance that would prevent it from building apartments on the purchased land. The court again

dismissed the claim: "Generally, a deceptive representation or omission of law does not

constitute a violation of the Act because both parties are presumed to be equally capable of

knowing and interpreting the law." *Notaro Homes*, 309 Ill. App. 3d at 259. Because failure to

disclose a law or a change in law is not actionable, Plaintiffs' Complaint should be dismissed in

its entirety.

## II.    COUNT I SHOULD BE DISMISSED BECAUSE ILLINOIS, NOT NEW JERSEY, LAW APPLIES.

The District Court applies the choice-of-law principles of the state in which it sits.

*Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915-16 (7th Cir. 2006). Where laws conflict,

Illinois uses the 'most significant relationship' test to determine which state's law to apply.

*Barbara's Sales, Inc. v. Intel Corp.*, __ N.E.2d __, 2007 WL 4200855 (Ill. Nov. 29, 2007);

*Morris B. Chapman & Assoc. v. Kitzman*, 193 Ill.2d 560, 568, 739 N.E.2d 1263, 1269 (Ill. 2000);

*Tanner*, 433 F.3d at 915-16.  Here, the Illinois and New Jersey consumer fraud statutes conflict because, among other things, Illinois requires reliance for a misrepresentation and New Jersey does not.  *See Barbara's Sales*, 2007 WL 4200855 (recognizing conflict because Illinois statute requires reliance and California statutes do not); *Varacallo v. Mass. Mutual Life Insurance Co.,* 332 N.J. Super. 31, 48, 752 A.2d 807 (N.J. 2000) (New Jersey consumer fraud statute does not require reliance).

In *Barbara's Sales*, Illinois and Missouri plaintiffs alleged that a corporation violated the Consumer Fraud Act by issuing allegedly false representations from its California headquarters. Applying Restatement § 148, the Illinois Supreme Court held that Illinois had the most significant relationship because the majority of the named plaintiffs were Illinois residents who acted in reliance on the purported misrepresentations in Illinois and allegedly suffered pecuniary loss in Illinois. *Barbara's Sales*, 2007 WL 4200855.  Likewise, here, Plaintiffs are Illinois residents who purchased their vehicle in Illinois.  Plaintiffs both acted upon any purported misrepresentation or omission and suffered any alleged loss in Illinois.  Thus, Illinois law applies and Plaintiffs cannot state a claim under the New Jersey Consumer Fraud Act.[4]  *See Barbara's Sales*, 2007 WL 4200855.

### III.    COUNT II SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD (A) AN ACTIONABLE OMISSION, (B) MATERIALITY, (C) PROXIMATE CAUSATION, OR (D) DAMAGES.

"[T]o adequately plead a private cause of action for a violation of [the Consumer Fraud Act], a plaintiff must allege: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately

---

[4]     Should the Court determine that New Jersey law applies, Count I would nevertheless fail for the reasons discussed in Section II.

caused by the deception." *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 149, 776 N.E.2d 151, 160 (Ill. 2002). Both omissions and misrepresentations may be actionable under the Act. 815 ILCS 505/2; *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 675 N.E.2d 584 (Ill. 1996).

Plaintiffs here have failed to allege an actionable omission because MBUSA could not have known when analog service would be discontinued at the time of the alleged concealment; further, Plaintiffs have failed to allege that the longevity of the Tele Aid service is a material fact. Plaintiffs have failed to allege an actionable misrepresentation because they do not allege that they read or relied upon any representation concerning Tele Aid prior to their purchase. Finally, Plaintiffs fail to allege any violation of the Act because they have not alleged actual damages.

### A.     MBUSA Did Not and Could Not Have Known in 2004 when Analog Service Would Be Discontinued.

"[F]or a material omission to be actionable, the plaintiff must establish that the fact concealed was known to the defendant at the time of the concealment." *Rockford Memorial Hosp. v. Havrilesko*, 368 Ill. App. 3d 115, 122, 858 N.E.2d 56, 62 (2d Dist. 2006) (dismissing claim); *see also White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 285, 856 N.E.2d 542, 548-49 (1st Dist. 2006) (dismissing claim). Plaintiffs' Complaint alleges that MBUSA knew as of 2002 that analog service would be discontinued in 2008. (Comp. at ¶¶ 5, 32, 37.) However, the regulatory history makes clear that MBUSA could not have known any such thing in 2002, or even in 2004 when Plaintiffs purchased their vehicle. (*See* Exhibits C and D (envisioning possible extension of sunset period).) Indeed, it was not until June 2007 that the FCC definitively affirmed that the sunset period would expire in 2008. (Exhibit E.) Because Plaintiffs' allegation as to what MBUSA knew when is an unsupported assertion contrary to

clear public record, the Court should ignore Plaintiffs' allegation and dismiss Count II for failure to allege an actionable omission. *See Rockford Memorial Hosp.*, 368 Ill. App. 3d at 122.

