IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ASHISH SEN and COLLEEN SEN, on behalf | ) | |
| Of themselves and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07 C 6519 |
| | ) | |
| MERCEDES-BENZ USA, LLC, | ) | Judge James B. Moran |
| | ) | |
| Defendant. | ) | |


**PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Marvin A. Miller
Lori A. Fanning
**MILLER LAW LLC**
115 S. LaSalle St., Suite 2910
Chicago, Illinois 60603
(312) 332-3400

Tracy D. Rezvani
**FINKELSTEIN THOMPSON LLP**
The Duval Foundry
1050 30th Street, NW
Washington, DC 20007
Telephone:  (201) 337-8000

Rosemary M. Rivas
Mark Punzalan
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700

i

# TABLE OF CONTENTS

Table of Authorities ....................................................................................................... iii

I.     INTRODUCTION ........................................................................................................ 1

II.    BACKGROUND .......................................................................................................... 1

III.   STANDARD ON THE MOTION ................................................................................ 2

IV.    REQUEST FOR JUDICIAL NOTICE ....................................................................... 4

V.     ARGUMENT ............................................................................................................... 6

       A.     Plaintiffs State a Claim Based on Allegations that Defendant
              Failed to Disclose That the TeleAid System Would Become Obsolete ................ 6

              1.     Courts Have Already Rules That the Instant Allegations
                     Are Sufficient to State a Claim ................................................................. 6

              2.     Defendant Failed to Disclose Material Facts of Which
                     It Had Superior Knowledge Which Directly Impacted Its
                     Representation ........................................................................................... 7

              3.     MBUSA's Authorities Regarding the duty to Disclose
                     Changes in t he Law are Irrelevant ........................................................... 8

              a.     MBUSA failed to notify Plaintiffs of material facts ................................. 8

              4.     MBUSA's Extrinsic Material Does Not Absolve MBUSA
                     Of Liability ............................................................................................ 10

       B.     New Jersey Lay May be Properly Applied ......................................................... 12

       C.     The Second Cause of Action Properly States a Claim Under ICF ...................... 14

              1.     Defendant Knew as Early as August 2002 That the TeleAid
                     System Would Cease to Function ........................................................... 14

              2.     Defendant's Omissions Were Material ................................................... 14

              3.     Plaintiffs Adequately Allege Proximate Causation ................................ 15

              4.     Plaintiffs have Adequately Pled Damages .............................................. 16

              5.     If Applicable, Plaintiffs Amply Satisfy Rule 9(b) ................................. 17

       D.     The Third Cause of Action Entitles Plaintiffs to Injunctive Relief
              Under Illinois Deceptive Practices Act Because Defendant Failed

To Adequately or Fully Disclose That the TeleAid System Would
Cease to Function During the Life of the Vehicle ................................................. 17

E.    Count IV Properly States a Claim for Breach of Express Warranty .................... 18

F.    Count V Properly State a Claim for a Breach of Implied Warranty ................... 19

      1.    The Implied Warranty Claim Are Not Barred by
            Privity Concerns ......................................................................... 20

      2.    The Analog-Only TeleAid System is Not Fit For Its Ordinary
            Purpose of Providing a Functioning Safety and Security
            System To the Vehicle Owner ......................................................... 20

G.    Count VI Properly States a Claim for Unjust Enrichment ................................... 21

VI.   CONCLUSION .............................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acme Propane v. Tenexco, Inc.*, 844 F.2d 1317 (7th Cir. 1988) .................................................................9

*Advent v. Allstate Ins. Co.,* 862 N.E.2d 871, 879-880 (Ohio Ct. App. 2006)*;* ..............................................9

*Alioto v. Marshall Field's & Co.* 77 F.3d 934, 936 (7th Cir. 1996). ...............................................................5

*Atlass v. Mercedes-Benz USA, LLC*, Civ. No. 07-2720 (DRD), 2007 WL 2892803 (D.N.J. Sept. 25, 2007 .......................................................................................................................................................................5

*Avery v. State Farm Mutual Automobile Ins., Co.*, 216 Ill.2d 100, 835 N.E.2d 801 (2005)……………..16

*Barbara's Sales Inc. v. Intel Corp.,* 227 Ill.2d 45, ___N.E.2d __, 2007 WL 4200855 .............................12

*Bell Atl. Co. v. Twombly*, 127 S.Ct. 1955, 1964-65………………………………………………………..2

*Berthold Types Ltd. v. Adobe Sys. Inc.*, 242 F.3d 772, 775 (7th Cir. 2001)………………………….5

*Brown v. Budz,* 398 F.3d 904, 908-909 (7th Cir. 2005)………………………………………………..2

*Cameco, Inc. v. Gedicke*, 299 N.J. Super. 203, 218, 690 A.2d 1051, 1059 (App.Div. 1997)…...21

*Celex Group Inc. v. Executive Gallery, Inc.*, 877 F.Supp. 1114, 1128-29 (N.D. Ill. 1995)..……14

*Cell Pathways, Inc., Sec. Litig.*, 2000 U.S. Dist. LEXIS 8584, at * 41-42  (E.D. Pa. 2000) .....................11

*Chabraha v. Avis Rent A Car Sys., Inc.*, 192 Ill.App.3d 1074, 1079 (1989)……………………..17

*Check v. Clifford Chrysler-Plymouth of Buffalo Grove, Inc.,¸* 794 N.E.2d 829, 836

(Ill.App. 2003)………………………………………………………………………………………..21

*Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004)……………………………………….3

*Connick v. Susuki Motor Co.,* 174 Ill.2d 482, 501, 675 N.E.2d 584 (1996). ..............................................14

*Cooper v. Durham School* Services, 2003 WL 22232833, *7, No. 03 C 2431 (Sept. 22, 2003 N.D. Ill.).. 22

*Collum v. Fred Tuch Buick*, 6 Ill.App.3d 317, 322, 285 N.E. 2d 532, 536 (1 Dist. 1972)………………19

*Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081-82, 31 L.Ed.2d 263 (1972) ......................................3

*DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)………………………………………….2

*Donaldson v. Read Magazine, Inc.,* 333 U.S. 178, 185-86 (1948) ...............................................................11

*Dufau v. US*, 22 Cl. Ct. 156, 159 (Cl. Ct. 1990) .........................................................................................10

*Duggan v. Terzakis*, 275 F.Supp.2d 968, 972 (N.D.Ill. 2003)……………………………………3

*EEOC Concentra Health Serv., Inc.*, 497 F.3d 773, 776 (7th Cir. 2007)…………………………3

*Esser v. McIntyre*, 169 Ill.2d 292 (1996)…………………………..………………………..……12

*Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) ......................................7

*Farrell v. Harrington*, 2007 WL 3307026, *1, No. 07-3027 (Nov. 2, 2007 N.D. Ill.) ................3

*Federal Crop Ins. Corporation v. Merrill*, 332 U.S. 380 (1947),.............................................. 10

*Fireman's Annuity & Ben. Fund v. Municipal Employees', Officers', & Officials' Annuity & Ben. Fund.*, 579 N.E.2d 1003 (Ill.App.1st Dist. 1991)……………………………………………..21

*Furst v. Einstein Moomjy, Inc.,* 182 N.J. 1, 12 (2004)……………………………………..……13

*Gaddy v. Galarza Motor Sport L.T.D,* No. 00 C 3893, 2000 WL 1364451, *4 (N.D.Ill. Sept.20, 2000)….3

*Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir. 2005)…………………………………14

*Gladden v. Cadillac Motor Car Division, General Motors Corp.,* 83 N.J. 320, 325 (1980)……18

*Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983)…………………………4

*Haley v. AIG*, 2002 WL 417419, No. A2-01-49, at *5-7 (D.N.D. Jan. 24, 2002); ......................9

*Hall v. Sheahan*, 2001 WL 111019, *2, No. 2000 C 1649 (Feb. 2, 2001 N.D. Ill.) .....................4

*Happel v. Wal-Mart Stores, Inc.*, 286 F.Supp.2d 943, 945 (N.D.Ill. 2003)(...................................5

*Heliotrope v. Ford Motor Co.*, 189 F.3d 975. (9th Cir. 1999); .....................................................9

*Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir. 1994)(................................................5

*Hishon v. King & Spalding*, 47 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)....................3

*Holt v. Q.C.Construction, Inc.,* 2002 WL 311115593 (Sept. 23, 2002 N.D. Ill. ..........................5

*In re K-Dur Antitrust Litig.*, 338 F.Supp.2d 517, 544 (D.N.J. 2004)……………………………21

*Karpowicz v. General Motors Corp.*, No. 97 C 1390, 1997 WL 413929 (N.D. Ill. 1997)………15

*Kent v. Celozzi-Ettleson Chevrolet, Inc.*, 1999 WL 1021044, *3 No. 99 C 2868, (N.D. Ill. Nov. 3, 1999)……………………………………………………………………………….....20

*Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005);.......................................................................3

*Lemelledo v. Beneficial Mgmt. Corp. of Am.,* 150 N.J. 255, 268 (1997)…………………..……13

*Magellan v. Int'l Corp. v. Salzgitter Handel GmbH,* 76 F.Supp.2d 919, 922 (N.D.Ill. 1999)......4

*Marques v. Federal Bank of Chicago,* 286 F.3d 1014 (7th Cir. 2002). ........................................5

*Mekertichian v. Mercedes-Benz U.S.A., L.L.C.,* 347 Ill.App.3d 828, 831 (2004)..................20

*Miller v. American Family,* 284 N.J. Super. 67, 87 (Ch. Div. 1995) ...........................................11

*Morris v. Mercedes-Benz USA, LLC,* Ber-L-2592-07, slip op. (N.J. Super. Sept. 20, 2007)(Ex.__) ......... 12

*Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 390 (1992)...............................................10

*Morris B. Chapman & Assoc., Ltd. v. Kitzman,* 193 Ill.2d 560, 568 (2000); *Esser v. McIntyre,* 169 Ill.2d 292 (1996)………………………………………………………………………………6

*Muehlbauer v. General Motors Corp.,* 431 F. Supp. 2d 847, 867-68 (N.D. Ill. 2006) (Moran, J.). .............3

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.,* 320 F.3d 920, 937 (9th Cir. 2003).................................................................................................11

*Nordstrom v. US,* 342 F.2d 55, 59 (Ct. Cl. 1965). .....................................................................10

*Notaro Homes, Inc. v. Chicago Title Insurance Co.,* 309 Ill.App.3d 246 (1999)........................8

*Oliveira v. Amoco Oil Co.,* 201 Ill.2d 134, 149 (Ill.2002)……………………………………14,16

*Owings v. Brown,* 86 F.3d 1178 (Fed. Cir. 1996); ....................................................................10

*Palda v. General Dynamics Corp.,* 47 F.3d 872, 875 (7th Cir. 1995). ........................................4

*Pappas v. Pella Corp.,* 363 Ill.App.3d 795, 844 N.E.2d 995, 998 (Ill.App. 1 Dist. 2006)………14

*Pat J. Murphy v. Drummond Dolomite, Inc.,* 232 F. Supp. 509, 525 (D. Wis. 1964) ................7

*Pence v. US,* 52 Fed. Cl. 643, 646-47 (Fed. Cl. 2002); .............................................................10

*Perona v. Volkswagen of America, Inc.,* 292 Ill.App.3d 59 (1997)……………………………...15

*Publication Int'l, Ltd. v. Leapfrog Enter.,* No. 01 C 3876, 2002 WL 31426651, at *6 (N.D. Ill. Oct. 29, 2002)………………………………………………………………………………..3

*Prudential Sec. Ltd. P'ships Litig.,* 930 F. Supp. 68, 72 (S.D.N.Y. 1996) .................................11

*Randels v. Best Real Estate, Inc.,* 243 Ill.App.3d 801 (1993),.....................................................8

*Robacki v. Allstate Ins. Co.,* 127 Ill.App.3d 294, 301 (1 Dist. 1984)……………………………17

*Roy v. Audubon,* 652 So.2d 995, 997 (La. Ct. App. 1993); .......................................................9

*Rucker v. Saxbe,* 552 F.2d 998, 1004 (3d Cir. 1977); ................................................................ 10

*Securities and Exchange Commission v. Mize,* 615 F.2d 1046, 1055 (5th Cir. 1980) ................................ 11

*SeeBeyond Technologies Corp. Securities Litigation*, 266 F. Supp. 2d 1150, 1166 (C.D. CA. 2003) ....... 11

*Shannon v. Boise Cascade Corp.*, 208 Ill.2d 517, 805 N.E.2d 213 (2004)………………………………16

*Shannon v. Hotel Employees and Rest. Employees Int'l Union and Hotel Employees and Rest. Employees Local 1,* No. 01 C 9711, 2003 WL 1338457 at *1 n.1 (N.D.Ill. March 18, 2003)………………………………………………………………………5

*Spring Motors Distributors, Inc. v. Ford Motor Co.,* 98 N.J. 555, 561 (1985)…………………20

*Strohmaier v. Yemm Chevrolet*, 211 F.Supp.2d 1036, 1043 (N.D.Ill.2001…………………………………3

*Szajna v. General Motors Corp.,* 115 Ill.2d 294, 315-16 (1986)………………………………..20

*Szajna* and *Rothe v. Maloney Cadillac, Inc.*, 119 Ill.2d 28 (1988)………………………………20

*Talalia v. Cooper Tire & Rubber Co.*, 360 N.J. Super. 547, 561, 823 A.2d 888 (Law Div. 2001). ........... 13

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996). ............. 3

*Triad Assocs. v. Chicago Hous.Auth.,*, 892 F.2d 583, 586 (7th Cir. 1989).................................... 3

*Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)………………………......2

*Unity House Inc. v. First Commercial Fin. Group*, No. 96 C 1716, 1997 WL 282725 (N.D. Ill. May 19, 1997)………………………………………………………………………4

*Wheeler v. Sunbelt Tool Co., Inc.*, 181 Ill.App.3d 1088, 1100 (Ill.App.4 Dist. 1989)………..…18

*Wright v. Associated Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir. 1994)…………………………5

*Yoder v. Am. Travellers,* 814 A.2d 229, 233 (Pa. Super. Ct. 2002). ............................................. 6

*Zekman v. Direct Am. Marketers, Inc.,* 182 Ill.2d 359, 695 N.E.2d 853 (1998)…………………………16

Plaintiffs Ashish and Colleen Sen, by counsel, hereby file their Memorandum in Opposition to the Motion to Dismiss filed by Mercedes-Benz USA, LLC ("MBUSA").  For the reasons stated herein, Defendant MBUSA's motion should be denied.

## I.    INTRODUCTION

The essence of Plaintiffs' claim is straightforward.  Plaintiffs and the Class did not receive what they paid for.  Nearly two years after Defendant knew that an analog-only safety and security device would not function on a digital network, Defendants sold Plaintiffs a vehicle installed with an analog-only device.

Plaintiffs purchased a new 2004 Mercedes-Benz E55 from one of Defendant's authorized dealers equipped with the TeleAid Emergency Calling and Communications ("TeleAid") safety and security system.  The purpose of the TeleAid system is to provide roadside assistance to Mercedes drivers in the event of an emergency.  MBUSA's uniform written brochures and representations stated that the TeleAid system would provide emergency services through a wireless network.  Defendant, however, failed to disclose to Plaintiffs that the TeleAid system would become obsolete during the useful life of their vehicle and that they would have to incur substantial costs to repair and/or replace the TeleAid system so that it could continue to function after December 31, 2007.

Plaintiffs sue on behalf of themselves and a Class of all others similarly situated as members of nationwide and Illinois statewide classes of purchasers or lessees of Model Year 2002 to 2006 Mercedes-Benz vehicles equipped with an analog-only TeleAid system.

## II.    BACKGROUND

The TeleAid device is a safety and security system designed by ATX Technologies, Inc. ("ATX") and MBUSA for use solely in Mercedes vehicles.  *See* Complaint, filed November 16, 2007 (hereinafter, "Cplt.") at ¶ 10.  The TeleAid system employs satellite and wireless technologies to connect Mercedes drivers with a live response center in the event of an emergency.  *Id.*  The response center then notifies emergency service providers of the precise location of the driver.  *Id.*  Mercedes introduced the TeleAid system in 1999.  *Id.* at ¶ 15.  The system, however, operated only on an analog cellular network.  *Id.*

MBUSA used standardized marketing and sales messages to promote the TeleAid system.  *Id.* at 11.  MBUSA represented the system as a safety feature providing emergency

roadside assistance, remote door unlocking, anti-theft alarm notification, and stolen vehicle recovery. Cplt. at ¶ 12. All of MBUSA's marketing and sales materials were initiated, drafted, created and distributed from MBUSA's principal place of business in New Jersey. *Id.* at ¶ 11.

