# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ASHISH SEN and COLLEEN SEN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br><br>v.<br><br>MERCEDES-BENZ USA, LLC,<br><br>Defendant. | No. 07C 6519 (JPM) |

# DEFENDANT MERCEDES-BENZ USA, LLC'S REPLY MEMORANDUM
# IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

Introduction ........................................................................................................................ 1

MBUSA's Request for Judicial Notice of Exhibits ........................................................... 1

Argument .......................................................................................................................... 2

I.    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE
      MBUSA HAD NO DUTY TO DISCLOSE CHANGES IN THE LAW .......................... 2

II.   COUNT I SHOULD BE DISMISSED BECAUSE ILLINOIS, NOT NEW JERSEY,
      LAW APPLIES ................................................................................................................ 5

III.  COUNT II SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD
      (A) AN ACTIONABLE OMISSION, (B) MATERIALITY, (C) PROXIMATE
      CAUSATION, OR (D) DAMAGES ................................................................................ 6

      A.    MBUSA Did Not and Could Not Have Known in 2004 when Analog Service
            Would Be Discontinued ........................................................................................ 6

      B.    Plaintiffs Fail to Allege that Tele Aid's Longevity is a Material Fact .................... 9

      C.    Plaintiffs Fail to Allege Proximate Causation ..................................................... 10

      D.    Plaintiffs Fail to Allege Actual Damages ............................................................ 10

IV.   THE REQUEST FOR AN INJUNCTION IN COUNT III SHOULD BE
      DISMISSED BECAUSE THE POTENTIAL DISCONTINUATION OF ANALOG
      SERVICE WAS DISCLOSED ...................................................................................... 11

V.    COUNT IV SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED
      TO ALLEGE A DEFECT COVERED BY AN EXPRESS WARRANTY ..................... 12

VI.   COUNT V SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK PRIVITY
      WITH MBUSA AND BECAUSE PLAINTIFFS' VEHICLE IS FIT FOR THE
      ORDINARY PURPOSE OF TRANSPORTATION ....................................................... 13

VII.  COUNT VI SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT
      PLEADED MBUSA'S ENRICHMENT ....................................................................... 15

Conclusion ..................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Abraham v. Volkswagen of America, Inc.*,
  795 F.2d 238 (2d Cir. 1986)....................................................................................8

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002) ...............................................................................5

*Massey v. Merrill Lynch & Co., Inc.*,
  464 F.3d 642 (7th Cir. 2006) .................................................................................7

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992).................................................................................................3

*Chin v. Chrysler Corp.*,
  182 F.R.D. 448 (D.N.J. 1998)...............................................................................6

*Crimm v. Mo. Pac. R.R. Co.*,
  750 F.2d 703 (8th Cir. 1984) .................................................................................1

*Federal Crop Insurance Corporation v. Merrill*,
  332 U.S. 380 (1947)................................................................................................5

*Gelbfish v. U.S. Postal Service*,
  51 F. Supp. 2d 252 (E.D.N.Y. 1999) ...................................................................5

*Lyon v. Caterpillar*,
  194 F.R.D. 206 (E.D. Pa. 2000)............................................................................6

*Midcoast Aviation, Inc. v. General Electric Credit Corp.*,
  907 F.2d 732 (7th Cir. 1990) ...............................................................................15

*Palay v. U.S.*,
  349 F.3d 418 (7th Cir. 2003) .................................................................................1

*In re Pharmaceutical Industry Average Wholesale Price Litigation*,
  230 F.R.D. 61 (D. Mass. 2005).............................................................................6

*Ridgway Hatcheries, Inc. v. United States*,
  278 F. Supp. 441 (N.D. Ohio 1968).....................................................................5

*State of California ex rel. Lockyer v. F.E.R.C.*,
  329 F.3d 700 (9th Cir. 2003) .................................................................................5

*United States v. Wood*,
    925 F.2d 1580 (7th Cir. 1991) ............................................................1, 2

## STATE CASES

*Aardema v. Fitch*,
    684 N.E.2d 884 (Ill. App. Ct. 1997) ........................................15

*Avery v. State Farm Mutual Automobile Insurance Co.*,
    835 N.E.2d 801 (Ill. 2005) ...................................................10

*Barbara's Sales, Inc. v. Intel Corp.*,
    879 N.E.2d 910 (Ill. 2007) ...................................................10

*Bardin v. Daimlerchrysler Corp.*,
    39 Cal.Rptr.3d 634, 647-49 (Cal. Ct. App. 2006)........................9

*Brennan v. AT & T Corp.*,
    No. 04-CV-433-DRH,  2006 WL. 306755 (S.D.Ill. Feb. 8, 2006) ............12

*Oggi Trattoria and Caffe, Ltd. v. Isuzu Motors America, Inc.*,
    865 N.E.2d 334 (Ill. App. Ct. 2007) ........................................14