**B.      Plaintiffs Fail to Allege that Tele Aid's Longevity Constitutes a Material Fact.**

Further, an omission constitutes a deceptive act or practice only if it is of a material fact. "A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *Connick*, 174 Ill.2d at 505. As noted above, a failure to disclose law or the effect of the law on a purchaser is not an actionable omission under the Act. *Randels*, 243 Ill. App. 3d at 807; *Notaro Homes*, 309 Ill. App. 3d at 259. Moreover, Plaintiffs nowhere allege that the longevity of Tele Aid service or the possible discontinuation of analog service to the Tele Aid device constitute material facts. Plaintiffs do not allege that they would have acted differently had they known. Indeed, Plaintiffs do not clearly allege that they were even aware of the Tele Aid system before purchasing their vehicle.[5] Nor do Plaintiffs allege that these facts are the kind on which consumers would ordinarily rely. (*See* Comp.) Thus, because Plaintiffs fail to plead materiality, they have failed to allege a deceptive act or practice actionable under the Consumer Fraud Act. *See White*, (dismissing complaint where "[n]owhere in the complaint does plaintiff say he would have acted differently if he had possessed the information before the sale."); *Butitta v. First Mortgage Corp.*, 218 Ill. App. 3d 12, 19, 578 N.E.2d 116 (1991) (the

---

[5]      Plaintiffs do allege that "[a]t the time of the purchase, MBUSA expressly represented that using and operating Tele Aid would provide Plaintiffs with vehicle safety and security." (Comp. at ¶ 31.) However, because the Complaint does not otherwise allege any direct communications between MBUSA and Plaintiffs, this allegation reasonably speaks to general representations MBUSA purportedly made about the Tele Aid system and not representations made specifically to Plaintiffs. Thus, there is no factual allegation that Plaintiffs were aware of the Tele Aid system prior to the purchase of their vehicle. (*See* Comp.)

absence of any allegation of how one would have acted differently may suggest a lack of materiality).

  **C.**  <u>**Plaintiffs Fail to Allege Proximate Causation.**</u>

  To the extent Count II relies on purported misrepresentations, it fails because the Complaint does not allege proximate causation.  To establish proximate causation under the Act, "a plaintiff must allege that he was, in some manner, deceived."  *Oliviera*, 201 Ill.2d at 155, 164.  *See also Barbara's Sales,* 2007 WL 4200855, at *16 ("Under *Oliviera* and its progeny, plaintiff must prove that each and every consumer who seeks redress actually saw and was deceived by the statements in question."); *Gredell v. Wyeth Laboratories, Inc.*, 367 Ill. App. 3d 287, 293, 854 N.E.2d 752, 757 (1st Dist. 2006) ("If plaintiff never saw the alleged misrepresentations, he cannot have been deceived by them and any misrepresentation cannot have proximately caused him injury.").

  Here, the Complaint alleges that MBUSA's brochures, website, and MSRP sticker represented that the Tele Aid system was a standard safety and security feature and would provide emergency services through a wireless network.  (Comp. at ¶¶ 3, 11-12.)  However, the Complaint does not allege that the Sens reviewed or relied upon the brochure, website or MSRP sticker in making their purchasing decision.  (*See id.*)  Thus, to the extent that Plaintiffs' allegations rely on the pleaded representations, Count II fails.  *See Oliveira,* 201 Ill.2d at 149; *Barbara's Sales*, 2007 WL 4200855 at *16.