In May 2001, the Federal Communications Commission ("FCC") proposed eliminating analog requirements for wireless phone carriers. *Id.* at ¶ 16. During the rulemaking process, the FCC sought comments from various telematics providers, including MBUSA and ATX. *Id.* at ¶ 17. MBUSA strenuously argued against removing the analog requirement, recognizing that if the FCC did so, carriers would stop providing analog service. *Id.* at ¶ 18. Both ATX and MBUSA stated that elimination of the rule would significantly impair the ability to provide TeleAid service since analog technology was necessary to provide wide-ranging coverage to its customers. *Id.*

On August 8, 2002, the FCC issued a rule eliminating the analog requirement for wireless carriers. *Id.* at ¶ 20. The FCC, however, provided for a "sunset period" of approximately five years for the new rule to take effect. *Id.* at ¶ 21. Thus, Defendant knew as early as August 2002 that the TeleAid system would become obsolete in five years (or well within the useful life of the vehicles sold during the class period). *See id.* Defendant, however, did not disclose this material information to consumers purchasing its vehicles (which have a reasonable life expectancy of up to ten more years) equipped with analog-only TeleAid systems. *Id.* at ¶ 19. Nor did Defendant stop equipping its vehicles with analog-only TeleAid systems. *Id.* at ¶ 29. Instead, Defendant waited until sometime in 2007 to disclose to its customers that the TeleAid system would become inoperable as early as December 2007. *See id.* at ¶ 34. Defendant advised the affected Mercedes owners that if they wished to continue to have emergency roadside assistance, remote door unlocking, anti-theft notification and stolen vehicle recovery services, they would have to expend significant amounts of money. *Id.*

## III.   STANDARD ON THE MOTION

To dismiss a claim under Rule 12(b)(6), the moving party must meet a high standard. Complaints in federal court need only satisfy a notice pleading standard. Fed.R.Civ.P. 8(a)(2); *Bell Atl. Co. v. Twombly*, 127 S.Ct. 1955, 1964-65, (2007); *Brown v. Budz,* 398 F.3d 904, 908-909 (7th Cir. 2005). Only fraud must be pled with particularity, i.e. the who, what, when, where, and how of the alleged fraud. *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir.

1992); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Some courts have held that "[a]n ICFA claim is a species of fraud, and must accordingly be pled with particularity that satisfies Rule 9(b)." *Muehlbauer v. General Motors Corp.,* 431 F.Supp.2d 847 (N.D.Ill. 2006); *Duggan v. Terzakis*, 275 F.Supp.2d 968, 972 (N.D.Ill. 2003). *But see Publication Int'l, Ltd. v. Leapfrog Enter.*, No. 01 C 3876, 2002 WL 31426651, at *6 (N.D. Ill. Oct. 29, 2002) (Rule 9(b) does not apply to Illinois Consumer Fraud Act because it covers other types of conduct in addition to fraud).[1]

This standard requires plaintiffs to meet only two requirements. First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the claim is and the grounds upon which it rests" and must plausibly suggest that the plaintiff has a right to relief. *Twombly*, 127 S. Ct. at 164; *EEOC Concentra Health Serv., Inc.*, 497 F.3d 773, 776 (7th Cir. 2007). The Seventh Circuit has stressed that "[f]acts that substantiate the claim ultimately must be put into evidence, but the rule 'plaintiff needs to prove Fact Y' does not imply 'plaintiff must allege Fact Y at the outset.' " *Farrell v. Harrington*, No. 07-3027, 2007 WL 3307026, *1, (Nov. 2, 2007 N.D. Ill.)(Moran, J.).

Dismissal is improper if there is any set of facts consistent with the allegations that support the claim for relief. *Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). A motion to dismiss tests the sufficiency of the complaint, not the merits of the action. *Triad Assocs. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989), *cert. denied*, 498 U.S. 845, (1990). In considering a motion to dismiss, the district court must assume the truth of all well-pleaded factual allegations and make all possible inferences in favor of plaintiff. *See, e.g., Cruz v. Beto*, 405 U.S. 319, 322, (1972); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1428 (7th Cir. 1996). To survive Defendant's motion, Plaintiffs need not show that they will ultimately prevail, but that they are entitled to offer evidence in support of their claims. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004).

---

[1]    There is support for the proposition that when a claim under the ICFA is based on an unfair practice, rather than a deceptive one, there is no heightened pleading requirement. *See Strohmaier v.*

IV.     **REQUEST FOR JUDICIAL NOTICE**

Defendant asks the Court to take judicial notice of several documents attached to its motion to dismiss that are outside of the four corners of Plaintiffs' complaint.  To meet its burden, MBUSA must show under Rule 201 of the Federal Rules of Evidence ("FRE") that it seeks judicial notice of a fact which is "not subject to reasonable dispute in that it is either (1) generally known with the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.  FRE 201(b); *Unity House Inc. v. First Commercial Fin. Group*, No. 96 C 1716, 1997 WL 282725 (N.D. Ill. May 19, 1997).

With respect to judicial notice of adjudicative facts, the tradition has been one of caution in requiring that the matter be beyond reasonable controversy.  Advisory Committee Notes FRE 201(b)(1972).  Before a fact is judicially noticed a court must determine that "the fact [is] one that only an unreasonable person would insist on disputing." *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983).   The rule proceeds upon the theory that these considerations call for dispensing with traditional methods of proof only in clear cases.  Advisory Committee Notes FRE 201(b) (1972).

The substance of MBUSA's proffered documents are subject to reasonable dispute and are not within the territorial knowledge of the Court, and thus, the Court should not take judicial notice of them.  Under Rule 12(b)(6),  the court will not look beyond the four corners of the complaint in determining whether plaintiff has stated a claim.  *Palda v. General Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995).  It may be true that the option of converting a 12(b)(6) motion to dismiss into a Rule 56 summary judgment motion is made available to a court "where matters outside the pleadings are presented to and not excluded by the court.'  But that alternative seldom makes sense at the threshold stage of any litigation." *See Magellan v. Int'l Corp. v. Salzgitter Handel GmbH,* 76 F.Supp.2d 919, 922 (N.D.Ill. 1999)(Shadur, J.).  Moreover, taking judicial notice of public records is not the same thing as taking judicial notice of the truth of what it stated in them. *See Hall v. Sheahan*, No. 2000 C 1649, 2001 WL 111019, *2 (N.D. Ill. Feb. 2, 2001)( Moran, J.).

For instance, Defendant asks the Court to take judicial notice of language from an ATX subscriber agreement.  It is entirely inappropriate to consider extrinsic evidence at the motion to

dismiss stage.  As the *Atlass* decision held regarding the exact subscriber agreement, "it would be inappropriate for the Court to consider [Defendant's extrinsic evidence] at the motion to dismiss stage, which requires this Court to take the allegations of the Complaint as true." *Atlass v. Mercedes-Benz USA, LLC*, Civ. No. 07-2720 (DRD), 2007 WL 2892803, *7 (D.N.J. Sept. 25, 2007).  On a 12(b)(6) motion, "the district court may not look to materials beyond the pleading itself." *Alioto v. Marshall Field's & Co*. 77 F.3d 934, 936 (7th Cir. 1996).  "If the court does consider extrinsic materials, the motion must be converted into one for summary judgment." *Id.* However, if the court were to treat this as a motion for summary judgment, it follows that the court must "provide the litigants with notice and an opportunity to respond." *Kingdom of Saudi Arabia*, 73 F.3d at 1430.  As no notice has been given for a summary judgment motion, Defendant should not be allowed to treat it as such and should be precluded from introducing extrinsic evidence.

## V.    ARGUMENT

### A.    Plaintiffs State A Claim Based On Allegations That Defendant Failed To Disclose That the TeleAid System Would Become Obsolete

The genesis of Plaintiffs' claims are that MBUSA marketed and sold the TeleAid system long after it knew that it would be rendered obsolete within the useful life of the vehicles.  And when the systems were rendered inoperable, MBUSA did not stand by its product, its warranties, or its reputation.  Instead of repairing or "upgrading" the TeleAid system at no charge, MBUSA sought to charge upwards of $2100 for parts and labor.  These allegations state a claim under applicable law.

### 1.    Courts Have Already Ruled That the Instant Allegations Are Sufficient to State a Claim.

Plaintiffs are not required to allege a duty to disclose[2] for their statutory concealment claims to survive.  *See e.g., Connick v. Suzuki Motor Co., Ltd.,* 75 Ill. 2d 482, 505 (Ill. 1996); *Karpowicz v. General Motors Cop.,* No. 97 C 1390, 1997 WL 413929 (N.D. Ill. 1997). Nevertheless, MBUSA had a duty to disclose to Plaintiffs and the Class that their TeleAid systems would become obsolete by December 31, 2007, during the useful life of their vehicles.

---

[2]    Defendant does not identify which count to which this argument applies.  Whether ICFA or NJ CFA, this argument fails.

It did not.  Other courts have upheld claims in related actions alleging similar claims against MBUSA.  *See Atlass*, 2007 WL 2892803; *Morris v. Mercedes-Benz USA, LLC*, Ber-L-2592-07, slip op. (N.J. Super. Sept. 20, 2007)(Ex. A).

In *Atlass*, Senior District Judge Debevoise ruled that MBUSA's failure to make these very same important disclosure constituted "wrongful conduct."  Specifically, the court stated:

> Plaintiffs' allegations are not simply that Defendant did not inform them of the FCC rule change, but rather that Defendant, knowing of the FCC's decision to end the requirement that wireless carriers provide an analog network, continued to market the analog TeleAid system without informing consumers of its potentially brief life span.  The Court has concluded that these contentions sufficiently allege wrongful conduct on the part of the Defendant.

*Atlass*, 2007 WL 2892803, at *6.