*Collum v. Fred Tuch Buick*,
    285 N.E.2d 532 (Ill. App. Ct. 1972) ........................................12

*Connick v. Suzuki Motor Co., Ltd.*,
    675 N.E.2d 584 (Ill. 1996) ...................................................14

*Daugherty v. American Honda Motor Co., Inc.*,
    51 Cal.Rptr.3d 118, 129 (Cal. Ct. App. 2006) ............................9

*Duffy v. Samsung Electronics America, Inc., No. CIV. 06-5259 (DRD)*,
    2007 WL. 703197 (D.N.J. March 2, 2007) ...................................8

*Glazewski v. Coronet Insurance Co.*,
    483 N.E.2d 1263 (Ill. 1985) ..................................................12

*Greenberg v. United Airlines*,
    563 N.E.2d 1031 (Ill. 1990) ..................................................11

*Kutzle v. Thor Industries, Inc.*,
    No. 03 C 2389, 2003 WL. 21654260 (N.D.Ill. July 14, 2003) ...................13

*Notaro Homes, Inc. v. Chicago Title Insurance Co.*,
  722 N.E.2d 208 (Ill. App. Ct. 1999) overruled on other grounds by *First*
  *Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327 (Ill. 2006)................4

*Perkins v. DaimlerChrysler Corp.*,
  890 A.2d 997 (N.J. App. Div. 2006)............................................................................9

*Popp v. Cash Station, Inc.*,
  613 N.E.2d 1150 (1st Dist. 1992) ............................................................................12

*Randels v. Best Real Estate, Inc.*,
  612 N.E.2d 984 (Ill. App. Ct.  1993) .........................................................................4

*Robacki v. Allstate Insurance Co.*,
  468 N.E.2d 1251 (Ill. App. Ct. 1984) ......................................................................11

*Rockford Memorial Hospital v. Havrilesko*,
  858 N.E.2d  56 (Ill. App. Ct. 2006) ...........................................................................6

*Smith v. Prime Cable of Chicago*,
  658 N.E.2d 1325 (Ill. App. Ct. 1995) ......................................................................11

*Thuringer v. American National Red Cross*,
  No. 04-CV-2078, 2006 WL. 406353 (N.D.Iowa Feb. 17, 2006)..................................1

*White v. DaimlerChrysler Corp.*,
  856 N.E.2d 542 (Ill. App. Ct. 2006) ..........................................................................9

*Zaro v. Maserati North America, Inc.*,
  No. 07 C 3565, 2007 WL. 4335431 (N.D.Ill. Dec. 6, 2007) .....................................13

## FEDERAL STATUTES

44 U.S.C. § 1507 ....................................................................................................1, 5

15 U.S.C. § 2310 ......................................................................................................14

15 U.S.C. § 2301, *et. seq*........................................................................................13

## STATE STATUTES

810 ILCS 5/2-314 .....................................................................................................14

## <u>MISCELLANEOUS</u>

*Memorandum Opinion and Order Released on June 15, 2007,*
    22 F.C.C.R. 11243, 2007 WL. 1744280 (F.C.C. June 15, 2007).................................7

67 Fed. Reg. 77175, 77179 ........................................................................................2, 4,
                           6

**<u>Introduction</u>**

Defendant Mercedes-Benz USA, LLC ("MBUSA") respectfully submits this reply brief in response to Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss.

**<u>MBUSA's Request for Judicial Notice of Exhibits</u>**

There were two general sets of exhibits provided by MBUSA with its motion to dismiss: (1) the regulatory history of Federal Communications Commission ("FCC") rulings regarding analog wireless signals, including entries in the Federal Register by the FCC; and (2) an exemplar Subscriber Agreement for provision of wireless service to a Mercedes-Benz vehicle owner and a Mercedes-Benz vehicle brochure. Plaintiffs asserts that the exhibits are not subject to judicial notice because the "substance of MBUSA's proffered documents are subject to reasonable dispute." (Pltf. Opp. Mem. at p. 4.) But this position is untenable.

First, Plaintiffs' cannot reasonably dispute that the FCC did in fact say what it said in its official orders and opinions, most of which were published in the Federal Register. In fact, under federal law, "[t]he contents of the Federal Register <u>shall</u> be judicially noticed." 44 U.S.C. § 1507 (emphasis added); *see, e.g.*, *Crimm v. Mo. Pac. R.R. Co.*, 750 F.2d 703, 709-10 (8th Cir. 1984) ("The district court may take judicial notice of the Federal Register and the Code of Federal Regulations."); *Thuringer v. American Nat. Red Cross*, No. 04-CV-2078, 2006 WL 406353, *3 (N.D.Iowa Feb. 17, 2006) ("It is well settled that a district court may take judicial notice of federal regulations."). Further, the entire regulatory history, including but not limited to the portions in the Federal Register citations, is a matter of public record subject to judicial notice. *Palay v. U.S.*, 349 F.3d 418, 425 (7th Cir. 2003) ("in resolving a motion to dismiss, the district court is entitled to take judicial notice of matters in the public record"); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) ("The district court may also take judicial notice of

matters of public record" without converting a 12(b)(6) motion into a motion for summary

judgment.).[1]