  Moreover, Plaintiffs do not allege that MBUSA's brochures, website, or MSRP sticker made specific representations about Tele Aid's longevity.  (*See* Comp. at ¶¶ 3, 11-12.)  Rather, they purportedly made general representations about safety and security.  (*Id.*)  Plaintiffs concede that any message regarding the Tele Aid's longevity was merely "implied."  (*Id.* at ¶ 31.)  Such general statements about safety and security are mere puffery not actionable under the Act.  *See*

*Barbara's Sales*, 2007 WL 4200855 at *15 (finding "sound reasoning that no reasonable consumer would rely on such an implicit assertion as the sole basis for making a purchase"); *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 174, 835 N.E.2d 801, 847 (Ill. 2005) (dismissing claim because puffery cannot be considered deceptive under the Consumer Fraud Act.)

       **D.**       **<u>Plaintiffs Fail to Allege Actual Damages.</u>**

In addition, whether premised on purported omissions or misrepresentations, Count II fails because Plaintiffs have failed to allege actual damages. Plaintiffs allege that they have suffered damages because they will have to pay to upgrade the Tele Aid equipment to digital compatibility and because they have paid for a product that will not function as purportedly represented (Comp. at ¶ 38); however, neither of these purported injuries withstands scrutiny because the Complaint makes clear that Plaintiffs never paid for the Tele Aid equipment in the first place. The Complaint repeatedly alleges that the Tele Aid equipment came standard on Plaintiffs' vehicle. (*Id.* at ¶¶ 3, 26, 30.) Moreover, Plaintiffs do not allege that they would have paid less for their vehicle or that they would have purchased another vehicle absent the Tele Aid equipment. (*See* Comp.) Therefore, upgrading to a digital system is, in no way, duplicative of costs already incurred by Plaintiffs.

Fundamentally, Plaintiffs fail to allege actual damages because they have received the benefit of their bargain. The Complaint and the Subscriber Agreement demonstrate that Plaintiffs received the analog Tele Aid system for free and have paid only for Tele Aid service. (Comp. at ¶¶ 3, 30; Exhibit A, Subscriber Agreement.) Plaintiffs allege no disruptions or disturbances in their Tele Aid service while they paid for the subscription. (*See* Comp.) Nor do Plaintiffs allege that they will continue paying for this service after analog service is

discontinued.  (*See id.*)  Therefore, Plaintiffs have failed to allege any way in which they have been injured.

## IV.    COUNT III SHOULD BE DISMISSED BECAUSE THE POTENTIAL DISCONTINUATION OF ANALOG SERVICE WAS FULLY DISCLOSED.

"The Uniform Act was not intended to be a consumer protection statute but rather was intended to prohibit unfair competition." *Disc Jockey Referral Network, Ltd. v. Ameritech Pub. of Illinois*, 230 Ill. App. 3d 908, 914, 596 N.E.2d 4, 9 (1st Dist. 1992).  There is no violation of the DTPA where the defendant has fully disclosed the complained of terms.  *Robacki v. Allstate Ins. Co.*, 127 Ill. App. 3d 294, 301, 468 N.E.2d 1251, 1255 (1st Dist. 1984) (granting summary judgment against claim where "all of the replacement papers, which included the various letters and the pamphlet, accurately and adequately informed the plaintiff that PIP coverage was to be discontinued and replaced with other coverage as described."); *cf. Griffin v. Universal Cas. Co.*, 274 Ill. App. 3d 1056 (1st Dist. 1995) (no deception where terms fully disclosed); *Saunders v. Michigan Ave. Nat. Bank*, 278 Ill. App. 3d 307 (1st Dist. 1996) (same).  Here, the only deception alleged by Plaintiffs is that MBUSA failed to disclose that analog service to the Tele Aid equipment would terminate in 2008.  However, the Subscriber Agreement expressly stated this possibility:

> **Your Tele Aid system uses analog cellular telephone signals. If the supporting wireless carrier and/or its roaming partners terminate or restrict analog service, the Tele Aid Services may not be available.**  UNDER THIS CIRCUMSTANCE, SOME OR ALL OF THE TELE AID SERVICES MAY BE SUSPENDED OR TERMINATED WITHOUT PRIOR NOTICE TO YOU AND WITHOUT ANY LIABILITY.

(Exhibit A, Subscriber Agreement, at ¶ 2 (bold and all caps original); *see also* Exhibit F,  Excerpt of Brochure for 2004 Mercedes-Benz E-Class vehicles ("Service operates only where cellular and Global Positioning System coverage are available.").)