Contrary to Defendant's assertion, this is not a "factually novel" case.  Rather, this is a classic, text-book example of an omissions case that courts have repeatedly upheld in both Illinois and New Jersey.  *See, e.g., Muehlbauer*, 431 F. Supp. 2d at 867-68; *Talalai v. Cooper Tire & Rubber Co.,* 360 N.J. Super. 547, 563 (2001) (holding that a failure to disclose material information is actionable under the New Jersey Consumer Fraud Act).  In *Muehlbauer*, car purchasers alleged that the manufacturer knew but failed to disclose that their cars had defective antilock brakes.  *Id.* at 869-70.  This Court found such an omission actionable under the Illinois Consumer Fraud Act ("ICFA") and that defendant should have disclosed this material fact to buyers.  *Id.* at 269; *see also Connick*, 675 Ill. 2d at 505 (finding failure to disclose material information actionable under the Illinois Consumer Fraud Act); *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007)(finding failure to disclose material information actionable under the California Consumers Legal Remedies Act).  Thus, failure to disclose known problems with car components are actionable omissions.

## 2.    Defendant Failed to Disclose Material Facts of Which it Had Superior Knowledge and Which Directly Impacted its Representations

In support of its motion to dismiss, Defendant purposefully mischaracterizes Plaintiffs' allegations by arguing that it had no duty to notify Plaintiffs of "changes in the law."  MTD at 8. MBUSA ignores the fact that it was in a superior position of knowledge regarding the future inoperability of the analog-only TeleAid systems.  Both MBUSA and ATX actively participated in the FCC rule-making process and commented in opposition to what would be the FCC's

ultimate ruling in 2002.   Defendant had superior knowledge that if the rule went into effect, carriers would stop providing analog service, rendering analog-only TeleAid systems obsolete. MBUSA did not disclose this material information to Plaintiffs in its marketing materials. Defendant's knowledge, along with its express representations about the TeleAid system, namely, that TeleAid was a standard-safety feature providing emergency services – such as road side assistance, call center communications, and air bag deployment notification – obligated Defendant to disclose to buyers that the system would cease functioning during the useful life of the car.  *See Atlass, supra.*

Courts have routinely held that a duty to disclose material facts exists where defendant is in a position of superiority over plaintiff and plaintiff places confidence in the defendant.  *See e.g., Connick*, 675 Ill. 2d at 500.  Moreover, the party with superior knowledge owes a "duty of full disclosure of all available information concerning the nature thereof."  *Pat J. Murphy v. Drummond Dolomite, Inc.*, 232 F. Supp. 509, 525 (D. Wis. 1964).  Failure to make the full disclosure of all material facts in "clear-cut" and "understandable" terms constitutes an actionable misrepresentation.  *See id*. at 525; *see also Atlass*, 2007 WL 2892803, at *7.  In *Atlass,* Judge Debevoise found "unavailing" MBUSA's argument that it was "under no obligation to inform Plaintiff of information found in the TeleAid service contract or publicly available information…[T]here is a duty to speak when 'an ordinary purchaser of an automobile does not have access to the same information' as the manufacturer." *Atlass*, at *13-14.

Here, Defendant was in a superior position to know, and did in fact know and so testified, that as a result of the FCC's rule that no longer mandated support of analog (as announced in 2002), cellular providers would convert their networks to digital, and analog-only TeleAid systems would cease to function as early as December 31, 2007.  Cplt. ¶ 22, 37.   In addition, MBUSA was in a superior position to know that Plaintiffs' TeleAid system operated only on an analog network.  Despite this superior knowledge, Defendant did not disclose that TeleAid would become obsolete within the useful life of the cars.   Instead, Defendant continued to make express and affirmative statements regarding the operability and safety of Plaintiffs' TeleAid system in connection with the purchase and sale of the cars, thereby implicitly representing that the TeleAid system would operate for the useful life of the vehicle.  Cplt. ¶¶ 11, 12, 29.  As the above authorities make clear, MBUSA, by virtue of its superior position over Plaintiffs, its

7

superior knowledge, and its express representations about the TeleAid system, had a duty to disclose material facts.  MBUSA's failure to do so is actionable.

### 3.    MBUSA's Authorities Regarding the Duty to Disclose Changes in the Law Are Irrelevant

Despite the law to the contrary, Defendant nevertheless cites to a number of inapposite cases for the proposition that there is no duty to disclose changes in the law.  Each of the cases is readily distinguishable and inapplicable here.

#### a.    MBUSA failed to notify Plaintiffs of material facts

For example, Defendant cites to real property cases involving omissions of law, not of fact.  In *Randels v. Best Real Estate*, *Inc.*, 243 Ill.App.3d 801 (1993), the court held that the defendants had no duty to disclose a city's sewer hookup ordinance because not only was the ordinance public knowledge but "Plaintiffs knew the property had a septic system."  *Id*. at 807. Moreover, unlike here, Best Real Estate, Inc. never made any representations to the plaintiffs about the system at issue.  *Id.* at 804.  Similarly, in *Notaro Homes, Inc. v. Chicago Title Insurance Co.*, 309 Ill.App.3d 246 (1999), the court held that an omission of law is not actionable because the plaintiff, as a builder himself, had "presumed familiarity with zoning ordinances."  *Id.* at 259.  As the Court in *Atlass* pointed out, however, "'an ordinary purchaser of an automobile does not have access to the same information' as the manufacturer…"  *Atlass*, 2007 WL 2892803, at *7. In other words, both *Randels* and *Notaro* were premised on having specific knowledge which one court has already held MBUSA's consumers did not have.

Defendant's reliance on a line of insurance cases is misplaced for similar reasons.  For example, in *Young v*. *American Family Mut. Ins. Co.*, while the Court believed that insurers had no duty to disclose changes in law, the Court stated that "insureds should surely be informed when an insurer changes the nature of an agreed-upon coverage in a way contrary to the parties' original understanding."  No. CV-06-1494-PHX-DGC, 2007 WL 1559935, at *3 (D. Ariz. May 29, 2007). [3]  Here, the original understanding was that the TeleAid system would provide its advertised safety services for the life of the vehicle, and Defendant had a duty to disclose any facts contrary to this understanding.  Again, Defendant made no such disclosure.

---

[3]    *See also Haley v. AIG*, 2002 WL 417419, No. A2-01-49, at *5-7 (D.N.D. Jan. 24, 2002); *Advent v. Allstate Ins. Co.,* 862 N.E.2d 871, 879-880 (Ohio Ct. App. 2006)*; Roy v. Audubon*, 652 So.2d 995, 997 (La. Ct. App. 1993)*; Yoder v. Am. Travellers,* 814 A.2d 229, 233 (Pa. Super. Ct. 2002)*.*

Further, Plaintiffs are not merely complaining that Defendant did not notify them of the FCC rule change, but that Defendant did not adequately notify them that their TeleAid system would not work for the useful life span of their car. Given its active involvement in the FCC rulemaking, MBUSA was in a superior position to know that the TeleAid system was analog-only and that wireless carriers would stop providing analog service. The FCC rule merely states that wireless companies no longer had to support analog technology. As MBUSA's comments during the FCC rulemaking show, however, MBUSA had superior knowledge that *the result of* this FCC order was that wireless companies would no longer support analog networks after the sunset period. Despite this superior knowledge, MBUSA failed to disclose in the TeleAid marketing materials or MSRP sticker that the analog-only TeleAid systems would become obsolete during the useful life of the cars.

### b. MBUSA's remaining arguments are inapplicable

Defendant's reliance on "fraud-on-the-market" cases is unavailing.[4] Defendant had superior knowledge as to the future inoperability of the TeleAid system but failed to disclose it. As this Court noted in *Muehlbauer*, "[plaintiff] does not rely on a complicated fraud on the market theory… Instead, he claims that his damages were directly caused by defendant's non-disclosure." *Muehlbauer*, 431 F. Supp. 2d at 868. Thus, this Court has already found the fraud-on-the-market argument, like that advanced here, inapplicable to these types of allegations.

Defendant also makes the curious argument that the *government* has no duty to inform parties of the law. *See* MTD at 10. Plaintiffs allege solely that MBUSA, a *private* company, failed to make disclosures of material facts and makes no allegations of any wrongdoing by any government entity.[5] Defendant does not explain why a private company can borrow any governmental immunity from disclosure obligations. Thus, these cases should be disregarded.

Defendant's final argument falsely seeks to raise the specter of undue burden by arguing

---

[4]     MTD at 8 (citing *Heliotrope v. Ford Motor Co.*, 189 F.3d 975. (9th Cir. 1999); *see also Acme Propane v. Tenexco, Inc.*, 844 F.2d 1317 (7th Cir. 1988)).