Similarly, the terms of the standard Subscriber Agreement are not reasonably subject to

dispute.  Besides, it is well established that such documents can be considered in ruling on a

motion to dismiss where they are relied upon in the pleadings.  *Wood*, 925 F.2d at 1582 ("the

district court may take into consideration documents incorporated by reference to the

pleadings."); see Comp. at ¶30.

## Argument

### I.     THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY BECAUSE MBUSA HAD NO DUTY TO DISCLOSE CHANGES IN THE LAW.

Responding to MBUSA's argument that it had no duty to disclose changes in the law,

Plaintiffs argue that MBUSA, based on its participation in the regulatory process, "was in a

superior position of knowledge regarding the future inoperability of the analog-only Tele-Aid

systems" and that for this reason it owed a "'duty of full disclosure of all available information

concerning the nature thereof.'"  (Pltf. Opp. Mem. At pp. 6, 7.)  But this argument proves too

much.  (*Id.* at p. 8-9.)  Were the Court to adopt this argument, vehicle manufacturers and

distributors would be required to disclose *everything* about which it has superior knowledge,

including but not limited to all of the competing considerations that went into the design of all

the vehicle's systems and components, all of the data that the manufacturer has collected about

---

[1]     Contrary to Plaintiffs suggestion (Pltf. Opp. Mem. At p. 4), MBUSA is not requesting this Court to take judicial notice of the truth of the matters asserted by the FCC.  Rather, MBUSA is only asking this Court to take judicial notice that the FCC did in fact issue orders and opinions in which it stated its own intentions and conclusions.  For example, in 2002, the FCC stated that it intended to use reports submitted by wireless carriers "to determine whether or not the Commission will initiate a proceeding to extend the sunset date."  (Exhibit D, 67 Fed. Reg. 77175, 77179.)  MBUSA offers this not to prove that the FCC in fact intended to reconsider the sunset period but that it told the public, including MBUSA, that it did.

the performance in the field of the vehicle and its components, and all of the proposed regulations or rulings that might (or might not) affect a vehicle or its components years in the future.  Such a disclosure requirement inevitably would lead to overdisclosure in which each customer would be handed hundreds or thousands of pages that consumers would simply ignore. Burying a consumer in information is contrary to the purpose of the Consumer Fraud Act.  *Cf. Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992) ("[a]s the FTC observed, 'requiring too much information in advertisements can have the paradoxical effect of stifling the information that consumers receive.'").

Nevertheless**,** Plaintiffs argue, MBUSA could have satisfied its duty to disclose material facts with a "simple disclosure," one that would not prove "overwhelming" to consumers.  (Ptf. Opp. Mem. at p. 10)  Plaintiffs argue that  MBUSA "*knew* ... that analog would definitely end its broadcast" and "*knew* that analog Tele Aid would no longer operate after December 31, 2007." (Pltf. Opp. Mem. at p. 10 (emphasis in original).)  Therefore, Plaintiffs argue, MBUSA could have satisfied its duty by disclosing that "the Tele Aid system would no longer work as early as December 31, 2007, and that buyers would need to spend additional and significant amounts of money to continue using their car's safety features after this date."  (Pltf. Opp. Mem. at p. 10) Plaintiffs do not explain how such a "simple disclosure" could satisfy MBUSA's alleged obligation to make "full disclosure of all available information" about which MBUSA had superior knowledge.  (Pltf. Opp. Mem. at p. 7.)  In fact, any such "simple disclosure" which failed to include numerous details concerning the FCC's proposals and the contingencies that could affect those proposals would have been false in June 2004, when Plaintiffs purchased their vehicle, because the date at which carriers would be *permitted* by federal law to discontinue analog service, and the date on which carriers would *actually* discontinue analog service,

remained uncertain until long after that time.  In fact, what the regulatory history shows beyond

any reasonable dispute is that the FCC told the public, including MBUSA, that (1) it did not

expect carriers to discontinue analog service immediately upon expiration of the 5-year sunset

period because it was "reasonable to conclude that analog service will continue to be available as

long as consumers demand it," 67 Fed. Reg. 77175, 77176, 2002 WL 31814254 (December 17,

2002), and (2) it intended to consider whether it should extend the sunset period beyond five

years.  (*Id.* at 77179 ("The information contained in the reports will be used to determine

whether or not the Commission will initiate a proceeding to extend the sunset date.").)