Accordingly, MBUSA informed Plaintiffs of the possibility of analog discontinuation before they ever subscribed to the Tele Aid service, and, thus, no actionable deception occurred. *See Robacki*, 127 Ill. App. 3d at 301.

**V.     COUNT IV SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ALLEGE A DEFECT COVERED BY AN EXPRESS WARRANTY.**

"In order to recover on a theory of breach of express warranty, the plaintiff must prove that the alleged malfunctioning of the car was caused by a defect in the parts or workmanship." *Collum v. Fred Tuch Buick*, 6 Ill. App. 3d 317, 322, 285 N.E.2d 532, 536 (1st Dist. 1972). Here, Plaintiffs allege that "the analog-only systems' lack of signal capability renders the system defective." (Comp at ¶ 67.) On its face, this allegation is inconsistent with Plaintiffs' other pleadings. As the Complaint makes clear, the Tele Aid equipment is perfectly capable of receiving and transmitting analog signals. Further, this capability did not change after December 31, 2007. As Plaintiffs recognize, the only difference is that there will no longer be an analog network available to support these signals. Thus, the fact that Tele Aid equipment will not operate is not due to any defect in the material or workmanship of the Tele Aid equipment. Further, MBUSA expressly disclaimed any warranty of the Tele Aid service in the Subscriber Agreement. (Exhibit A, Subscriber Agreement, at ¶ 14.) Accordingly, Plaintiffs have failed to allege breach of express warranty. *See Collum*, 6 Ill. App. 3d at 322.

**VI.    COUNT V SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK PRIVITY WITH MBUSA AND BECAUSE PLAINTIFFS' VEHICLE IS FIT FOR THE ORDINARY PURPOSE OF TRANSPORTATION.**

Plaintiffs' claim for breach of implied warranty fails for two independent reasons. First, Plaintiffs do not allege privity with MBUSA. "In order for a plaintiff to file a claim for economic damages under the UCC for the breach of an implied warranty, he or she must be in vertical privity of contract with the seller. This means that 'the UCC article II implied warranties

give a buyer of goods a potential cause of action only against his immediate seller.'"
*Makertichian v. Mercedes-Benz USA, LLC*, 347 Ill. App. 3d 828, 832, 807 N.E.2d 1165, 1168
(1st Dist. 2004).  A manufacturer's written warranty does not create privity between the
manufacture and a retail consumer for purposes of a UCC claim. *Id.* at 832-33.  Here, Plaintiffs
purchased their vehicle from an independent dealer and therefore are not in privity with
MBUSA.  (Comp. at ¶ 3); *see Makertichian*, 347 Ill. App. 3d at 832.

In addition, Count V fails because Plaintiffs' vehicle is fit for the ordinary purpose of
transportation.  "A product breaches the implied warranty of merchantability if it is not 'fit for
the ordinary purposes for which such goods are used.'"  *Oggi Trattoria and Caffe, Ltd. v. Isuzu
Motors America, Inc.*, 372 Ill. App. 3d 354, 361, 865 N.E.2d 334, 340 (1st Dist. 2007).  Plaintiffs
here seek to have this Court identify and apply a purported ordinary purpose of the Tele Aid
equipment: "the analog-only Tele Aid systems will not be fit for its ordinary purpose of
providing a safety and security system to the vehicle owner."  (Comp. at ¶ 73.)  However, the
'goods' referred to in the UCC are those subject to the contract for sale.  810 ILCS 5/2-314 ("a
warranty that the goods shall be merchantable is implied in a contract for *their* sale" (emphasis
added).)  The Tele Aid equipment was not the subject of any independent sales contract; rather, it
was standard equipment, pre-installed in Plaintiffs' vehicle. (*Id.* at ¶¶ 26, 30.)[6]  Thus, the
appropriate unit of analysis for breach of implied warranty purposes is the vehicle, not the Tele
Aid equipment.

Vehicles have an ordinary purpose of providing transportation.  *E.g.*, *Oggi Trattoria*, 372
Ill. App. 3d at 361 (vehicles have an "ordinary purpose of driving"); *Shoop v. DaimlerChrysler*

---

[6]    Although the Tele Aid service was subject to an independent contract, the Subscriber
Agreement, services are not subject to the implied warranty of merchantability. 810 ILCS 5/2-
314.