[5]     *See Rucker v. Saxbe,* 552 F.2d 998, 1004 (3d Cir. 1977); *Owings v. Brown,* 86 F.3d 1178 (Fed. Cir. 1996)*; Dufau v. US*, 22 Cl. Ct. 156, 159 (Fed. Cl. 1990)*; Pence v. US,* 52 Fed. Cl. 643, 646-47 (Fed. Cl. 2002)*; Nordstrom v. US*, 342 F.2d 55, 59 (Fed. Cl. 1965). Defendant's citation to *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380 (1947), would also fall into this category, which involved a corporation wholly-owned by the government that promulgated its own wheat crop regulations. *Id.* at 381-82.

that providing consumers notice of a "myriad regulations" would be "overwhelming" to consumers. MTD at 11 (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992)). Contrary to Defendant's assertions, the material facts that Defendant failed to adequately disclose do not consist of "Federal Register entries and Reports of Rulings." MTD at 11. To satisfy its duty to disclose material facts to consumers, MBUSA should have disclosed that the TeleAid system would no longer work as early as December 31, 2007, and that buyers would need to spend additional and significant amounts of money to continue using their car's safety features after this date. There is nothing "overwhelming" about such a simple disclosure.

### 4.     MBUSA'S Extrinsic Material Does Not Absolve MBUSA of Liability.

Plaintiffs have argued in Part IV above that judicial notice of extrinsic materials not be considered. Even if the Court were to consider the Subscriber Agreement at this early stage, however, Defendant's so-called "disclosure" fails to absolve Defendant of liability. First, the "disclosure" did not inform Plaintiff and the Class that the TeleAid system would become obsolete as early as December 31, 2007, or that they would need to expend significant amounts of money to continue using the safety features of their vehicles. Despite Defendant's knowledge that analog-only TeleAid system would no longer work by December 31, 2007 (Cplt. ¶ 37), the "disclosure" is nothing but a mere conditional statement ("*If* the supporting wireless carrier and/or its roaming partners terminate or restrict analog service, the TeleAid services *may* not be available." MTD at 4 (emphasis added). In other words, vague disclaimers of "if" by a non-party cannot absolve Defendant when it *knew* that by virtue of the FCC's rule, that analog would definitively end its broadcast. Since Defendant *knew* that the analog TeleAid would no longer operate after December 31, 2007 due to the lack of a viable wireless signal, such a conditional disclosure failed to satisfy Defendant's duty to disclose material facts to its customers.[6]

---

[6]     *See e.g., In re Cell Pathways, Inc., Sec. Litig.*, 2000 U.S. Dist. LEXIS 8584, at * 41-42  (E.D. Pa. 2000) (cautionary statements accompanying false and misleading statements are insufficient if the defendants allegedly have knowledge that contradicts the accuracy of the cautionary statements); *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America W. Holding Corp.*, 320 F.3d 920, 937 (9th Cir. 2003) (same); *In re SeeBeyond Tech. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1166 (C.D. Cal. 2003)("Whether cautionary language is meaningful, in that it identifies important factors, can only be understood with reference to [defendants'] knowledge of relevant factors.  This result follows from the fact that courts and Congress have made clear that mere boilerplate cautionary language will not do."); *In*

Further, even if the vague disclosure could somehow be held to have provided Plaintiff and the Class substantive notice that the TeleAid system would no longer operate after December 31, 2007, the notice was inadequate on other grounds.  Defendant should have made the disclosure more conspicuous; Defendant could have placed the so-called disclosure next to or near the express and affirmative representations it made about the TeleAid system on the MSRP sticker or brochures.  Defendant could have also used larger font instead of burying it among several other lengthy terms and conditions in small, type-size font.  *See, e.g.,  Donaldson v. Read Magazine, Inc.,* 333 U.S. 178, 185-86 (1948) (advertisements that contained sentences in "small type" and that were "inconspicuous" where "none but the most meticulous reader would read and understand them" constituted fraud on the part of defendants since "they would confuse readers [and] distract their attention."); *Miller v. American Family,* 284 N.J. Super. 67, 87 (Ch. Div. 1995) ("a claim of literal truth will not constitute a defense to a charge that the overall impression created by an advertisement is misleading and deceptive to an ordinary reader.").  These are all factual issues to be decided by the jury and cannot be decided on this motion.

Finally, MBUSA, using facts not in the complaint, now claims it had no duty to disclose that the TeleAid system would become inoperable because: a) the FCC held open the possibility that the sunset period would be extended, and b) the FCC expected that vendors would continue analog service after the sunset period as long as consumers demanded.  In other words, MBUSA now claims (contrary to its testimony to the FCC) that it was uncertain as to whether the TeleAid system would become inoperable.  Plaintiffs allege, however, that Defendant *knew* that the TeleAid system would become inoperable and at this stage, their allegations must be accepted as true.  *See Atlass*, 2007 WL 2892803, at *7.  Plaintiffs expect the factual record, as developed through discovery, will show that MBUSA had full knowledge that analog service would no longer be available and that the TeleAid system would no longer work.  The FCC's statements are not dispositive as to what MBUSA knew to be true – *i.e*., that analog signals would not be available within a few years.  Moreover, according to MBUSA, its cars had a ten-year useful life

---

*re Prudential Sec. Ltd. P'ships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) (same); *Securities and Exch. Comm'n v. Mize,* 615 F.2d 1046, 1055 (5th Cir. 1980) ("Where the occurrence of a proposed course of action has reached a stage of probability rather than mere possibility, the negotiations concerning the proposed action must be disclosed even though the future event is not absolutely certain to occur.").

(and could be on the road for up to 20 years). Thus, for cars sold during the class period, even with a five-year extended sunset period, MBUSA knew the TeleAid systems would become obsolete within this useful life. Accordingly, MBUSA's argument should be rejected.

**B.    New Jersey Law May Be Properly Applied**

This Court may properly apply New Jersey law to the putative nationwide class.[7] Courts need not engage in a choice-of-law analysis if the consumer fraud laws of the states are similar, *i.e.,* the differences between the laws would not be outcome determinative. *See Barbara's Sales Inc. v. Intel Corp.,* 227 Ill.2d 45, 2007 WL 4200855 (Ill. Nov. 29, 2007). Defendant alleges differences between New Jersey and Illinois consumer fraud laws where none exist. For instance, MBUSA wrongly argues that Illinois requires reliance for a misrepresentation while New Jersey does not. *See* MTD at 13. First, Plaintiffs' claims under the New Jersey Consumer Fraud Act ("NJ CFA") are for material omissions, not misrepresentations. Second, reliance is not an element of statutory consumer fraud in New Jersey or Illinois. *See Union Ink Co., Inc. v. AT&T Corp.,* 352 N.J. Super. 617, 646 (2002); *Connick.,* 174 Ill.2d at 501. *Barbara Sales* does not hold otherwise. *See id.,* 2007 WL 4200855 at *8.

Should this Court determine that a choice of law analysis is required at this early juncture, however, Illinois has adopted the approach found in the Second Restatement of Conflict of Laws. *Morris B. Chapman & Assoc., Ltd. v. Kitzman*, 193 Ill.2d 560, 568 (2000); *Esser v. McIntyre*, 169 Ill.2d 292 (1996). Following the Restatement, Illinois applies the broad principle that the rights and liabilities as to a particular issue are to be governed by the jurisdiction which retains the "most significant relationship" to the occurrence and the parties. *See Kitzman*, at 568. Illinois has jettisoned the *lex loci delicti* rule –also called the place-of-injury rule –and does not merely count contacts, recognizing that other jurisdictions may have an interest in the controversy that are not adequately reflected by a simple tally. *See Barbara Sales,* 2007 WL 4200855 at*8. Rather, Illinois' approach in seeking the appropriate applicable law is informed by the issues raised.

Defendant fails to provide any cogent choice of law analysis to support its argument that

---

[7]    Defendant argues that even if New Jersey law applies, the New Jersey claims fail for the reasons stated in Section II of its brief. MTD at 13, n. 4. Plaintiff assumes that Defendant is arguing that the New Jersey claims would fail based on its argument that it has no duty to disclose changes in the law. As Plaintiffs discuss herein in Part A, Plaintiffs' claims survive under New Jersey law as well.

New Jersey law cannot apply. Instead, Defendant merely relies on the *Barbara Sales* case. That case, however, has nothing to do with the application of New Jersey law. In *Barbara Sales,* the Illinois Supreme Court found that Illinois law, and not California law applied based on the facts there. *Barbara Sales* is distinguishable from this case, however.