Thus, the disclosure proposed by Plaintiffs might have been "simple," but it would not

have been truthful.  A rule of law that requires a company to make false statements to comply

with the Illinois Consumer Fraud Act stretches the Act to its breaking point.  To be truthful, any

disclosure would have had to include disclosure of all of the contingencies that might effect the

availability of analog service at various possible times in the future.  But all of this information

was *already* publicly available in the Federal Register and elsewhere when Plaintiff purchased

his vehicle.

"Generally, a deceptive representation or omission of law does not constitute a violation

of the Act because both parties are presumed to be equally capable of knowing and interpreting

the law."  *Notaro Homes, Inc. v. Chicago Title Ins. Co.*, 722 N.E.2d 208, 217-18 (Ill. App. Ct.

1999) overruled on other grounds by *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843

N.E.2d 327 (Ill. 2006); *Randels v. Best Real Estate, Inc.*, 612 N.E.2d 984, 988-89 (Ill. App. Ct.

1993).  Such an omission of law is "not a violation of the Act, as it was not an omission of

material fact."  *Notaro Homes,* 722 N.E.2d at 217-18.  Indeed, under federal law publication in

the Federal Register "is sufficient to give notice of the contents of the document to a person

4

subject to or affected by it." 44 U.S.C. § 1507; *see also Federal Crop Ins. Corporation v. Merrill*, 332 U.S. 380, 384-85 (1947) (the "appearance of rules and regulations in the Federal Register gives legal notice of their contents"); *State of California ex rel. Lockyer v. F.E.R.C.*, 329 F.3d 700, 707 (9th Cir. 2003) ("Publication in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance, except those who are legally entitled to personal notice."); *cf. Gelbfish v. U.S. Postal Service*, 51 F. Supp. 2d 252, 254 (E.D.N.Y. 1999) ("Because the DMM is incorporated by reference into the Code of Federal Regulations, it is deemed published in the Federal Register, and a plaintiff is presumed to have notice of the DMM's contents."); *Ridgway Hatcheries, Inc. v. United States*, 278 F. Supp. 441, 443 (N.D. Ohio 1968) (same). Thus, because Plaintiffs had legal notice of the content of the Federal Register, their claims should be dismissed.

The cases cited by MBUSA here and it its opening brief stand for the general legal principle that a party need not disclose the law, let alone make predictions regarding the conduct of third parties in response to the law at some future date. That principle is directly applicable to this case and requires dismissal of Plaintiffs' Complaint.

## II.    COUNT I SHOULD BE DISMISSED BECAUSE ILLINOIS, NOT NEW JERSEY, LAW APPLIES.

Plaintiffs have not provided any basis for application of the New Jersey Consumer Fraud Act to their claims. They allege no facts entitling them to bring an action based on New Jersey law. (*See* Comp.) Plaintiffs allege they are Illinois residents and do not allege that they purchased their vehicle in New Jersey. As Illinois residents, any possible damages could only have been incurred in Illinois. Plaintiffs' allegations that MBUSA is a resident of New Jersey provides no basis to apply New Jersey law to residents of Illinois who did not purchase a vehicle in New Jersey. *See, e.g.*, *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002)

("[s]tate consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules."); *Lyon v. Caterpillar*, 194 F.R.D. 206, 215-16 (E.D. Pa. 2000) ("state consumer protection acts are designed to protect the residents of the states in which the statutes are promulgated."); *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 230 F.R.D. 61, 83 (D. Mass. 2005) ("Courts have generally rejected application of the law of a defendant's principal place of business to a nationwide class."); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457(D.N.J. 1998) ("Each Plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws.").  Consequently, because Plaintiffs did not allege facts showing entitlement to bring a claim under New Jersey law, Count I must be dismissed.

## III.    COUNT II SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD (A) AN ACTIONABLE OMISSION, (B) MATERIALITY, (C) PROXIMATE CAUSATION, OR (D) DAMAGES.

### A.    MBUSA Did Not and Could Not Have Known in 2004 when Analog Service Would Be Discontinued.

This claim fails because, "[a]bsent knowledge of the facts omitted, there could be no intent to induce reliance on the omission."  *Rockford Memorial Hosp. v. Havrilesko*, 858 N.E.2d 56, 63 (Ill. App. Ct.  2006).  Plaintiffs' argue that the regulatory history is irrelevant because they allege that MBUSA "knew" to a certainty in June 2004 that service would end in December 2007, but as discussed above, this is simply wrong.  (*See* Pltf. Opp. Mem. at pp. 10, 14; Comp. at ¶¶ 55, 56.)  The regulatory history shows that it was impossible for MBUSA to "know" to a certainty in 2004 that analog service would end in 2007.  *See, e.g.*, 67 Fed. Reg. 77175, 77176, 77179 (December 17, 2002).