*Corp.*, 371 Ill. App. 3d 1058, 1065, 864 N.E.2d 785, 792 (1st Dist. 2007) (same).  Plaintiffs have

not alleged that their vehicle is unfit for this purpose.  (<u>See</u> Comp.)  Therefore, their claim for

breach of implied warranty fails as a matter of law and should be dismissed.  *See Oggi Trattoria*,

372 Ill. App. 3d at 361.

## VII.    COUNT VI SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO PLEAD EITHER MBUSA'S ENRICHMENT OR THE ABSENCE OF AN ADEQUATE REMEDY AT LAW.

"To recover under a claim for unjust enrichment, the plaintiff must allege that the

defendant voluntarily accepted a benefit which would be inequitable for him to retain without

payment." *Ramirez v. Smart Corp.*, 371 Ill. App. 3d 797, 809, 863 N.E.2d 800, 813-814 (3d Dist.

2007) "'Because it is an equitable remedy, unjust enrichment is only available when there is no

adequate remedy at law.'  In other words, '[w]here there is a specific contract that governs the

relationship of the parties, the doctrine of unjust enrichment has no application.'"  *Guinn v.*

*Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604, 836 N.E.2d 681, 704 (1st Dist. 2005) (citations

omitted); *accord Season Comfort Corp. v. Ben A. Borenstein Co.*, 281 Ill. App. 3d 648, 656 (1st

Dist. 1995); *Board of Directors of Carriage Way Property Owners Ass'n v. Western Nat. Bank of*

*Cicero*, 139 Ill. App. 3d 542, 547 (1st Dist. 1985).

The Complaint fails to allege that MBUSA was inequitably enriched in any way by the

conduct alleged.   Plaintiffs concede that they paid no money for the Tele Aid equipment.

(Comp. at ¶¶ 3, 26, 30.)  Nor do they allege that they overpaid for their vehicle because it

included the Tele Aid equipment.  (*See id.*)  Furthermore, Plaintiffs paid no money directly to

MBUSA; they purchased their vehicle from a dealer.  (Comp. ¶ 3.)  And while Plaintiffs have

paid for their Tele Aid subscription, they have received the service for which they paid.

Plaintiffs do not allege that they will pay for service after analog signal is discontinued.  (*See id.*)

Therefore, the Complaint does not allege that MBUSA has been inequitably enriched. *See Ramirez*, 371 Ill. App. 3d at 809.

Further, Plaintiffs fail to allege the absence of an adequate remedy at law. Indeed, the preceding causes of action purport to identify legal remedies for the very same alleged conduct. (*Id.* at Counts I, II, IV & V.) Moreover, the parties' relationship with respect to any purported defects in the Tele Aid system are governed by express contracts – the Subscriber Agreement and MBUSA's limited express warranty – and, therefore, the doctrine of unjust enrichment has no application. *See Guinn*, 361 Ill. App. 3d at 604. Accordingly, the Complaint fails to state a claim for unjust enrichment.

## **CONCLUSION**

For the forgoing reasons, Defendant MBUSA respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice and award MBUSA any other relief to which it is entitled.

Dated:    January 9, 2008                Respectfully submitted,

                                         BRYAN CAVE LLP


                                         By:          s/  Dmitry Shifrin
                                            Dmitry Shifrin  #6279415
                                            Bryan Cave LLP
                                            161 North Clark Street, Suite 4300
                                            Chicago, IL  60601-3315

                                            Peter W. Herzog III  #36429
                                            211 North Broadway, Suite 3600
                                            St. Louis, MO 63102-2750
                                            Telephone:  (314) 259-2000
                                            Facsimile:  (314) 259-2020

                                            *Attorneys for Mercedes-Benz USA, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing MEMORANDUM

OF LAW IN SUPPORT OF MOTION TO DISMISS was served this 9th day of January, 2008

either via the Court's CM/ECF system or first class U.S. mail, postage prepaid, upon the

following counsel of record:

Mark A. Miller
Lori A. Fanning
**Miller Law LLC**
115 S. LaSalle Street
Suite 2910
Chicago, IL  60603

Tracy D. Rezvani
**Finkelstein Thompson LLC**
The Duval Foundry
1050 30th Street, NW
Washington, DC  20007

Rosemary M. Rivas
Mark Punzalan
**Finkelstein Thompson LLC**
100 Bush Street, Suite 1450
San Francisco, CA  94104

_____ s/ Dmitry Shifrin _____