First, *Barbara Sales* was decided on a factual record, after the parties had conducted discovery and briefed class certification. *See id.* at *5. Plaintiffs should be given the same opportunity to conduct discovery regarding the issue of significant contacts and to brief class certification. Second, in reaching its decision, the Illinois Supreme Court analyzed the respective state interests. The Illinois Supreme Court found that "California has no interest in extending its laws outside to noncitizens and to actions that occurred outside of California borders." *Id.* at 10. In contrast, New Jersey has significant interests in seeing its laws applied here. The NJ CFA is to be liberally applied, and permits recovery to persons whether or not they are New Jersey residents. *See Lemelledo v. Beneficial Mgmt. Corp. of Am.,* 150 N.J. 255, 268 (1997); N.J.S.A. 56:8-19. The Act's main purposes are to make victims whole, to punish the wrongdoers and to *deter* corporations from engaging in fraudulent practices. *See Furst v. Einstein Moomjy, Inc.,* 182 N.J. 1, 12 (2004). The NJ CFA was enacted to protect consumers from improper selling practices by preventing deception, fraud, falsity, whether by acts of commission or omission, in connection with the sale and advertisement of merchandise and real estate. *Talalia*, 360 N.J. Super. at 561. The NJ CFA is remedial and is to be liberally construed in favor of protecting consumers. *Id.*

Apart from its significant interests, New Jersey has significant contacts to this action. MBUSA initiated, drafted, created and distributed its marketing materials from its principal place of business in New Jersey. *See* Cplt. ¶ 11. Thus, the injury-causing conduct occurred in and emanated from New Jersey. MBUSA is also the responsible party that had detailed knowledge regarding the TeleAid system's future inoperability. MBUSA's decision and concerted efforts to continue to market the analog TeleAid system without informing consumers of its brief life span also presumably emanated from New Jersey. Therefore, New Jersey's significant contacts to this cause of action make the application of the NJ CFA to the nationwide putative class valid.

**C.**     **The Second Cause of Action Properly States A Claim  Under the Illinois Consumer Fraud Act**

Plaintiffs also successfully plead a claim for damages under the Illinois Consumer Fraud Act ("ICFA").   To state a claim under the ICFA, a plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception."  *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 149 (Ill.2002); *Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir. 2005).  Consumers raising ICFA claims are afforded "far broader" protection than those who bring common law fraud claims.  *Celex Group Inc. v. Executive Gallery, Inc.*, 877 F.Supp. 1114, 1128-29 (N.D. Ill. 1995).  Moreover, courts must liberally construe ICFA. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 675 N.E.2d 594 (Ill. 1996).

**1.**     **Defendant Knew As Early As August 2002 That the TeleAid System Would Cease to Function**

This is a classic example of an omissions case.  The deceptive acts alleged in the complaint are Defendant's non-disclosure and concealment of the material defect of the TeleAid system, namely, that it would cease to function during the useful life of the vehicle.  Defendant's position on the omissions is indefensible.  Rather than revealing all MBUSA's superior knowledge of the analog-to-digital transition, Defendant defends its omissions by falsely claiming it did not know *exactly when* the analog service would be discontinued.  MTD  at 14. Notably, MBUSA is not arguing that it did not know these systems would fail during the useful life of the vehicles. MBUSA did know the material fact that the telecommunications companies would no longer support analog and hence the TeleAid system would cease to function during the reasonable life of Plaintiffs' vehicle—regardless of any potential extension of the sunset period. Plaintiffs' allegations must be accepted as true and therefore Plaintiffs have adequately alleged that MBUSA failed to disclose a material fact of which it had knowledge.

**2.**     **Defendant's Omissions Were Material**

The concealment or omission of a material fact in the conduct of commerce constitutes consumer fraud.  *Connick*, 675 N.E.2d at 595; *Pappas v. Pella Corp.*, 363 Ill.App.3d 795, 844 N.E.2d 995, 998 (Ill.App. 1 Dist. 2006).  A fact is material if "the plaintiff would have acted

differently had she been aware of it, or if it concerned the type of information upon which she would be expected to rely in making her decision to act." *Muehlbauer*, 431 F.Supp.2d at 867-868.

As argued above, Plaintiffs have amply alleged an actionable omission of a material fact. Defendant was in a superior position to know of and, indeed did know of, the impending obsolescence of the analog-only TeleAid system as far back as August 2002 –approximately two years before the Sens purchased their Mercedes. Cplt. at ¶¶ 5, 18. But MBUSA continued to market the TeleAid system to the Plaintiffs' detriment without an appropriate and adequate disclosure. *Id.* at ¶ 5. MBUSA expressly represented the TeleAid system as an important safety device. *Id.* at ¶ 11. Thus, information that the TeleAid system would not operate during the useful life of the car is precisely the type of factual information upon which a consumer would be expected to rely upon when making a purchase. Plaintiffs specifically alleged that these omissions were material. *Id.* at ¶ 5. Plaintiffs have adequately pled materiality.

### 3.    Plaintiffs Adequately Allege Proximate Causation

Similarly, MBUSA's argument regarding proximate causation must fail. MBUSA claims that Plaintiffs have not alleged where one Mercedes representation directly made to Plaintiffs which caused Plaintiffs to do anything. MTD at 16. MBUSA's argument fails to grasp the distinction between an affirmative misrepresentation and an omission. An affirmative misrepresentation is made in a specific place by a specific person, and those details can thus be plead with specificity. An omission, by its nature, is not linked to a specific time and place, and MBUSA cites no authority for the proposition that Plaintiffs are required to plead the circumstances under which disclosures about the defect should have been made but were not. In other words, it is an impossibility to provide the specifics regarding representations *not* made. The information concealed by MBUSA could have been disclosed to Plaintiffs at any time before they purchased their vehicle in any reasonable manner. Regardless, Plaintiffs have nevertheless plead the types of disclosures that should have been made and where. Cplt. at ¶¶ 41, 49, 50, 55-57, 62.

In a similar case, *Perona v. Volkswagen of America, Inc.*, 292 Ill.App.3d 59 (1997), the plaintiffs alleged defendants knowingly concealed defects in their Audi vehicles that caused "unintended acceleration." Plaintiffs there alleged Audi was aware of the Audi 5000's safety

problems but failed to disclose those defects.  *Perona*, 292 Ill.App.3d at 69.  The court held the plaintiffs adequately alleged a consumer fraud violation based on a material omission by Audi. *Id.* at 68.  In *Pappas*, plaintiffs adequately pled proximate causation by alleging "concealment by silence."  363 Ill. App. 3d at 844.  Distinguishing the facts in *Avery*,[8] the court noted that unlike the plaintiffs there,[9] the plaintiffs in *Pappas* were not relying on allegedly deceptive advertising to establish their consumer fraud claim against the defendant.  Instead, the plaintiffs charged that the defendant, even though aware of a material defect, never notified its customers that the aluminum clad wood windows were defective.  In effect, plaintiffs allege they relied on the defendant's concealment by silence.  The court went on to opine that "Requiring anything more would eviscerate the spirit and purpose of the Consumer Fraud Act."  *Pappas*, 363 Ill.App.3d at 805.

Here, Plaintiffs allege that MBUSA, even though aware of a material defect, never notified its customers that the standard safety and security system installed in Mercedes vehicles – the TeleAid system – is defective and cannot function for its intended use during the useful life of the vehicle. Thus, causation is properly pled.

### 4.    Plaintiffs Adequately Plead Damages

Contrary to Defendant's argument, Plaintiffs have adequately pled damages.  A person who brings an action under ICFA must suffer actual damages. 815 ILCS 505/10a(a); *Oliveira*, 776 N.E.2d at 160.  Like the plaintiffs in *Muehlbauer*, Plaintiffs here purchased a vehicle with a defective safety device for the price of a vehicle with a non-defective safety device.  Defendant implausibly argues that there is no value to the TeleAid system because it was provided for free as standard equipment.  MTD at 17.  That argument is (a) based on facts not in evidence and (b) belied by MBUSA's charge to its customers of the $1000 to $2100 for parts and labor .  Cplt. ¶¶ 34-35.  Plaintiffs' allegations must be taken as true.  Thus, they have properly pled damages.

---

[8]    Defendant incorrectly relies on *Avery v. State Farm Mutual Automobile Ins., Co.*, 216 Ill.2d 100, 835 N.E.2d 801 (2005) for the argument that this case is about puffery.  MTD at 17.  *Avery* involved misrepresentations which the court found to be puffery and non-actionable.  This case involves omissions of material facts.

[9]    As well as plaintiffs in  *Shannon v. Boise Cascade Corp.*, 208 Ill.2d 517, 805 N.E.2d 213 (2004); *Oliveira v. Amoco Oil Co.,* 201 Ill.2d 134, 776 N.E.2d 151 (2002); *Zekman v. Direct Am. Marketers, Inc.,* 182 Ill.2d 359, 695 N.E.2d 853 (1998).

5.     **If Applicable, Plaintiffs Amply Satisfy Rule 9(b)**

Just as the plaintiffs in *Connick* and *Muehlbauer* successfully pled ICFA claims, so do the Sens. They allege that MBUSA failed to disclose that a standard feature on the Mercedes is defective, and the defect, which should have been disclosed, is described with sufficient particularity to meet the requirements of Rule 9(b) where the Sens provide the "who, what, when, where, and how" of their claim. *Cf.* Cplt. ¶¶ 30-34 *with DiLeo*, 901 F.2d at 627. The Sens similarly allege that MBUSA became aware of the defect as early as August 2002, approximately two years before they bought their Mercedes with the defective TeleAid. Finally, the Sens allege that the Defendant accomplished the fraud by omission. The pleading standards are thus satisfied.