In fact, it was not until June 15, 2007, that the FCC determined that the analog

requirement would indeed end on February 18, 2008:

> We deny the Petition for Rulemaking filed by the Alarm Industry
> Communications Committee (AICC) and ADT Security Services,
> Inc. (ADT), seeking a two-year extension, until February 18, 2010,
> of the requirement that all cellular licensees provide analog service
> to subscribers and roamers whose equipment conforms to the
> Advanced Mobile Phone Service (AMPS) standard.  <u>This
> requirement will sunset on February 18, 2007 (the "analog sunset
> date"), but cellular licensees may continue to provide AMPS
> compatible service after that date.</u>

(Exhibit E, Memorandum Opinion and Order Released on June 15, 2007, 22 F.C.C.R. 11243,

2007 WL 1744280 (F.C.C.  June 15, 2007) (emphasis added).  It was at that time that the FCC

ordered cellular radiotelephone service providers to "notify each analog-only subscriber

individually that the analog service requirement will sunset on February 18, 2008."  (*Id.* at *15.)

Plaintiffs effectively concede, as they must, that "the FCC held open the possibility that

the sunset period would be extended" and that "the FCC expected that vendors would continue

analog service after the sunset period as long as consumers demanded."  (Pltf. Opp. Mem. at p.

11.)  Nevertheless, they claim that their allegations that MBUSA "knew" that the Tele Aid

system would become inoperable prevails over the indisputable public record.  (Pltf. Opp. Mem.

at p. 11.)  But where exhibits properly before the Court negate allegations of the Complaint, the

allegations of the Complaint should be disregarded for the purposes of a motion to dismiss.  *Cf.*

*Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 645 (7th Cir. 2006) ("we will consider the

exhibits attached to a complaint, but, where an exhibit conflicts with the allegations of the

complaint, the exhibit typically controls").

Perhaps recognizing the fallacy in their argument that their allegations should prevail

over the judicially noticeable public record, Plaintiffs retreat to the argument that the uncertainty

surrounding when analog service would cease does not alter the fact that MBUSA knew that

analog service would become "obsolete" *sometime* with the 10-20 years that the subject vehicles would be on the road.  Apart from the fact that this argument is inconsistent with the "simple disclosure" that Plaintiffs claim should have been made, this argument once again proves too much.  All vehicle manufacturers know that numerous vehicle components or systems will become obsolete within 10-20 years.  Indeed, any vehicle manufacturer intending to introduce new components or systems in the next model year knows that components on existing vehicles will become "obsolete" within a few months.  Further, the allegation that MBUSA "knew" that the Tele Aid components would require repair or replacement at some point in the useful life of the vehicle does not distinguish Tele Aid from any other component on the vehicle, all of which might require repair during the life of the vehicle.  As stated cogently in *Abraham v. Volkswagen of America, Inc.*, 795 F.2d 238, 250 (2d Cir. 1986):

> All parts will wear out sooner or later and thus have a limited effective life.  Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time.  Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired.  A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

*Id.*

Thus, if Plaintiffs' theory in this case were correct, a company would violate the Consumer Fraud Act every time it fails to disclose that each of the parts in a product or a product itself will become "obsolete" at some time in the future.  But Courts repeatedly have rejected such a theory.  *See, e.g.*, *Duffy v. Samsung Electronics America, Inc.*, No. CIV. 06-5259 (DRD), 2007 WL 703197, *8 (D.N.J. March 2, 2007) ("because Plaintiff's microwave continued to perform beyond the period in which Samsung was contractually bound to repair or replace any

defective part, Plaintiff cannot maintain a CFA claim."); *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997, 1005 (N.J. App. Div. 2006) (rejecting Consumer Fraud Act claim "that the component part of a product, which has lasted through the warranty period, may eventually fail"); *Daugherty v. American Honda Motor Co., Inc.*, 51 Cal.Rptr.3d 118, 129 (Cal. Ct. App. 2006) ("Honda did nothing that was likely to deceive the general public by failing to disclose that its F22 engine might, in the fullness of time, eventually dislodge the front balancer shaft oil seal and cause an oil leak."); *Bardin v. Daimlerchrysler Corp.*, 39 Cal.Rptr.3d 634, 647-49 (Cal. Ct. App. 2006) (rejecting claim that failure to disclose information regarding the life span of the exhaust manifold of a DCC vehicle violated the Unfair Competition Law or Consumers Legal Remedies Act).