D.     **The Third Cause of Action Entitles Plaintiffs to Injunctive Relief under Illinois Deceptive Practices Act Because Defendant Failed to Adequately or Fully Disclose That the TeleAid System Would Cease to Function During the Useful Life Of The Vehicle**

Plaintiffs and those Class Members who have not yet paid to repair and/or replace their TeleAid system are entitled to injunctive relief in the form of a free repair and/or replacement pursuant to the Illinois Uniform Deceptive Practices Act, 815 ILCS 510/et. seq. ("IUDPA"). Illinois enacted the IUDPA in 1965 primarily for the purpose of defining and prohibiting deceptive trade practices (see 1965 Ill. Laws 2647, eff. January 1, 1966 (title of Act)) and unfair competition. *Chabraha v. Avis Rent A Car Sys., Inc.*, 192 Ill.App.3d 1074, 1079 (1989). While the statute was created to limit unfair competition and was not technically intended to be a consumer protection statute, Section 2 of ICFA incorporates the standards of the IUDPA, so any violation of the latter is also a violation of the former. 815 ILCS 505/2.[10]

MBUSA's motion directed to this count is without merit. MBUSA relies upon cases holding that if terms are fully disclosed, then there is no deception. It's reliance is misplaced. MTD at 18 (citing *e.g., Robacki v. Allstate Ins. Co.,* 127 Ill.App.3d 294, 301 (1 Dist. 1984)). *Robacki*, on a motion for summary judgment, analyzed the disputed terms of an automobile insurance policy on claims based on deceptive and misleading statement. There were no allegations of omission. A fundamental issue in the instant case is that MBUSA omitted material

---

[10]     815 ILCS 505/2 states, in relevant part, that "the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' …[is] hereby declared unlawful."

facts and Plaintiffs have pled that Defendant's omissions lie at the heart of this issue. Cplt. ¶¶5, 28, 29. Moreover, once again MBUSA relies upon extrinsic materials, namely, the Subscriber Agreement, to disclaim liability. *See* Part A.4, *supra*. The material outside of the complaint offered by Defendant is not properly before the Court and should not be considered on a motion to dismiss. Moreover, even if the Court considers the Subscriber Agreement, it does not absolve Defendant of liability as discussed in Part A.4, *supra*.

### E.     Count IV Properly States A Claim For Breach of Express Warranty

To succeed on an express warranty action under both New Jersey and Illinois law, the "plaintiff must show breach of an affirmation of fact or promise which was made part of the basis of the bargain." *Wheeler v. Sunbelt Tool Co., Inc.*, 181 Ill.App.3d 1088, 1100 (Ill.App.4 Dist. 1989); 810 ILCS 5/2-313(a); *Gladden v. Cadillac Motor Car Div., Gen. Motors Corp.,* 83 N.J. 320, 325 (1980); N.J.S.A. 12A:1-101 *et seq*. The language of the warranty itself is what controls and dictates the obligations and rights of the parties. *Wheeler,* 181 Ill.App.3d at 1100. Documents, brochures, and advertisements may constitute express warranties. *Id.* Here, MBUSA promised that any defects would be repaired free of charge. Cplt. ¶¶ 66, 68. The cars were sold with telematic systems that would not operate within their useful life. Instead of repairing this defect free of charge under the warranty, MBUSA seeks to impose the cost on Plaintiffs and the putative class contrary to the express warranty.

Plaintiffs properly allege (a) MBUSA's misrepresentations and statements of warranty: *inter alia*, MBUSA touted TeleAid as a standard safety feature of its vehicles (*see* Cplt. ¶¶ 11-13); promised to repair of defects (*id* at ¶¶ 66-68); "deployment of an airbag or Emergency Tensioning Device (ETD) will automatically transmit an emergency call to the TeleAid Response Center" (*id* ¶¶ 10, 12-13); and that "help is just the push of a button away." (*id* ¶ 12); (b) how MBUSA and TeleAid breaches such warranties, (*see id*. ¶¶ 24, 29, 32-33); and (c) the damages sustained by Plaintiffs and Class members were caused by MBUSA's breach and Plaintiffs were damaged thereby, where MBUSA's acknowledged the impact the loss of the analog requirement would have on many of its customers (*id* ¶¶18-19, 25-26); and where MBUSA finally notified Plaintiffs that their TeleAid service would be disconnected unless Plaintiffs purchased a $1000 to $2100 analog-digital upgrade. *Id*. ¶¶ 34, 38.

Moreover, despite MBUSA's attempt to convince this Court that Plaintiffs fail to allege a

breach of express warranty, MBUSA's explicit description of the TeleAid system is a specific promise of a safety and security feature by which consumers were induced in part to purchase the vehicles.  MBUSA's argument that there is no defect and hence no breach of warranty because it is the signal that fails to function, not the equipment, is frivolous.[11]  A fundamental characteristic of the TeleAid system is its signal capability in both emergency and non-emergency situations. Cplt. ¶¶ 10-14.  Without a working signal, the TeleAid system is worthless and thus a vital safety feature promised to Plaintiffs is compromised.  MBUSA issued a warranty about the TeleAid system.  Unlike warranties in the form of opinions, recommendations or affirmations of a product's value, expressions of *what it is* that the seller has agreed to sell conclusively form part of the basis of the bargain, and are not subject to rebuttal or disclaimer.  The seller is bound to deliver goods that conform to the seller's statement or description of the subject matter of the sale if it wants to avoid liability for breach of warranty.  MBUSA did not warrant an analog-only device, it touted a device designed to provide Mercedes-Benz owners with "location-specific security, information and conveniences." Cplt. ¶ 12.  MBUSA's description of the TeleAid system constituted an express warranty which was breached because the TeleAid system no longer performs its fundamental function.  Accordingly, this warranty is not subject to rebuttal or disclaimer in this case.

### F.     Count V Properly States A Claim for A Breach of Implied Warranty

Although Plaintiffs brought this count under New Jersey law, MBUSA argues that the count fails to state a claim under Illinois law.  *Cf.* MTD at 12, 13, 19 with Cplt. at ¶ 64-70. Under either law, the claim prevails.

An implied warranty is such that "a product must conform to affirmations of fact about it on labels or on the container and be fit for the ordinary purpose for which such goods are used." 810 ILCS § 5/2-314 and § 5/2-315.  The elements comprising a breach of implied warranty of merchantability are the same in jurisdictions that have adopted UCC § 5/2-314, as both Illinois and New Jersey have done.  To state a claim for breach of implied warranty of merchantability under Illinois law or New Jersey law (*see* N.J. Stat. Ann § 12A:2-314), plaintiffs must allege that (1) Mercedes vehicles were not merchantable at the time of sale; (2) plaintiffs suffered damages

---

[11]     *Collum v. Fred Tuch Buick*, 6 Ill.App.3d 317, 322, 285 N.E. 2d 532, 536 (1 Dist. 1972) upon which Defendant relies is distinguishable.  There, the plaintiff made a failed attempt to rely upon the doctrine of *res ipsa loquitor* to sustain his burden of proof.  Plaintiffs here make no such reliance.

as a result of the defective vehicles; and (3) plaintiffs gave MBUSA notice of the defect. 1 James

J. White & Robert S. Summers, Uniform Commercial Code § 9-7, at 510-511 (4th ed. 1995).

Plaintiffs successfully allege manifest defect, injury, damages and unmerchantability.

The defect in the TeleAid system is manifest in the Plaintiffs' and the Class members' vehicles

where the TeleAid system ceased to function as of December 31, 2007.   Defendants take issue

only with Plaintiffs allegations regarding privity and fitness for ordinary purpose. MTD at 19.

### 1.    The Implied Warranty Claim Are Not Barred By Privity Concerns

MBUSA claims that Plaintiffs' implied warranty claim is barred by a lack of privity.

New Jersey law, however, has no such limitations.  *See Spring Motors Distrib., Inc. v. Ford*

*Motor Co.,* 98 N.J. 555, 561 (1985) (holding that a buyer seeking damages for economic loss for

the purchase of defective goods against a remote seller need not establish privity).  Even under

Illinois law, Plaintiffs meet the privity requirement by virtue of Defendant's express warranty,

which constitutes a written warranty under Magnuson-Moss.[12]  *See Szajna v. General Motors*

*Corp.,* 115 Ill.2d 294, 315-16 (1986) (holding that under Magnuson-Moss, a warrantor, by

extending a written warranty to the consumer, establishes privity between the warrantor and the

consumer which is sufficient to support an implied warranty under the UCC).   Defendant's

reliance upon *Mekertichian* is misplaced as the court in there held that it was required to follow

*Szajna* and *Rothe v. Maloney Cadillac, Inc.*, 119 Ill.2d 28 (1988) in finding that privity is *not*

required to bring a claim for a breach of implied warranty of merchantability under Illinois state

law pursuant to a Magnuson-Moss warranty.  *See Mekertichian v. Mercedes-Benz U.S.A., L.L.C.,*

347 Ill.App.3d 828, 831 (2004).

Moreover, Plaintiffs' warranty claims are not defeated by MBUSA's privity objection

because while MBUSA may not sell Mercedes vehicles directly to consumers, it does so through

authorized MBUSA dealerships, which are its sales agents or, at a minimum, its apparent agents.