### B.     Plaintiffs Fail to Allege that Tele Aid's Longevity is a Material Fact.

MBUSA showed in its opening brief that Plaintiffs failed to allege the materiality of the alleged omission under Illinois law.  (MBUSA's Mem. ISO Mot. to Dismiss, at pp. 15-16.) Plaintiffs' response appears to be that they alleged that MBUSA represented that Tele Aid was a "safety" device, and this necessarily suffices to meet the materiality element.  *See* Pltf. Opp. Mem. at pp. 14-15.)  Plaintiffs provide no authority for this proposition.  Furthermore, Plaintiffs failed to allege that they would have acted differently had they known the purportedly omitted information, a failing that requires dismissal.  *See White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 548-49 (Ill. App. Ct.  2006) ("Nowhere in the complaint does plaintiff say he would have acted differently if he had possessed the information before the sale, nor does he say how or why consumers would be expected to rely on that information before making a purchase.").  Thus, their claim should be dismissed for failing to allege materiality.

### C.      Plaintiffs Fail to Allege Proximate Causation.

Plaintiffs argument here misses the point completely.  In MBUSA's opening brief, MBUSA stated that "[t]o the extent Count II relies on purported misrepresentations, it fails because the Complaint does not allege proximate causation."  (MBUSA's Mem. ISO Mot. to Dismiss, at p. 16.)  MBUSA's argument does not address Plaintiffs' omission claim. Nonetheless, Plaintiffs provide no argument in opposition with respect to a misrepresentation claim and argue solely that they pleaded proximate cause for an omission.  (Pltf. Opp. Mem. at p. 15-16.)  Thus, to the extent that Plaintiffs' claim rests on a purported misrepresentation, the misrepresentation claim must be dismissed.  *Barbara's Sales, Inc. v. Intel Corp.,* 879 N.E.2d 910, 927 (Ill. 2007).

### D.      Plaintiffs Fail to Allege Actual Damages.

In its opening brief, MBUSA showed that Plaintiffs failed to allege that they suffered actual damages under Illinois law.  Plaintiffs' response does not address MBUSA's arguments. Plaintiffs claim that MBUSA's argument that the Tele Aid system was standard equipment is based on "facts not in evidence," (Pltf. Opp. Mem. at p. 16), but Plaintiffs themselves pleaded that the Tele Aid system was standard equipment.  (Comp. at ¶¶ 3, 26, 30.)  Since the equipment was standard, Plaintiffs paid nothing additional for it.  Nor do Plaintiffs allege that they did so. (*See* Comp.)  It appears Plaintiffs allege that that the cost of upgraded equipment to receive digital signals constitutes damages (Pltf. Opp. Mem. at p. 16), but nowhere in the Complaint is there an allegation that Plaintiffs incurred such a cost by paying for upgraded equipment. Accordingly, this Count must be dismissed because Plaintiffs did not plead "actual damages." *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 859 (Ill. 2005).

**IV.    THE REQUEST FOR AN INJUNCTION IN COUNT III SHOULD BE DISMISSED BECAUSE THE POTENTIAL DISCONTINUATION OF ANALOG SERVICE WAS DISCLOSED.**

"The [UDTPA] does not provide a cause of action for damages, but it does permit private suits for injunctive relief." *Greenberg v. United Airlines*, 563 N.E.2d 1031, 1036-37 (Ill. 1990). "While the Uniform Deceptive Trade Practices Act primarily focuses on acts between competitors, a cause of action under that Act can be stated and injunctive relief is obtainable by an individual consumer where that consumer can allege facts that he likely would be damaged by the defendant's conduct in the future." *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1337 (Ill. App. Ct.  1995).

The Subscription Agreement clearly disclosed the possibility of wireless service ending, whether it be during the "useful life" of the vehicle or otherwise:

> **Your Tele Aid system uses analog cellular telephone signals. If the supporting wireless carrier and/or its roaming partners terminate or restrict analog service, the Tele Aid Services may not be available.**  UNDER THIS CIRCUMSTANCE, SOME OR ALL OF THE TELE AID SERVICES MAY BE SUSPENDED OR TERMINATED WITHOUT PRIOR NOTICE TO YOU AND WITHOUT ANY LIABILITY.

(Exhibit A, Subscriber Agreement, at ¶ 2 (bold and all caps original).)  The supporting wireless carrier did restrict service in 2008.  Because disclosure was made, the claim must be dismissed. *See Robacki v. Allstate Ins. Co.*, 468 N.E.2d 1251, 1255 (Ill. App. Ct.  1984).