*See generally* Cplt. at ¶ 3. Litigants need not plead agency with particularity.  *See e.g., Kent v.*

*Celozzi-Ettleson Chevrolet, Inc.*, 1999 WL 1021044, *3 No. 99 C 2868, (N.D. Ill. Nov. 3, 1999)

(disagreeing with auto manufacturer's argument that plaintiff must allege facts sufficient to

establish agency relationship).  Thus, evidence of agency, which will be adduced as this

---

[12]      The fact that Plaintiffs have not brought a claim under Magnuson-Moss does not change this analysis. *See generally, Simpson v. MSA of Myrtle Beach, Inc.,* No. 26293, 2006 WL 4388016, *8 (S.C. March 26, 2006).

litigation progresses, will be sufficient to satisfy any privity requirement imposed by Illinois law.

> **2.      The Analog-Only TeleAid System Is Not Fit For Its Ordinary Purpose Of Providing A Functioning Safety And Security System**

A product is not merchantable unless it is "fit for the ordinary purposes for which such goods are used." 810 ILCS § 5/2-314.  The ordinary purpose of the TeleAid system –standard safety equipment installed in Mercedes vehicles – is to provide roadside safety assistance to Mercedes drivers in the event of an emergency.  In the case of motor vehicles, fitness for the ordinary purpose "implies that the vehicle should be in a safe condition and substantially free of defects."  *Check v. Clifford Chrysler-Plymouth of Buffalo Grove, Inc.¸* 794 N.E.2d 829, 836 (Ill.App. 2003).   By analogy, the analog-only TeleAid device is not free of defects as it cannot be used for their intended purpose of providing emergency roadside assistance.

> **G.      Count V Properly States A Claim For Unjust Enrichment**

Although Plaintiffs brought this count under New Jersey law, MBUSA argues that the count fails to state a claim under Illinois law.  *Cf.* MTD at 12, 13, 19-21 *with* Cplt. at ¶¶ 71-74 Under either law, the claim prevails.

Defendant's unjust enrichment arguments are equally flawed.  MBUSA has retained a benefit and it is well-settled that Plaintiff can plead a count for unjust enrichment in the alternative.  The elements of unjust enrichment claims under Illinois and New Jersey law are virtually identical.  "To state a cause of action based on the theory of unjust enrichment, a plaintiff must allege that the defendant unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience."  *Fireman's Annuity & Ben. Fund v. Municipal Employees', Officers', & Officials' Annuity & Ben. Fund.*, 579 N.E.2d 1003 (Ill.App.1st Dist. 1991); *In re K-Dur Antitrust Litig.*, 338 F.Supp.2d 517, 544 (D.N.J. 2004); *Cameco, Inc. v. Gedicke*, 299 N.J. Super. 203, 218, 690 A.2d 1051, 1059 (App.Div. 1997)(to state a claim for unjust enrichment, plaintiff must allege that defendant was enriched, the enrichment was at plaintiff's expense, and that defendant's retention of the benefit was unjust.)

Plaintiffs' unjust enrichment count is properly pled. To state a claim for unjust enrichment, Plaintiffs must allege that MBUSA was enriched, the enrichment was at Plaintiffs' expense, and that MBUSA's retention of that benefit would be unjust. When a party has been

unjustly enriched at the expense of another, the former is often required to return any benefit to the latter.  *See* Restat. 1st of Restitution, § 1.  "Benefit" is construed broadly to include "any form of advantage." *Id.* at cmt. b.  Defendant's argument that because the TeleAid equipment is standard and costs vehicle owners and lessees nothing is irrelevant.  It is akin to claiming that because the tires, steering wheel, and transmission come standard on the Mercedes they are all included *gratis*. By that faulty logic, the cost of the Mercedes is free and the purchaser or leasee pays only for the key.  Plaintiffs paid for every portion of the vehicle they purchased.  Defendant's argument that Plaintiffs have suffered no damages is implausible given that the repair and replacement of the TeleAid is estimated to cost between $1000 and $2100—a cost MBUSA refuses to cover for the Sens and the other putative class members.  Similarly, damages are evident where the Sens received a car with a standard safety and security feature that was known to be obsolete during the useful life of the vehicle yet they bargained and paid for a car with standard, *fully functional* safety features that was to operate during this useful life.

Defendant's second argument that Plaintiffs may not plead unjust enrichment where a contract sounds is equally unavailing.  It is well settled that a plaintiff may plead unjust enrichment in the alternative.  Fed. R. Civ. P. 8(e)(2); *see also Cooper v. Durham School Services*, 2003 WL 22232833, *7, No. 03 C 2431 (Sept. 22, 2003 N.D. Ill.).  Plaintiffs have done so.  Cplt. ¶¶ 75-81.

## VI.  <u>CONCLUSION</u>

Plaintiffs and the Class did not get what they were promised since MBUSA concealed the obsolescence of the standard safety and security system on their Mercedes vehicle.   The Sens have properly pled causes of action for violations of consumer fraud acts, injunctive relief under the Illinois Deceptive Trade Practices Act, New Jersey Consumer Fraud Act, breaches of express and implied warranties, and unjust enrichment (in the alternative) sufficient to withstand a Rule

12(b)(6) motion to dismiss. Therefore, Defendant's motion to dismiss should be denied.

Dated:  February 15, 2008

Respectfully submitted,

By*/s/Marvin A. Miller*
Marvin A. Miller
Lori A. Fanning
Matthew E. Van Tine
**Miller Law LLC**
115 S. LaSalle Street
Suite 2910
Chicago, IL  60603
(312) 332-3400
Facsimile: (312) 676-2676

Tracy D. Rezvani
**FINKELSTEIN THOMPSON LLP**
The Duval Foundry
1050 30th Street, NW
Washington, D.C. 20007
Telephone:  (202) 337-8000
Facsimile:  (202) 337-8090

Rosemary M. Rivas
Mark Punzalan
**FINKELSTEIN THOMPSON LLP**
100 Bush St., Suite 1450
San Francisco, California 94104
Telephone:  (415) 398-8700
Facsimile:  (415) 398-8704

# EXHIBIT A

**GRAHAM CURTIN**
A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, New Jersey 07962-1991
(973) 292-1700

**FILED**

SEP 2 0 2007

**JONATHAN N. HARRIS**
**J.S.C.**

**BRYAN CAVE LLP**
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63101-2750
(314) 259-2000
**Attorneys for Defendant**

|  |  |
|---|---|
| HOWARD S. MORRIS, on behalf of himself and all others similarly situated, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: BERGEN COUNTY DOCKET NO. BER-L-2592-07 |
| Plaintiffs, | Civil Action |
| v. | **ORDER DISMISSING COMPLAINT** |
| MERCEDES-BENZ USA, | |
| Defendant. | |

THIS MATTER having been opened to the Court by Graham Curtin, A Professional

Association, attorneys for defendant Mercedes-Benz USA, LLC  ("MBUSA") for entry of an

Order pursuant to R. 4:6-2 (e) Dismissing Plaintiff's Complaint for Failure to State a Claim Upon

Which Relief Can Be Granted, Stephen M. Sohmer, Esq., appearing for Plaintiff and Thomas R.

Curtin, Esq., of Graham Curtin, A Professional Association, of Bryan Cave, LLP, appearing for

Defendant, and the Court having considered the submissions and arguments of counsel, and for

good cause shown,

382351_1

It is on this **20** day of __SEPTEMBER__, 2007 ORDERED ~~that the Complaint be and~~
is ~~hereby DISMISSED; and~~ it is   **MOTION**

FURTHER ORDERED that a true copy of this Order be served upon all counsel of
record within seven (7) days of its entry on the docket.

_____
HON. JONATHAN N. HARRIS, J.S.C.

Jonathan N. Harris, J.S.C.

This motion was:

__X__ Opposed

_____ ~~Unopposed.~~

ANSWER SHALL BE FILED AND SERVED NO LATER
THAN 10/9/07.

## <u>CERTIFICATE OF SERVICE BY ELECTRONIC MEANS</u>

I, Marvin A. Miller, one of the attorneys for plaintiffs, hereby certify that on February 15, 2008, service of **PLAINTIFFS' MEMORANDUM IN *OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ,*** was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.


*/s/  Marvin A. Miller*
Marvin A. Miller