Plaintiffs' claim for an injunction should be dismissed also because they have not alleged that they are "likely to be damaged" by defendants' conduct in the future.  The alleged wrongful conduct here is a failure to inform consumers purchasing Mercedes-Benz vehicles with analog Tele Aid equipment vehicles that analog service will or could end at some time in the future. That alleged conduct is not continuing, but occurred in the past.  Plaintiffs are aware of the

allegedly undisclosed information.  And no new Mercedes-Benz vehicles with analog Tele Aid equipment are being sold.  Plaintiffs are not "likely to be damaged in the future" by MBUSA's alleged practice, a practice which ended prior to this suit.  Consequently, injunctive relief is unavailable, and their claim in Count III must be dismissed.  *Glazewski v. Coronet Ins. Co.*, 483 N.E.2d 1263, 1267 (Ill. 1985) ("The defendants also argue that the plaintiffs may not obtain injunctive relief under the Uniform Act because they are not likely to be damaged in the future by the defendants' conduct.  We agree.  The plaintiffs know the problems associated with the coverage, and, armed with that knowledge, can avoid it.  Thus, the plaintiffs are not persons who are 'likely to be damaged' by defendants' conduct in the future."); *Popp v. Cash Station, Inc.*, 613 N.E.2d 1150, 1156-57 (1st Dist. 1992) ("There can be no confusion in the future arising from defendants' alleged non-disclosure in marketing their services, and we are unable to envision, nor for that matter has plaintiff alleged, any situation which could occur in the future which might give rise to such confusion."); *Brennan v. AT & T Corp.*, No. 04-CV-433-DRH, 2006 WL 306755, *5 (S.D.Ill. Feb. 8, 2006) (same).

## V.    COUNT IV SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ALLEGE A DEFECT COVERED BY AN EXPRESS WARRANTY.

Plaintiffs' fundamental problem with this count is that they confuse principles of consumer fraud and warranty.  The warranty itself governs the relationship between the parties, and the Limited Warranty requires a defect in the material or workmanship of the Tele Aid equipment.  (Comp. at ¶ 66)  There is no such defect alleged.  Plaintiffs allege that the reason the Tele Aid equipment will not operate is because of a lack of analog signals from wireless service providers.  (*Id.* at ¶¶ 4, 22, 24, 67.)  By their own allegations, the Limited Warranty does not cover Plaintiffs' claims.  *See Collum v. Fred Tuch Buick*, 285 N.E.2d 532, 536 (Ill. App. Ct. 1972).  Further, MBUSA expressly disclaimed any warranty of the Tele Aid service in the

Subscriber Agreement.  (Exhibit A, Subscriber Agreement, at ¶ 14.)   Consequently, Plaintiffs'

express warranty claim must be dismissed.

## VI.     COUNT V SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK PRIVITY WITH MBUSA AND BECAUSE PLAINTIFFS' VEHICLE IS FIT FOR THE ORDINARY PURPOSE OF TRANSPORTATION.

Plaintiffs' claim for breach of implied warranty should be dismissed because they do not

allege privity with MBUSA and because Plaintiffs' vehicle is fit for the ordinary purpose of

transportation.  Plaintiffs initially seek to argue that both New Jersey and Illinois law regarding

privity apply to their claim.  As MBUSA previously showed, however, Plaintiffs failed to plead

facts supporting the application of New Jersey law.  Thus, Plaintiffs' discussion of New Jersey

law is irrelevant to the issues before this Court.

With respect to Illinois law, Plaintiffs argue that privity is not required for a Magnuson-

Moss Warranty Act claim.  (Pltf. Opp. Mem. at p. 20.)  This argument is incorrect for two

reasons.  First, Plaintiffs have not brought an action under the Magnuson-Moss Warranty Act, 15

U.S.C. § 2301, *et. seq*.  (*Se*e Comp., Count V, ¶¶ 71-74.)  The Complaint lacks any mention of

the statute and Plaintiffs made no attempt to plead the requisite elements of a Magnuson-Moss

Warranty Act claim.  *See* 15 U.S.C. § 2310 (d).  Second, federal courts in this District repeatedly

have rejected Plaintiffs' argument based on the Illinois state court interpretation of privity and

the Magnuson-Moss Act.  *See, e.g.*, *Zaro v. Maserati North America, Inc.*, No. 07 C 3565, 2007

WL 4335431, *4 (N.D.Ill. Dec. 6, 2007) ("Federal courts continue to follow Judge Pallmeyer's

decision in *Soldinger* and reject the interpretation of the Magnuson-Moss Act as announced in

*Szajna* and *Rothe* … since Zaro lacks privity under Illinois law, Zaro cannot proceed under an

implied warranty theory [under the] Magnuson-Moss Act."); *Kutzle v. Thor Industries, Inc.*, No.

03 C 2389, 2003 WL 21654260, *6 (N.D.Ill. July 14, 2003) ("The overwhelming weight of

authority in this district has rejected the *Szajna* and *Rothe* analysis of the Act, and has held that

privity is required under the Act, just as under Illinois law, in order to state an implied warranty claim for economic loss. *See, e.g., Diamond v. Porsche Cars North America, Inc.,* No. 02 C 414, 2002 WL 31155064 (N.D.Ill. Sept. 26, 2002); *Kowalke v. Bernard Chevrolet, Inc.,* No. 99 C 7980, 2000 WL 656660 (N.D.Ill. Mar. 23, 2000); *Larry J. Soldinger Assocs., Inc. v. Aston Martin Lagonda of North America, Inc.,* No. 97 C 7792, 1999 WL 756174 (N.D.Ill. Sept. 13, 1999)."). Thus, even if Plaintiffs' had actually pleaded a Magnuson-Moss Warranty Act claim, the lack of privity still would require dismissal.

Plaintiffs also assert that privity is not required because an independent dealership that sells Mercedes-Benz vehicles is an agent of MBUSA under Illinois law. (Pltf. Opp. Mem. at p. 20-21.) Plaintiffs, however, rely only on the bare allegation that they purchased a vehicle from an "authorized dealer" of MBUSA to support their newly-minted claim of agency. (*Id.* (citing Comp. at ¶ 3).) Plaintiffs' allegation fails to plead the necessary elements of an agency relationship under Illinois law. *See, e.g., Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 592-93 (Ill. 1996) ("plaintiffs did not adequately allege apparent agency. Other than alleging that the dealers were 'authorized,' plaintiffs made no allegations about how Suzuki held out the dealers as its agents"). Because both of Plaintiffs' arguments fail, the lack of privity requires dismissal of Plaintiffs' implied warranty claim.

Finally, Plaintiffs conflate their action for breach of implied warranty regarding the vehicle with an implied warranty regarding a part in a vehicle. As MBUSA explained in its opening brief, the 'goods' referred to in the UCC are those subject to the contract for sale. 810 ILCS 5/2-314. Since Plaintiffs' vehicles fulfill their ordinary purpose of providing transportation, the implied warranty claim should be dismissed. *Cf. Oggi Trattoria and Caffe, Ltd. v. Isuzu Motors America*, Inc., 865 N.E.2d 334, 340 (Ill. App. Ct. 2007) ("A product

breaches the implied warranty of merchantability if it is not fit for the ordinary purposes for which such goods are used.") (citation and internal quote marks omitted).  This provides another ground for dismissal.

## VII.    COUNT VI SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE NOT PLEADED MBUSA'S ENRICHMENT.

"Quasi-contractual duties arise only in situations of unjust enrichment, situations where 'one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and which *ex cequo et bono* belongs to another.'" *Midcoast Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 737, 741-45 (7th Cir. 1990) (citation omitted) (collecting and discussing Illinois case law).  Plaintiffs fail to identify a benefit that MBUSA received that would support an unjust enrichment claim.  As MBUSA showed in its opening brief, Plaintiffs do not plead that they paid any separate amount for the Tele Aid equipment or that they paid any money to MBUSA when they purchased the vehicle.  Plaintiffs instead allege that they "must spend" money to "repair or replace" their Tele Aid equipment and that MBUSA "is unjustly enriched in avoiding the financial obligations associated with providing the digital upgrade and avoiding labor costs to MBUSA dealers for the installation." (Comp. ¶ 79.)  This allegation fails to state a claim because it shows no benefit that was conferred on MBUSA by Plaintiffs sufficient to support an unjust enrichment claim.  Plaintiffs do not plead that they have actually paid for a upgraded system, and, therefore, have not pleaded that they provided a benefit to MBUSA.  This requires dismissal of the unjust enrichment claim. *See, generally*, *Aardema v. Fitch*, 684 N.E.2d 884, 889 (Ill. App. Ct.  1997) (dismissing unjust enrichment claim because of the lack of allegation that defendant voluntarily accepted a benefit).

## Conclusion

For these reasons, the Court should dismiss Plaintiffs' complaint.

Dated:    March 7, 2008                    Respectfully submitted,

                                           BRYAN CAVE LLP


                                           By:          s/  Dmitry Shifrin
                                               Dmitry Shifrin  #6279415
                                               Bryan Cave LLP
                                               161 North Clark Street, Suite 4300
                                               Chicago, IL  60601-3315

                                               Peter W. Herzog III  #36429
                                               211 North Broadway, Suite 3600
                                               St. Louis, MO 63102-2750
                                               Telephone:  (314) 259-2000
                                               Facsimile:  (314) 259-2020

                                               *Attorneys for Mercedes-Benz USA, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that a true and correct copy of the foregoing REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS was served this 7th day of March, 2008 either via the Court's CM/ECF system or first class U.S. mail, postage prepaid, upon the following counsel of record:

Mark A. Miller
Lori A. Fanning
**Miller Law LLC**
115 S. LaSalle Street
Suite 2910
Chicago, IL  60603

Tracy D. Rezvani
**Finkelstein Thompson LLC**
The Duval Foundry
1050 30th Street, NW
Washington, DC  20007

Rosemary M. Rivas
Mark Punzalan
**Finkelstein Thompson LLC**
100 Bush Street, Suite 1450
San Francisco, CA  94104

                                      <u>     s/ Dmitry Shifrin     </u>